# IN THE UNITED STATES COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL DIVISION |
|---|---|---|
| VS. | : | 2:18-cr-00579-GJP-2 |
| ARTHUR ROWLAND | : | |

## MOTION TO SUPPRESS ALL PHYSICAL EVIDENCE TAKEN FROM 3900 FORD ROAD, APT. 14Q, PHILADELPHIA, PA AND ALL EVIDENCE ELECTRONICALLY INTERCEPTED PURSUANT TO GOVERNMENT WARRANTLESS AND WARRANTED ACTION

Defendant, Arthur Rowland, moves this Honorable Court to suppress all physical evidence taken from 3900 Ford Road, Apt. 14Q, Philadelphia, PA. Additionally defendant moves to suppress all of his intercepted oral and digital communications on his and all other telephones relevant to and subject of the government's wire communication intercept. Specifically those authorized by the application of August 15, 2018 and all other applications thereafter.

Defendant was arrested and charged with two counts of Conspiracy to distribute 500 grams or more of methamphetamine and marijuana.

Defendant was arrested on December 14, 2018 at 3900 Ford Road, Apt. 14Q Philadelphia, PA.

At the time of his arrest government agents seized controlled substances, firearms and cash. Said entry and seizures were pursuant to a search warrant which defendant contends is legally deficient on constitutional grounds and in violation, specifically, of his Fourth Amendment right to be secure in his person, house, papers

and effects.  Defendant contends that the instant warrant was not based on sufficiently efficacious probable cause.

The warrant attached hereto marked as exhibit A, recites the usual affiant's experience and repeats the oft stated incantations of drug investigations, i.e. that "drug dealers" use houses to store drugs, proceeds from sales, paperwork pertaining to same, etc. Without specific, detailed facts formulating a basis for a reasonable belief that a specific address is being used for these purposes, this mantra amounts to no more than conjecture and or a suspended opinion by law enforcement personnel.

As stated in <u>Florida v. Jardines</u>, *133 S.ct. 1409, 1414 (2013)* (quoting U.S. Const. Amend IV).  "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.  ("When it comes to the Fourth Amendment, the home is first among equals.")  Hence, the Fourth Amendment draws "a firm line at the entrance to the house."  <u>Payton v. New York</u>, *445 U.S. 573, 590 (1980)*, which must be not only firm but also bright, "<u>Kyelo v. United States</u>, *533 U.S. 27, 40 (2001)*.

In reviewing the initial probable cause determination, this Court must find that the issuing authority had a "substantial basis for concluding that probable cause existed to uphold the warrant." <u>United States v. Whitner</u>, *219 F.3d 289, 296 (3d Cir. 2000)* (quoting <u>Illinois v. Gates,</u> *462 U.S. 213, 238 (1983))*.  To find probable cause, "an issuing judge's task is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Gates, 462 US at 238*).

For drug crimes, there is a sufficient basis to infer that evidence might be found in a drug dealer's residence when the affidavit includes "evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." <u>United States v. Burton</u>, 288 F.3d 91, 104 (3d Cir. 2002).

Defendant submits that there is no evidence supporting the third <u>Burton</u> premise. The courts looked for the existence of numerous factors to help establish the required nexus between a defendant's drug-dealing activities and his home. In <u>Burton</u>, the third prong clarified the previous holdings regarding criteria needed to justify a constitutionally valid search warrant of an alleged drug dealer's residence. In demanding some evidence "that the home contains contraband linking it to the drug dealer's activities, the court "moored" the drug dealer inferences back to the practical, common sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place. <u>Gates</u> at 238, 103 S. Ct. 2317. Clearly it is now recognized that the search of a drug dealer's home would be unreasonable if the affidavit suggested no reason to be believe contraband would be found there.

In this case there is intercepted conversation between defendant and the primary target of this investigation, i.e. Curshawn Banks. In these interceptions, Banks and defendant are heard referencing alleged drug deliveries. In a conversation on October 10, 2018 between defendant and Banks, the affiant opines that defendant is expressing dissatisfaction with the quality, quantity and packaging of narcotics that he had

received. Only a brief excerpt of this alleged drug related conversation is repeated in the body of the warrant (p.37-38). Nowhere in the warrant is it made clear through previous recorded conversations that the quantity herein referenced is 10 pounds of methamphetamine.

In a second phone call on the same day. Banks allegedly tells defendant he will retrieve the poor quality narcotics and send them back to his supplier. There is no actual word for word recitation of Banks' intent to do this, just a bold assertion by the affiant that it was said. Interestingly there is no observation of a meeting that day, i.e. 10/10/18 between defendant and Banks to effectuate this event, even though defendant says he is at "his crib." (p. 37, para. 116)

The next conversation intercepted is on October 24, 2018, some 14 days later, wherein it is the affiant's opinion that defendant and Banks are discussing money. (pps.37-38, para. 117). Banks apparently informs defendant that he owes "14". The affiant does not know if this is an amount of money for the past alleged purchase of drugs or for a future alleged purchase. On the same day, about 2 hours later, Banks is observed arriving at 3900 Ford Road, about 10 minutes after defendant does. The warrant indicates that defendant came out of the building and got into the passenger side of Banks' car. A short time later defendant exits Banks' car and Banks pulls away. The warrant is devoid of any factual reference to any object being carried by defendant or given to Banks.

