**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 18-579-2** |
| **v.** | : | |
| **ARTHUR ROWLAND** | : | |

**<u>ORDER DENYING MOTION FOR SPEEDY TRIAL DIMISSAL</u>**

AND NOW, on this _____ day _____, 2022, upon consideration of the defendant's motion to dismiss the second superseding indictment for alleged violation of the speedy trial guarantee of the Sixth Amendment (Docket No. 390); and the government's opposition thereto; and for good cause shown;

IT IS ORDERED that the defendant's motion be and hereby is DENIED.

BY THE COURT:

_____
HONORABLE GERALD J. PAPPERT
*United States District Court Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA  :   CRIMINAL NO. 18-579-2

v.  :   UNDER SEAL

ARTHUR ROWLAND  :

### GOVERNMENT'S OPPOSITION TO DEFENDANT ROWLAND'S MOTION FOR SPEEDY TRIAL DIMISSAL

The United States of America, by its undersigned attorneys, Jennifer Arbittier Williams, United States Attorney for the Eastern District of Pennsylvania, and Paul G. Shapiro and Timothy M. Stengel, Assistant United States Attorneys, respectfully submits this response in opposition to defendant Arthur Rowland's motion to dismiss the second superseding indictment for alleged violation of the speedy trial guarantee of the Sixth Amendment to the United States Constitution (Docket No. 390).

### STATEMENT OF PROCEDURAL HISTORY

On December 12, 2018, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging Curshawn Banks, Isiah Ulmer, Hakim Williams, and Arthur Rowland with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). That indictment was assigned Criminal No. 18-579.

On December 14, 2018, Curshawn Banks, Arthur Rowland, Isiah Ulmer, and Hakim Williams were arrested. On January 9, 2019, the grand jury returned a superseding indictment. In addition to maintaining the original conspiracy against Banks, Ulmer, Williams, and Rowland, the superseding indictment added Jeffrey Stamps to the conspiracy and also charged Stamps with substantive distribution and firearms charges. Trial was scheduled for March 4, 2019 (Docket No. 58).

On January 30, 2019, defendant Banks moved to continue the trial date (Docket No. 69). Rowland did not object and that motion was granted, and trial was rescheduled for May 20, 2019 (Docket No. 78).

On May 1 and May 10, 2019, defendants Banks and Williams, respectively, moved to continue the trial date (Docket Nos. 89 and 92). Again Rowland did not object. Those motions were granted, and trial was rescheduled for November 4, 2019 (Docket No. 93).

On August 22, 2019, Rowland filed a motion to extend the period within which he could file pretrial motions (Docket No. 94). On September 10, 2019, Rowland filed a motion to suppress evidence (Docket No. 98). On October 1, 2019, the government filed a sealed opposition (Docket No. 101), addressing the merits of Rowland's suppression motions. On November 4, 2019, when the parties appeared for argument on the defendant's motions, the defendant's counsel advised the Court that the defendant wished to withdraw his motions. *See* TR (11-

2

4-2019), p. 3. On that same day, the Court entered an order denying Rowland's motions as moot in view of his waiver (Docket No. 122).[1]

In the meantime, on October 9, 2019, the grand jury returned a second superseding indictment. In addition to charging Banks' prior convictions, the second superseding indictment (i) added substantive narcotics and firearms charges against Banks, Rowland, and Williams; and (ii) added a new defendant, Danielle Bradford, to the narcotics conspiracy alleged in Count One. Rowland was arraigned on October 23, 2019.

By motion filed October 29, 2019, defendant Williams moved to continue the trial (Docket No. 119). Rowlands did not oppose this motion, and he further endorsed this continuance request during his appearance before the Court on November 4, 2019. *See* TR (11-4-2019). The defendants' request for continuance was granted, and trial was rescheduled for January 6, 2020 (Docket No. 121).

On January 3, 2020, the parties filed a joint motion to continue the trial (Docket No. 180). That request rested on two bases: (1) the recent joinder of a new defendant who, by statute, could not be compelled to begin her trial on the present date; and (2) the government's recent discovery that there existed potentially material information from a related out-of-state investigation with which none of

---

1  Rowland has recently taken advantage of the delay in beginning his trial to ask the Court to renew that pretrial motion not withstanding his explicit waiver of the issues previously raised by him (*see* Docket No. 389).

the parties to this case had yet been provided. Not only did Rowland join in the joint continuance motion through his counsel, but he personally signed a waiver in which he represented that he did not oppose the requested continuance and expressly agreed that the resulting delay would not deprive him of his speedy trial rights under the Sixth Amendment (Docket No. 173). On January 6, 2020, the Court entered an Order (Docket No. 184) on the joint motion of the parties, continuing the trial date to March 9, 2020, and excluding time under the Speedy Trial Act, in the interests of justice, on account of the recent arraignment of the added defendant and the recent production of additional discovery material.

