**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>ARTHUR ROWLAND | CRIMINAL ACTION<br>NO. 18-579-2 |

**PAPPERT, J.**                                                                                                              February 11, 2022

**MEMORANDUM**

Arthur Rowland was arrested on December 14, 2018 and opening arguments in his trial are scheduled to begin on February 14, 2022. He moves to dismiss the indictment against him for violations of his Sixth Amendment right to a speedy trial. The Court denies his motion for the following reasons.

I

On December 12, 2018, the grand jury returned an indictment charging Rowland and others with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (ECF 1.) He was arrested on December 14 and trial was originally scheduled for March 4, 2019. (ECF 58.) Since then, additional charges against Rowland, the original codefendants and additional defendants have been filed through superseding and second superseding indictments. (ECF 43, 105.) The original trial date has been continued multiple times, with the bulk of the delay attributable to the COVID-19 pandemic. (*See* Def.'s Mem., ECF 390 at ECF p. 5 (recognizing the Court has been "significantly limited due to COVID-19").) As a result, Rowland's motion centers on delay resulting from just two continuances – one of which Rowland agreed to and the second falls at the feet of his prior counsel.

The first continuance resulted in a two-month delay. Three days before the then-scheduled January 6, 2020 trial, the parties jointly moved to continue it. (ECF 180.) By statute, a recently added sixth defendant could not yet be compelled to begin her trial. In addition, the Government had discovered potentially material information from a United States Attorney's office in another district that had not yet been provided to the defense. Rowland, through his then-counsel, joined in the motion and signed a waiver stating he did not oppose a continuance and expressly agreeing the resulting delay would not deprive him of his Sixth Amendment right to a speedy trial. (ECF 173.) The Court continued the trial date to March 9, 2020. (ECF 184.)

The second challenged continuance led to a four-month delay. On October 14, 2021 the parties selected the jury, with opening statements scheduled for October 18. (ECF 335.) However, the jurors were never sworn in and the trial was continued when questions arose on October 15 regarding Rowland's lawyer's potential conflict of interest. The Court appointed conflict counsel to advise Rowland (ECF 344) who then declined to waive the conflict. He was appointed new counsel and a jury was selected again on February 10, 2022. (ECF 351, ECF 359.)

II

The Sixth Amendment provides a defendant the right to a speedy trial in any criminal prosecution. U.S. Const. amend. VI. The "only possible remedy" for a violation of this right is dismissal of the indictment, "a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." *Barker v. Wingo*, 407 U.S. 514, 522 (1972).

Factors governing whether a defendant has been denied a speedy trial include:

(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) any prejudice to the defendant. *Id.* at 530. No single factor is a "necessary or sufficient condition" to establish a speedy trial violation. *Id.* at 533. "All factors must be considered and weighed as no one factor is dispositive nor 'talismanic.'" *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) (quoting *Barker*, 407 U.S. at 533).

### A

As an initial matter, Rowland does not contend the delays violated the Speedy Trial Act. With respect to the Sixth Amendment claim, Rowland must show "the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). If the Government "has, in fact, prosecuted his case with customary promptness," he cannot establish a Sixth Amendment violation. *Id.* at 652. The threshold delay is ordinarily measured by considering the time between "the earliest date of arrest or indictment until the commencement of trial." *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993).

Of the thirty-eight months between Rowland's December 14, 2018 arrest and the February 10, 2022 trial, fifteen were unaffected by the COVID-19 emergency measures that have influenced all Eastern District of Pennsylvania trial schedules.[1] This is enough to meet the presumptively prejudicial threshold. *See Hakeem*, 990 F.2d at 760 ("[A] fourteen and one-half month detention before trial merits further inquiry."). As a

---

[1] The Chief Judge entered the first of many successive Standing Orders continuing trials as a result of the COVID-19 emergency on March 13, 2020.

result, the Court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 651-52.