Subsequently Banks met another person at 4610 City Avenue, Philadelphia, PA where the affiant opines he gave this person money to deposit in a bank account. (pps. 38-39, para(s) 119-124). The conclusion is stated in paragraph 124 and, it is, that

4

defendant gave money to Banks who in turn transferred it to the other person for deposit.

Essentially that is the entire substance of affiant's factual basis seeking to supply a nexus between defendant and the Ford Road address and the belief that evidence of a crime would be found there.

Defendant respectfully contends that this information is insufficient to permit a reasonable inference that evidence of crime would be found in the Ford Road location and, as a result, all and any evidence of an incriminating nature, including drugs, guns, ammunition, ledgers or any records, paper or digital, found inside said location should be suppressed and excluded from trial. Further, any information derived from defendant's telephone(s) which were found in said residence also is requested to be suppressed and excluded.

As seen in the following challenge to the government's use of electronic surveillance and the intercepted phone calls, texts and other digital media, defendant will contend that no probable cause existed to support a search and seizure warrant for 3900 Ford Road, Apt. 14Q, Philadelphia, PA.

II. **MOTION TO SUPPRESS ALL AND ANY ELECTRONIC INTERCEPTED EVIDENCE**

Defendant moves this Court to suppress all evidence seized by way of electronic interception, including the substance of taped recorded conversations between any and all indicted and unindicted alleged co-conspirators.

The government requested permission to intercept telephone calls made by and between the target, Banks' telephone and all persons to whom he spoke.

Defendant is alleged to be involved in a number of phone calls with Banks and the government having seized them will seek to admit the substance of same at trial.

Defendant contends that no permission for interception of his telephone conversations should have been granted and said conversation are the "fruits of an illegal wiretap" previously obtained on the phone of Curshawn Banks.

Defendant has standing to raise challenges to all wiretap orders. <u>United States v. Roemer</u>, 703 F.2d, 805 (5th Cir. 2983); <u>United States v. Marcello</u>, 508 F. Supp. 586, (1981).

The Banks wiretap is the basis for much of the probable cause set forth in the search warrant for the Ford Road address. In this case defendant has standing to challenge the wiretap order of all other defendants and the apparent original orders for Banks. The intertwined nature of this series of surveillance orders appropriately forms the basis for his standing to object.

Further, defendant challenges the use of wiretap surveillance in light of the government's failure to assert and adequately establish that all other traditional investigation techniques had been attempted, had failed or were unlikely to succeed. <u>United States v. Baker</u>, 589 F.2d 1008, at 1012 (9th Cir. 1979).

The affidavit (Exhibit B) filed in support of the Banks wire intercept is invalid for its failure to adequately state the basis of its "necessity". Title 18 U.S.C § 2518 permits interception of private telephone conversations, however prior to obtaining of a judicial order certain requirements must be met first. The application may be approved only if the application contains facts to support a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or

to be dangerous." § 2518 (3) (c), supra; <u>United States v. Carneiro</u>, *861 F. 2d 1171* (9th Cir. 1988).

In the government's first application for an order authorizing the interception of wire communication it avers that…"[I]t has been established that normal investigative procedure have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ. The affidavit then sets forth the investigative options. (see pps. 66-92). Application 8/15/19)

First, the use of an investigative grand jury was considered and rejected without any attempt to compel targets or witnesses to testify.

Second, the government references the use of confidential informants and cooperating witnesses. It states that it cultivated as many as 4 such persons but then immediately discounts their usefulness. Two of these persons actually conducted consensual recordings of someone in this investigation, however the affidavit fails to mention the target's identity leaving open the question of how driven the investigation was to obtain meaningful information (p.70).

Third, the use of controlled purchases was considered and rejected. As in many drug dealing investigations often times a buyer will be arrested and given an opportunity to cooperate. Apparently no buyer of or customer of Banks' was arrested for this option to be exercised.

Fourth, undercover agents are considered and rejected, although with the caveat they may be used in the future. The affidavit states why their initial use is impractical but makes no sensible suggestion as to why that would change allowing for their use in the future. It is somewhat of a circular argument seemingly designed to support the

7

request for wire intercepts to be based on present investigative failures, which may, for some unknown reason, not be failures in the future.

Fifth, Target subject and associates interviews would not likely be helpful, however, if any one were compromised by way of an arrest why wouldn't such a person be approached for cooperation in the investigation? Was any such arrest a possibility herein? The affidavit is mute on this point.