On February 27, 2020, without objection from any party, the Court entered an Order (Docket No. 203), continuing the trial date to May 4, 2020, and excluding time under the Speedy Trial Act, in the interests of justice, in order to address issues concerning the potential conflict of interest of counsel for defendant Hakim Williams. After an evidentiary hearing, Williams filed a waiver of conflict on March 19, 2020 (Docket No. 216). Trial remained scheduled for May 4, 2020.

On April 27, 2020, the government filed a motion, unopposed by Rowland and his co-defendants, asking the Court to continue the trial due to the COVID-19 pandemic and the Chief Judge's standing orders suspending the conduct of trials in light of that public health emergency (Docket No. 222). The Court granted that

motion by Order of April 27, 2020 (Docket No. 223). Trial was rescheduled for October 19, 2020.

On September 4, 2020, the Court entered an Order after a telephone conference with counsel concerning the scheduling of the trial (Docket No. 248). In view of the Chief Judge's latest standing orders in response to the COVID-19 pandemic, and the ongoing public health emergency, the trial was continued until December 7, 2020.

On November 10, 2020, the United States filed a motion to continue the trial date (Docket No. 260). After a telephone conference call with counsel, on November 12, 2020, the Court entered an Order (Docket No. 263) that continued the trial date until April 5, 2021 in view of the Chief Judge's latest standing orders in response to the COVID-19 pandemic and the ongoing public health emergency.

On March 10, 2021, the government filed another COVID-related continuance motion. That motion, agreed to by all counsel after consultation with their clients, sought a continuance until September or October, 2021 (Docket No. 294).. The Court granted the motion and rescheduled the trial for October 15, 2021 (Docket No. 295).

On October 15, 2021, the parties appeared and conducted *voir dire* in anticipation of starting the trial as scheduled (*see* Docket No. 335). However, based on information made available to Rowland's then-counsel pursuant to a protective order entered January 29, 2020 (Docket No. 190), and based on

Rowland's then-counsel's comments made both on and off the record, on October 18, 2021, the Court appointed conflict counsel to advise Rowland on a potential conflict between him and his then-counsel (Docket No. 344). Based on the results of that consultation, and Rowland's determination not to waive his then-counsel's conflict, the Court ordered that the trial be continued (Docket No. 351). After the appointment of new counsel, trial was rescheduled for February 14, 2022 (Docket No. 359).

In the meantime, trials in this district have remained subject to substantial limitations on number, length, and complexity due to the COVID-19 public health emergency.

Rowland has now moved to dismiss the second superseding indictment, claiming that his constitutional speedy trial rights have been infringed (Docket No. 390). The government submits this opposition to that motion.

### STATEMENT OF FACTS

In about January 2018, the Philadelphia office of the FBI received an anonymous tip alleging large scale drug trafficking by Curshawn Banks. Investigation by the FBI substantially corroborated that tip, and established that Banks was involved in the interstate mailing of illegal narcotics, including methamphetamine, from Los Angeles to Philadelphia for distribution. The tip, and follow up investigation, also revealed that Banks' friend and his girlfriend were also associated with Banks' drug trafficking activities.

While they were conducting their investigation of Banks and his associated drug trafficking organization (the "Banks DTO"), in June 2018, the Philadelphia FBI received an investigative lead from the FBI in Springfield, Illinois (the "Springfield Investigation"). The Springfield Investigation had identified a California-based drug trafficker, known as "Teddy," as a substantial source of methamphetamine supplied to drug dealers in the Springfield area. In light of the number of calls between Teddy and the telephone associated with Banks, and given the quantity of narcotics that the Springfield Investigation had identified as being shipped to the Philadelphia area, the Springfield Investigation referred Banks to the Philadelphia FBI as a probable target.

On June 14, 2018, the Springfield Investigation obtained a Title III wiretap order authorizing the interception of communications occurring over Teddy's telephone. That interception was active between June 14, 2018 and July 13, 2018.