The length of any delay necessarily depends on "the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. A tolerable delay "for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. Here, Rowland was one of six defendants ultimately charged with, among other things, orchestrating a conspiracy to transport and distribute drugs. The investigation leading to his arrest involved multiple Title III wiretaps in different districts, hundreds of subpoenas, records requests and witness interviews. Given the case's complexity and discounting the COVID-19-related delays, the first *Barker* factor does not tip in Rowland's favor. *Cf.*, *United States v. Hampton*, No. 15-302, 2021 WL 1088289, at *6 (E.D. Pa. Mar. 22, 2021) (rejecting a constitutional speedy trial claim in a wire fraud conspiracy, wire fraud and identity theft case where "the complexity of the case supported a two-year run up to trial").

B

The Court next considers the reason for any delay and "whether the government or the criminal defendant is more to blame[.]" *Doggett*, 505 U.S. at 651. For example, a deliberate attempt by the Government to delay the trial in order to hamper the defense would weigh heavily against the Government. *Barker*, 407 U.S. at 531. In contrast, because "defendants may have incentives to employ delay as a 'defense tactic,'" "delay caused by the defense weighs against the defendant . . . ." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009). The Court should "subtract the amount of delay caused by the defendant

4

from the delay caused by the Government."[2] *United States v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009). Rowland argues the January 2020 delay and the October 2021 delay tip the second *Barker* factor in his favor. They do not.

1

In Rowland's view, the postponement between January 6, 2020 and March 9, 2020 should weigh against the Government. (ECF 184.) He is not responsible for the initial appearance of a sixth defendant three weeks before the scheduled trial. Nor is he responsible for the Government's delayed production of discovery materials. Nevertheless, this delay is no more than neutral in the *Barker* analysis because Rowland participated in a joint motion to continue the January 6, 2020 trial date and supported the request with an express waiver of his Sixth Amendment speedy trial rights. (ECF 173 and 180.) He cannot, as the Government argues "leverage the very delay that he jointly requested to obtain dismissal of the indictment." (Gov't Opp'n at 17-18.)

2

Rowland also contends the delay from October 14, 2021 until February 10, 2022 (ECF 351) should weigh heavily against the Government because it "was aware of any potential conflict arising with [his prior] attorney for several years" and, in his view,

---

[2] The COVID-19 pandemic related continuances are a neutral factor and account for most of the overall delay – approximately seventeen and a half months. Each of the continuance orders related to COVID-19 were entered with the agreement of all counsel. (*See* ECF 223, 248, 263, 295.)

Continuances requested by other defendants accounting for around seven and a half additional months of delay are also neutral in the *Barker* analysis. (ECF 40 (Williams), 69 (Banks), 89 and 92 (Banks and Williams), and 119 (Williams).) Rowland did not object to any of them and used the additional time they provided to advance his own defense by filing pretrial motions (ECF 72 (bail); 94 (extension of pretrial motions deadline); 98 (suppression motions); 264 (bail reconsideration); 389 (renewed suppression motion).

caused undue delay by "insisting that a conflict arose at the [eleventh] hour . . . ." (*Id.*) This argument is meritless as well.

The circumstances giving rise to Rowland's former lawyer's conflict of interest are in FBI reports which suggest Rowland's counsel provided legal advice that led Rowland to order the contract killings of a witness and another person in a state court proceeding against Rowland. This alleged conduct led to a separate federal investigation in this district. The Government gave Rowland's lawyer the FBI reports in January 2020, though Rowland and the lawyer obviously knew all of this in far greater detail and for far longer than the Government.

The information became problematic in this case when, sometime during or after jury selection on October 14, 2021, defense counsel for the first time proposed a joint resolution of the charges pending against Rowland along with the prospective federal charges stemming from the murders. The Government immediately alerted the Court to this possible conflict. At that point, the Court was entitled to seek to "enforce the ethical rules governing the legal profession with respect . . . to conflict-free representation" in order "to protect the critically important candor that must exist between client and attorney, and to engender respect for the court in general . . . ." *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991).

The delay caused by the discovery of defense counsel's conflict of interest is far more attributable in the *Barker* analysis to Rowland and his lawyer than the Government. Rowland's prior counsel was responsible for policing his own ethical concerns. *See Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980) ("Defense counsel have an ethical obligation . . . to advise the court promptly when a conflict of interest arises

6

during the course of trial."); *see also* Pa. R. Prof. Conduct 1.7(a)(2) ("[A] lawyer shall not represent a client if the representation involves . . . a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer.").