Sixth, the use of search warrants and consensual searches are mentioned as not viable. At the time of this investigation the government was informed about much of Banks' activities. The government knew he was transporting methamphetamine through the mail. They knew of his Philadelphia address and the names of his associates. They knew of addresses to which drugs were being mailed and delivered. They received this information from an ongoing investigation by the FBI in Springfield, Illinois and from an anonymous informant here in Philadelphia. This information was received in January 2018, (see Exhibit A, Search and Seizure warrant, pps. 5-9). Clearly the government knew who Banks was, not just because of this investigation, but from a previous one in which he was known to be an importer and distributor of drugs from California to Philadelphia. Indeed, for a period of time, he was a government cooperator, so it would seem the government knew precisely what and how Banks operated.

Nowhere is there a reference to a controlled delivery of imported drugs, yet the government has shipping records of Banks's deliveries to Philadelphia. No controlled deliveries were tried, no seizures of mailed packages effected, and no surveillance of future deliveries. None of these techniques were tried and yet, we know, these types of interdictions routinely take place in a myriad of cases. This information was in the

8

government's possession as early as January and February, 2018, 6-7 months before the request for permission to intercept wire communications.

Seventh, the government discredits physical surveillance as an effective technique and suggests that it could jeopardize their investigation and is time consuming. Ironically, after the wire intercepts commence the physical surveillance is stepped and there is no reference to it being exposed or recognized by the targets.

Eighth, Pen Registers and toll records, while labor intensive clearly assists the investigation in verifying the existence of the core participants, their movements and activity. As stated, it is useful to pinpoint critical contacts between the targets. (Exh. B. p. 78. Para 142). It shows patterns of time and location between or among the subject targets. It seems this technique was not a failure.

Ninth, the use of GPS (mobile tracking devices and precision location information) Basically these devices were dismissed early on in the investigation because the agents had yet to identify vehicles the targets were driving. Is it legally satisfactory in support of an application for wire intercept to state the failure of the agents without delineating what their efforts were? How would the suppression court be enabled to find the technique failed if it can't evaluate their effort in effecting it?

As far as cell site data, the affidavit suggests numerous problems or deficiencies in the technology and/or science of it. Almost everything stated on page 80 of the affidavit is directly contradicted by Chief Justice Roberts' opinion in <u>Carpenter v. United States</u>, *No. 16-402*, copy attached hereto and marked Exhibit C.

A review of the opinion would seem to strongly contradict the boiler plate of paragraphs 148-150, pps. 80-81.

Tenth, trash searches referenced in the affidavit were just attempts. It is assumed that the agents themselves would be the ones conducting the trash pull. These searches ostensibly were thwarted because of counter surveillance cameras mounted on the outside of one the target's addresses, i.e. 6161 Delancey Street, Philadelphia, PA. Although trash was seized, it is stated that it was a minimal amount. If the cameras were an impediment, why was any trash seized? Further, as in control deliveries when postal inspectors pose as mail delivers, why, as in many prior cases, were agents not posing as trash collectors?

Eleventh, financial records of some of the targets clearly reveal a pattern consistent with drug trafficking and money movement consistent with drug sales. These individuals were identified early on as main associates of Banks'.

Twelfth, the government references mail covers as a failed technique. Since the targets were using other carriers, i.e. Fed ex, the reference to this investigative technique is irrelevant.

Thirteenth, the same would be true of using deportation of the primary supplier of Banks' drugs. Mentioning that deportation of said person would not help the investigation is almost a non-sequitur.

As this Court knows, the extraordinary use of electronic surveillance is to be a last resort where other means of investigation have failed.

This is not so in this case. This investigation started in January 2018 and was continuing for almost 8 months before the request was made. No allegation of danger had been made or any danger substantiated. The government essentially must argue against its own efforts in order to secure permission to invade the most protected privacy afforded to all under the Fourth Amendment. The boiler plate language

contained in Exhibit B suggesting that all normal reasonable investigative techniques failed is contradicted by the efforts of the agents. Further, it is an inherent conflict when the very agents who are requesting the intercepts are the ones heralding their own ineffectiveness, an irony I'm sure not lost on this Court. As stated in <u>United States v. Castillo-Garcia</u>, *17 F. 3d 1147, 1195-1196*, cert. Denied sub com., the practice of using template allegations of necessity is to be condemned.

### III. CONCLUSION

Defendant respectfully requests this Honorable Court grant the relief sought and find that there was not sufficient probable cause to search the residence at 3900 Ford Road, Apt. 14Q. Further that all intercepted telephonic communication seized pursuant to the government's application be suppressed. Additionally, defendant would note that if said electronically intercepted communications are suppressed, the probable cause affidavit in support of the search warrant for the Ford Road address essentially would be devoid of any probable cause sufficient to pass Fourth Amendment requirements.

For all of the foregoing reasons, defendant requests this Court to grant his motion.

                                  Respectfully submitted:

                                  /s/ Guy R. Sciolla
                                _____
                                GUY R. SCIOLLA, ESQUIRE
                                Attorney for ARTHUR ROWLAND
                                Identification No. 19051
                                100 S. Broad Street, Suite 1910
                                Philadelphia, PA 19110
                                (p) (215) 972-1544
                                (f) (215) 972-1545

Date: September 10, 2019