7

Because Banks was one of Teddy's major customers, the Springfield wiretap intercepted numerous communications between Teddy and Banks. The intercepted calls thoroughly demonstrated that Banks and Teddy were jointly involved in the illicit trafficking of narcotics, primarily methamphetamine.

In connection with the Philadelphia investigation of the Banks DTO, this Court granted four separate applications for orders authorizing the interception of wire and/or electronic communications. Based in part on evidence obtained as the result of intercepted wire communications, on December 13, 2018, a federal magistrate judge approved warrants to search six residences in the Eastern District of Pennsylvania based on a single master affidavit (cited as "SW Aff. at ¶ ____"). All of the Pennsylvania locations were residences connected to members or associates of the Banks DTO.

Among the residences for which search warrants were approved based on the master affidavit was Unit 14Q of the Park Plaza Condominiums, 3900 Ford Road, Philadelphia, PA (the "Ford Road Residence"). *See* SW Aff. at ¶¶ 114-34. The management of the building identified defendant Arthur Rowland as the tenant of Unit 14Q. SW Aff. at ¶ 114. This fact was confirmed by intercepted telephone conversations and surveillance that established that Rowland referred to the Ford Road Residence as his "crib." *See* SW Aff. at ¶ ¶ 116-19.

On December 14, 2018, the FBI executed this Court's warrant at the Ford Road Residence. The search of that apartment, pursuant to this Court's warrant,

revealed a Sig Sauer handgun located in a backpack in Rowland's living room and about three pounds of methamphetamine, later tested as at least 94 percent pure, concealed in a drawer underneath the oven in his kitchen. Agents discovered $10,000 in United States currency stuffed into the frame of the living room couch and another $6,900 in cash in the pocket of a pair of jogging pants. Also in the living room, investigators located a drum magazine, suitable for use in an AK-47-type assault file, containing seventy-three (73) rounds of 7.62mm ammunition.

In their initial search of Rowland's apartment, agents were unable to locate an assault rifle capable of accepting the drum magazine. However, after learning later in the day that Rowland kept his assault rifle in a hidden compartment in a piece of furniture in the apartment, agents returned to the apartment, intending to secure it while a second search warrant was obtained. Agents encountered a number of persons who admitted removing objects and furniture from Rowland's apartment. In particular, agents observed Rowland's sister with the item believed to conceal Rowland's rifle in her car. A consent search of the vehicle revealed a nightstand with a motorized hidden compartment. Concealed within the compartment were two AK-47-type assault rifles.

Rowland was arrested at the Ford Road Residence on December 14, 2018. He appeared before a United States magistrate judge and was ordered detained pretrial.

## ARGUMENT

### There has been no infringement of Rowland's Sixth Amendment right to a speedy trial.

Rowland was arrested December 14, 2018. His trial is currently scheduled to begin on February 14, 2022. He claims that his constitutional speedy trial rights have been infringed by the delay in beginning his trial. Rowland's motion is without merit and should be denied.

As an initial matter, Rowland does not deny that his scheduled trial date is in full conformity with the Speedy Trial Act, 18 U.S.C. § 3161. This implicit concession is not only fully consonant with the district court record, but is legally significant. The "Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the sixth amendment, and therefore a trial which complies with the Act raises a strong presumption of compliance with the Constitution." *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995). It will, therefore, be "an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated." *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (*quoting United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)); *see also United States v. Aldaco*, 477 F.3d 1008, 1018-19 (8th Cir. 2007).

Rowland offers no basis to believe that his is one of those unusual cases where the constraints of the Speedy Trial Act were met but the Constitution was

violated. Indeed, an examination of the delays in this case establishes that all were not only compliant with the Act, but were necessary and appropriate in the interests of justice. As a consequence, a trial beginning on February 14, 2022 will easily satisfy Sixth Amendment requirements.