C

Because Rowland has been represented by counsel since this case's inception, "to tip the *Barker* scales significantly in his favor on the factor of his assertion of" his speedy trial right, "some formal motion should [have been] made to the trial court or some notice given to the prosecution" *Hakeem*, 990 F.2d at 765. Prior to the eve of this week's jury selection, Rowland never formally moved to enforce his Sixth Amendment right to a speedy trial. (ECF 390.) His failure to do so makes it "difficult" to prove a constitutional violation. *Hakeem*, 990 F.2d at 764.

Rowland argues he "in his own way, addressed his speedy trial right" through his February 2019 motion for bail (ECF 72), his untimely November 2020 motion for reconsideration of the Court's determination to deny bail (ECF 264) and his September 9, 2021 pro se letter to the Court complaining about being housed in the Federal Detention Center's Security Housing Unit, ostensibly without explanation (ECF 314). (Def.'s Mot. at ECF p. 6-8.) But the bail motions and complaint about prison conditions did not explicitly express his desire for a prompt trial and are obviously not enough to tip the *Barker* scales in his favor on the third factor. Indeed, before this motion, Rowland agreed to several continuances, joined in others, and failed to object to the remainder. (*See* ECF 69, 89, 92, 119, 170, 173, 180, 203, 222, 248, 260, 294, 343, 351.) Moreover, concomitantly with this motion, Rowland filed another motion seeking to

7

reassert a previously withdrawn suppression argument (ECF 389) that, for substantive and procedural reasons, would have invariably postponed his trial again.

D

Finally, prejudice is the *Barker* analysis's "most important factor." *United States v. Shulick*, 18 F.4th 91, 102 (3d Cir. 2021). "[T]he burden of showing prejudice lies with the individual claiming the violation" and Rowland cannot rely on the "possibility of prejudice." *Hakeem*, 990 F.2d at 760 (citation omitted).

Rowland does not assert the delayed trial has caused him to suffer any prejudice specific to his defense. Instead, he argues prejudice should be presumed because "so much time has passed" that the prejudice to him is "likely unknowable." (Def's. Mem. at ECF p. 7.) But Rowland cannot show his "defense would be hamstrung by unavailable witnesses or poorly preserved physical evidence" because the case against him centers on evidence including recordings of phone calls between Rowland and his alleged co-conspirators, text messages, screen shots, copies of third-party records and contraband recovered from the search of his apartment.[3] *United States v. Vazquez-Uribe*, 426 F. App's 131, 138 (3d Cir. 2011).

Rowland's claim of prejudice rests more heavily on his contention that he has been personally prejudiced by the conditions of his confinement pending trial. Rowland contracted COVID-19 while awaiting trial and has been "placed in the special housing unit, effectively on round-the-clock lockdown" since sometime in or around April 2021

---

[3] Moreover, "the safety precautions necessitated by the COVD-19 pandemic, and [related] delays in the administration of judicial proceedings, were not part of a deliberate effort by the United States Government to hamper [Rowland's] defense." *United States v. Briggs*, No. 20-206, 2021 WL 915940, at *8 (E.D. Pa. Mar. 10, 2021).

(i.e., approximately four and a half months before his September 9, 2021 pro se letter to the Court). *(*Def.'s Mem. at ECF p. 8.)

Personal prejudice may include "oppressive pretrial incarceration." *Hakeem*, 990 F.2d at 760-61. However, "[a]ll pretrial detention is not equally oppressive or precisely definable." *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir. 1991). To the extent Rowland's conditions of confinement are due to health protocols aimed at protecting inmates from contracting COVID-19, they not "oppressive" under *Barker*. "They were necessary precautions taken to save lives" and Rowland has not been alone in facing such restrictions. *United States v. Briggs*, No. 20-206, 2021 WL 915940, at *9 (E.D. Pa. Mar. 10, 2021). Significantly, he has not shown the conditions have impaired his ability to adequately prepare his defense.

An appropriate Order follows.

BY THE COURT:

/s/ Gerald J. Pappert
GERALD J. PAPPERT, J.