Under *Barker v. Wingo,* 407 U.S. 514 (1972), a court evaluating a constitutional speedy trial claim should consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) any prejudice to the defendant. *Id.*

### Factor 1: the length of the delay

The four *Barker v. Wingo* factors need be analyzed only where the period of delay is sufficiently lengthy. *United States v. Dent*, 149 F.3d 180, 184 (3d Cir. 1998). This threshold requirement, deemed a "presumptively prejudicial delay," is designed to distinguish those cases that have been unduly delayed from the remainder that, while subject to "ordinary" delay, were prosecuted with customary promptness. *Doggett v. United States*, 505 U.S. 647, 652 (1992). Ordinarily, this threshold delay is measured from the date of arrest until the date of trial. *See Hakeem v. Beyer,* 990 F.2d 750, 760 (3d Cir. 1993). Here, however, that 38-month period includes the pandemic-related measures that affected all federal cases in the Eastern District of Pennsylvania. Thus, to provide proper context for what constituted "ordinary" delay during this time period, the Court should discount the time attributable to pandemic-related measures.

11

On March 13, 2020, the Chief Judge of this Court entered a Standing Order providing that, as a result of the emergency presented by the coronavirus disease COVID-19, all civil and criminal jury trials scheduled to begin between March 13, 2020, and April 13, 2020, before any district or magistrate judge in any courthouse in the Eastern District of Pennsylvania were continued pending further Court order. Although a small number of trials have been held in the interim, there have generally been only one or two in the courthouse at a given time, and those cases have generally been limited to the simplest cases with the fewest defendants and least number of civilian and out-of-state witnesses. Thus, for comparison purposes, Rowland's effective delay is really the 15-months from December 14, 2018 until March 13, 2020. While the government agrees that even a 15-month delay would require an examination of the four *Barker v. Wingo* factors, each of them weighs against Rowland.

Particularly when discounted for the pandemic-related disruption of trials, the length of the delay in this case was consistent with the nature and complexity of the crimes with which Rowland has been charged. As the Supreme Court explained, the length of delay that will provoke a Speedy Trial inquiry "is necessarily dependent upon the peculiar circumstances of the case." *Barker v. Wingo*, 407 U.S. 514, 530–31 (1972). Thus, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531.

Here, Rowland was one of six defendants charged with orchestrating a complex conspiracy to acquire in California, transport across the United States, and distribute in the Philadelphia metropolitan area, hundreds of pounds of methamphetamine and marijuana; and then to use the American banking system to return much of the resulting proceeds to the drug suppliers across the international border in Mexico. The investigation that ultimately led to Rowland's arrest involved multiple federal law enforcement agencies; Title III wiretaps in two different districts; and hundreds of subpoenas, records requests, and witness interviews. Therefore, while a full *Barker v. Wingo* inquiry is appropriate, the first factor – the length of the delay – cuts against Rowland. *See United States v. Hampton*, 2021 WL 1088289, at *6 (E.D. Pa. Mar. 22, 2021) (rejecting constitutional speedy trial claim and noting that "the complexity of the case supported a two-year run-up to trial.").

### *Factor 2: the reasons for the delay*

The Supreme Court has instructed that "different weights should be assigned to different reasons" for the delay in a defendant's trial. *Loud Hawk,* 474 U.S. at 315. Thus, the government's "deliberate attempt to delay the trial in order to hamper the defense, would be weighed heavily against the Government, [while] a delay from overcrowded courts—as was the situation here—would be weighed less heavily." *Id.* (quotations omitted; brackets added). At the other end of the scale, delays attributable to the defendant are not weighed against the government

13

at all in the speedy trial calculus. *See United States v. Dent,* 149 F.3d 180, 184 (3d Cir. 1998) ("Although both parties contributed to the post-indictment delay, it is clear that Dent bears the bulk of responsibility in this regard.").

Here, the vast majority of the delay is attributable to neutral factors that do not weigh against the government. Chief among these are approximately 17 and one-half months of delays due to COVID-19 pandemic related continuances (Docket Nos. 223, 248, 263, 295). Indeed, each of these orders was entered with the concurrence of all counsel.

Likewise, about seven and one-half months of delay were due to continuances requested by other defendants (Docket Nos. 40 [Williams], 69 [Banks], 89 and 92 [Banks and Williams], and 119 [Williams]). Each of these delays were appropriate to allow preparation of the defense in such a complicated evidence-intensive case. Rowland did not object to any of the requested continuances, and took advantage of the time to advance his own defense, including the preparation and filing of pretrial motions (Docket Nos. 72 (bail); 94 (extend time for motions); 98 (suppression motions); 264 (reconsider bail); 389 (renew suppression)). Again, none of this time is properly attributed to the government. *See United States v. Boone*, 2002 WL 31761364, at *15 (D.N.J. Dec. 6, 2002) (The third *Barker v. Wingo* factor "weighs heavily against the defendant if he is represented by competent counsel who had notice of motions for continuances of the trial, but never objected to the continuances.").

14

Similarly, a delay of just under two months was attributable to a conflict of interest by co-defendant Williams' counsel. That time was required to permit briefing, an evidentiary hearing, a ruling by the Court, and the waiver of the conflict by Williams. Yet again, none of this delay was attributable to the government, and the brief time needed to address and resolve this issue is properly excluded from the speedy trial analysis. Rowland does not contend otherwise. *See Loud Hawk,* 474 U.S. at 316 (delays attributable to meritorious government interlocutory appeals did not contribute "any effective weight" towards the defendant's speedy trial claims).

This leaves just two periods of delay: (i) two months from January 6, 2020 until March 9, 2020; and (ii) four months from October 15, 2021 until February 14, 2022. In his motion, Rowland seizes on these two discrete periods, attempts to weigh both heavily against the government and, on that basis, "capture" the flag. *See* Rowland Speedy Trial Motion (Docket No. 390), at ECF pp. 5-6/8.

This effort is unavailing for two independent reasons. First, a period of delay of only six months, even if heavily attributed to the government, is entirely inadequate to win the issue for Rowland. As the Supreme Court has noted, the remedy for a Sixth Amendment speedy trial violation is dismissal with prejudice, a result which is "unsatisfactorily severe . . . because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." *Barker,* 407 U.S. at 524. Particularly where, as here, the other *Barker v. Wingo* factors cut

15

so decisively against him, such a short delay cannot result in dismissal. *See United States v. Shulick,* 18 F.4th 91, 102 (3d Cir. 2021) (affirming district court determination that there was no Sixth Amendment violation despite an 18-month delay attributable to the Government and the defendant's timely assertion of his right).

More importantly, the periods of delay are not properly attributed to the government, and especially not "heavily." The first period of delay was due to two concurrent events. First, a new co-defendant had been added to the case by the second superseding indictment. By statute, she could not be compelled to go to trial on the then-existing trial date. Given that the federal courts favor joint trials, and given the co-defendant's recent joinder, the resulting two-month delay was entirely appropriate. Thus, like the government's pursuit of a well-founded interlocutory appeal, this period of delay should not contribute "any effective weight" towards the defendant's speedy trial claims. *See Loud Hawk,* 474 U.S. at 316.

Second, this period of delay was attributable to the government's recent discovery of case-related material in the hands of a different U.S. Attorney's Office. The case in the Eastern District of Pennsylvania was the product of a referral from the Southern District of Illinois. That investigation collected numerous telephone calls pertinent to the charges in the second superseding indictment in this case. As a consequence, the government asked the Southern

16

District of Illinois to produce all of its discovery for the benefit of the defendants in the Eastern District of Pennsylvania. Although the Illinois U.S. Attorney's Office produced a large volume of information, it omitted a substantial volume of discoverable evidence. That fact did not become apparent until the government began preparing exhibits for trial and found that certain pertinent calls, which had been intercepted through the Southern District of Illinois' wiretap, had not been provided to the government or the defense in this case.

While this discovery misstep was not the fault of any of the defendants, it was also not the direct fault of the government in this case. The information was in the hands of the Southern District of Illinois, and the representation that everything had been provided was only disproved when trial counsel noticed particular absences. Of course, government counsel could have noticed these absences earlier and, in a perfect world, would have done so. At the same time, given the discovery that had been produced, defense counsel were also in a position to notice the same absences.

In apparent recognition of the diffusion of responsibility for both causes of delay, all parties submitted a joint motion to continue (Docket No. 180). Rowland supported that motion with an express waiver of his Sixth Amendment speedy rights (Docket No. 173). He cannot now change course, disregard his own waiver, and leverage the very delay that he jointly requested to obtain dismissal of the

indictment. Indeed, even where the government has been genuinely at fault, this

Court has rebuffed such repugnant tactics:

> The defense cannot now have it both ways. It was fully aware of the Government's plodding production prior to August 23, 2017. Counsel cannot seek and obtain continuances to give the defense more time to be ready for trial because of the Government's dilatory behavior and then after the fact reverse course and claim that the indictment should be dismissed on the ground that defendant's right to a speedy trial under the Constitution has been infringed because of that behavior. Courts have cautioned against this sort of tactic and have particularly frowned upon it when the right is not asserted until the eve of trial.

*United States v. Shulick*, 290 F.Supp.3d 332, 342-43 (E.D. Pa. 2017).

The second period of delay relied upon by Rowland is even less attributable

to the government. Pursuant to a protective order entered on January 29, 2020,

defense counsel were provided with access to a discrete set of highly sensitive

documents. One of Rowland's then-trial counsel availed himself of this access and

reviewed these documents on February 2 and February 13, 2020.

Among the records reviewed by Rowland's counsel were FBI reports

detailing how Rowland had hired a contract killer to assassinate both a witness

against him in a state court proceeding as well as an unrelated victim whose

killing was designed to obscure the motive for the murder of the witness. Also

among these FBI reports was evidence that: (i) Rowland's then-counsel in this

case had also represented him in those state court proceedings; and (ii) had

offered a piece of legal advice that led to Rowland's decision to commission the killings.

Ultimately, the government brought the potential conflict of interest to the Court's attention after Rowland's then-counsel suggested that the government reach a joint resolution of the charges pending against Rowland along with prospective charges arising from the murders. After the appointment of independent conflict counsel, Rowland declined to waive the conflict, resulting in a four-month delay of the trial from October 15, 2021 until February 14, 2022.

Rowland insists that this final delay is "heavily" the fault of the government. Nothing could be further from the truth. A defense lawyer's ethical responsibilities are, first and foremost, his own responsibility. While government counsel, as officers of the Court, are obliged to bring to the Court's attention any conflicts of interest that become apparent– which it did when they did – the primary responsibility for policing Rowland's counsel's ethical concerns was with Rowland's counsel. Not only did he have access to the government's evidence for more than a year and a half, but he had continued access to Rowland as well as to their shared confidences from the state court matter. If anyone was to detect a linkage between the matters and to understand that Rowland's then-counsel faced an ethical dilemma, it was Rowland's counsel. Of course, Rowland is liable for his own attorney's missteps. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) ("[T]he attorney is the petitioner's agent when acting, or failing to act, in furtherance of

19

the litigation, and the petitioner must 'bear the risk of attorney error.'"). He cannot shift that blame to the government. His attribution of fault should therefore be rejected and responsibility for the final four-month delay should be placed on Rowland's shoulders.

*Factor 3: Rowland's failure to assert of his speedy trial right.*

Until he filed the present motion, less than two weeks before the date scheduled for his trial, Rowland did not ever assert his speedy trial right. As the Third Circuit has observed, the "failure to assert the right will make it difficult for [petitioner] to prove that he was denied a speedy trial." *Hakeem,* 990 F.2d at 764.

Here, Rowland never demanded a trial, filed a speedy trial motion, or complained that the delays in his case were untoward. Indeed, he explicitly consented to several continuances, joined in others, and silently assented to the remainder. Apparently recognizing the importance of this factor to his claim, Rowland now insists that his February 2019 motion for bail (Docket No. 72), his untimely November 2020 motion to reconsider the Court's denial of bail (Docket No. 264), and his pro se letter to the Court (Docket No. 314) constituted informal demands for a prompt adjudication. *See* Rowland Speedy Trial Motion (Docket No. 360), at ECF pp. 6-7/8.

Rowland's argument fails both as a matter of fact and as a matter of law. As Rowland acknowledges, the Third Circuit has instructed that, at least for defendants such as Rowland who are represented by counsel, a speedy trial

assertion requires that "some formal motion should be made to the trial court or some notice given to the prosecution." *Hakeem,* 990 F.2d at 765. Motions seeking bail, and letters complaining about prison conditions do not qualify. More fundamentally, neither of Rowland's motions, nor his letter, even suggested a desire for a prompt trial. Indeed, the desire for pretrial release often goes hand-in-hand with a willingness to delay the conclusion of the pretrial period. Likewise, Rowland's pro se complaint about his removal from the general prison population is entirely consistent with a continued willingness to delay his trial until he was sure that his counsel was ready. As the Supreme Court noted, "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Barker,* 407 U.S. at 536.[2]

### Factor four: lack of prejudice

As the Third Circuit has explained, prejudice is "the most important factor in the *Barker* analysis." *Shulick*, 18 F.4th at 102. "With respect to all its various

---

2   Courts often reject as unfounded speedy trial assertions where defendants' conduct is inconsistent with their formally articulated demands. *See United States v. Loud Hawk,* 474 U.S. 302, 315-16 (1986). Here, Rowland has made no formal demands, but has availed himself of the delay in his trial to seek to relitigate pretrial suppression motions that he previously filed and withdrew. This conduct confirms that Rowland has neither sought nor desired a more prompt disposition of his case.

types, the burden of showing prejudice lies with the individual claiming the violation and '[the] possibility of prejudice is not sufficient to support [the] position that … speedy trial rights [are being] violated.'" *Hakeem,* 990 F.2d at 760 (quoting *Loud Hawk,* 474 U.S. at 315).

Here, Rowland has not even suggested that he suffered any type of case-specific prejudice. That reticence is well founded. The evidence in this case centers around recordings of Rowland and his conconspirators' telephone calls, text messages, and screen-shots; along with copies of third-party records and the recovery of contraband from the search of Rowland's apartment. There is simply no basis to believe that Rowland's "defense would be hamstrung by unavailable witnesses or poorly preserved physical evidence." *United States v. Vasquez-Uribe*, 426 F. App'x 131, 138 (3d Cir. 2011).

Instead, Rowland relies on what he characterizes as oppressive pretrial incarceration. In doing so, Rowland does not claim to have suffered a "loss of employment, disruption of family life or excessive mental anguish resulted from his pre-trial imprisonment." *See Hakeem,* 990 F.2d at 762. Rather, Rowland relies exclusively on the length of his incarceration combined with his confinement to the Federal Detention Center's Special Housing Unit ("SHU") in an effort to meet his burden of proving prejudice.[3]

---

[3]  Rowland also raises the fact that he contracted COVID-19 while incarcerated. That disease, however, has widely afflicted both persons subject to

The Third Circuit has recognized "that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *United States v. Battis,* 589 F.3d 673, 682 (3d Cir. 2009) (*quoting Doggett v. United States*, 505 U.S. 647, 655–56 (1992)). The Court, however, has limited such presumptive prejudice to extreme cases, holding that "prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government." *Battis*, 589 F.3d at 683. Here, of course, there has not been 45 months of delay and, whatever delay there has been, is not appropriately attributable to the government.

Even, however, where prejudice is presumed based on excessive delay, the Supreme Court has cautioned that "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett*, 505 U.S. at 655–56. Rather, presumptive prejudice is to be treated as "part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* Presumptive prejudice can, moreover, "be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government 'affirmatively prove[s] that the delay left [the defendant's] ability to defend

---

incarceration and those who are at large in society. There is no reason to believe that Rowland became infected *because* his trial was delayed or due to his pretrial detention.

23

himself unimpaired.'" *Battis*, 589 F.3d at 682 (quoting *Doggett,* 505 U.S. at 658 & n. 1).

The tenuousness of Rowland's prejudice claim is not salvaged by the fact that has been confined to the SHU. Rowland has not, and cannot, show that detention in the SHU amounts to the kind of sub-standard conditions that "a just system in a civilized society" cannot tolerate. *See Hakeem,* 990 F.2d at 761. In any event, Rowland's confinement to the SHU was made necessary by his own persistent misconduct, including his possession and smuggling of contraband and his instigation of threats to witnesses and other inmates. The speedy trial clause of the Sixth Amendment was never intended to render society impotent to protect itself from violence and disruption, and the onset of a pandemic has not altered that truth.

Because each of the *Barker v. Wingo* factors weighs against Rowland, some of them quite strongly, his last-minute Sixth Amendment speedy trial motion is without merit. It should, therefore be denied.

**CONCLUSION**

For the foregoing reasons the government respectfully requests that the Court deny defendant Arthur Rowland's motion to dismiss the second superseding indictment.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


*s/ Paul G. Shapiro*
PAUL G. SHAPIRO
TIMOTHY M. STENGEL
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing government's

opposition to defendant's motion to dismiss was filed electronically, is available

for viewing and downloading from the Electronic Case Filing system, and was

served by email upon:

> Richard J. Fuschino, Jr., Esquire
> Law Office of Richard J. Fuschino
> 1600 Locust St
> Philadelphia, PA 19103
> rjf@fuschinolaw.com
> **Counsel for Defendant Arthur Rowland**

> *s/ Paul G. Shapiro*
> Assistant United States Attorney

DATED: February 7, 2022