UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 18-cr-579-2 & 4 |
| | ) | |
| vs. | ) | |
| | ) | Philadelphia, PA |
| ARTHUR ROWLAND & HAKIM WILLIAMS, | ) | October 14, 2021 |
| | ) | 1:37 p.m. |
| | ) | (Afternoon Session) |
| Defendants. | ) | |

--------------------------------

PARTIAL TRANSCRIPT OF CRIMINAL JURY TRIAL
DAY 1 JURY SELECTION P.M. SESSION
BEFORE THE HONORABLE GERALD J. PAPPERT
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:        PAUL SHAPIRO, ESQUIRE
                          TIMOTHY MULLIGAN STENGEL, ESQUIRE
                          U.S. ATTORNEY'S OFFICE
                          615 Chestnut Street
                          Suite 1250
                          Philadelphia, PA  19106-4476

For the Defendant:         GUY R. SCIOLLA, ESQUIRE
                          GUY R. SCIOLLA ATTORNEY AT LAW
                          100 South Broad Street
                          Philadelphia, PA  19110

                          JOSEPH D. MANCANO, ESQUIRE
                          CEDRONE & MANCANO, LLC
                          353 West Lancaster Avenue, Su9te 300
                          Wayne, PA  19087

                          PANTELLIS PALIVIDAS, ESQUIRE
                          ELLIS LEGAL, LLC
                          100 S. Broad Street, Suite 1910
                          Philadelphia, PA  19110

Audio Operator:            JEFF LUCINI

Transcribed by:            DIANA DOMAN TRANSCRIBING, LLC
                          P.O. Box 129
                          Gibbsboro, NJ  08026-0129
                          Office:  (856) 435-7172
                          Fax:     (856) 435-7124
                          E-mail:   dianadoman@comcast.net
Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

```
 1                          I N D E X

 2    JUROR NUMBER:              PAGE   QUALIFIED    EXCUSED

 3    23                           4        8

 4    24                           9                    15

 5    25                          15                    21

 6    26                          21       23

 7    27                          23                    29

 8    28                          29       30

 9    29                          30       31

10    30                          32       33

11    31                          34       38

12    32                          38       40

13    33                          41       48

14    34                          48       51

15    35                          52       54

16    36                          57                    60

17    37                          61       63

18    38                          --       64

19    39                          64                    66

20    40                          66       68

21    41                          68                    71

22    42                          72       78

23    43                          80       84

24    44                          84                    86

25    45                          87                    95
```

Colloquy                                          3

1    INDEX (Cont'd.)

2    JUROR NUMBER:              PAGE    QUALIFIED    EXCUSED

3    46                         97                       99

4    47                         99      103

5    48                         103                      104

6    49                         105     109

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                                                    4

1        (The afternoon session of the proceedings commenced at

2   1:37 p.m., as follows:)

3              THE COURT:  Counsel, are you guys -- gentlemen

4   ready?

5              ALL COUNSEL:  Yes, Your Honor.

6              UNIDENTIFIED SPEAKER:  We're ready, sir.

7              THE COURT:  All right.  Welcome back, everybody.

8   Thank you.  Same rules as this morning.  All right.  Okay.  I

9   think we had left off at Juror 23.

10             MR. SHAPIRO:  That is correct, sir.

11             THE COURT:  All right.  Juror 23 answered yes to the

12  question about a drug treatment -- drug addiction.

13             MR. SHAPIRO:  Yes.

14             THE COURT:  Would you like to talk to Juror 23?

15             MR. SHAPIRO:  I want to.

16             THE COURT:  Yes?

17             MR. SCIOLLA:  Yes.

18             THE COURT:  Okay.  Juror 23, please?

19             (Pause)

20             (Sidebar with Juror No. 23 commenced:)

21             THE COURT:  Hi, Ma'am.

22             JUROR NO. 23:  Hello.

23             THE COURT:  Come on right up here.

24             JUROR NO. 23:  Okay.

25             THE COURT:  Just stand close to that, then I'll

 1    start with you.

 2                    JUROR NO. 23:  Okay.

 3                    THE COURT:  I know there was -- one of the questions

 4    pertained to whether you or a close friend or family, somebody

 5    who had either suffered from drug addiction or been through --

 6                    JUROR NO. 23:  Right.

 7                    THE COURT:  -- drug rehabilitation or treatment.

 8    Could you please tell us more about that?

 9                    JUROR NO. 23:  My brother-in-law, he died of a

10    fentanyl overdose.

11                    THE COURT:  Oh, I'm very sorry.

12                    JUROR NO. 23:  And my sister-in-law has had

13    addiction problems, so --

14                    THE COURT:  Okay, okay.

15                    JUROR NO. 23:  -- that's it.

16                    THE COURT:  All right.  Now, a couple of questions,

17    there, for you.  I believe, at least, as to one defendant,

18    there is an allegation that that defendant had possessed with

19    intent to sell heroin with fentanyl in it, if I remember

20    correctly, okay.

21                    JUROR NO. 23:  Okay.

22                    THE COURT:  So, would the fact that that drug is

23    involved prevent you from being fair and impartial in

24    listening to the evidence and my instructions?

25                    JUROR NO. 23:  I don't think so.

1         THE COURT:  Okay.  Would your -- would what you just

2    told us cause you to have a view of illegal drugs or people

3    who allegedly sell them that would prevent you from being fair

4    and impartial and holding the Government to their burden in

5    this case?

6         JUROR NO. 23:  I don't think so, no.

7         THE COURT:  Okay, okay.  I thank -- no, no, no.

8    They may have some more.

9         JUROR NO. 23:  Okay, sorry.

10        THE COURT:  I asked you to -- my questions are --

11        JUROR NO. 23:  Okay.

12        THE COURT:  -- really important, but now they have

13   their opportunity.

14        JUROR NO. 23:  Okay.

15        MR. SCIOLLA:  After that intro, I'm not going to ask

16   you anything.

17        MR. COLEMAN:  Good afternoon, Ma'am.

18        JUROR NO. 23:  Hello.

19        MR. COLEMAN:  When you say, I don't think so --

20        JUROR NO. 23:  Right.

21        MR. COLEMAN:  -- is there any hesitation that you

22   have that you could separate what happened to your family

23   member from the allegations here?

24        JUROR NO. 23:  I think I could separate it, yes.

25        MR. COLEMAN:  You think you could?

1          JUROR NO. 23:  I do, yes.

2          THE COURT:  No questions, right?

3          MR. SHAPIRO:  No, no questions from me.

4          THE COURT:  Thank you so much.

5          MR. SHAPIRO:  Thank you.

6          THE COURT:  Thank you very much, Ma'am.

7          (Sidebar with Juror No. 23 concluded.)

8          MR. SCIOLLA:  Judge?

9          THE COURT:  Yes?

10         MR. SCIOLLA:  I don't have any problem with that.

11         THE COURT:  Okay.

12         MR. SCIOLLA:  Would you mind instructing the jurors

13   that when they bump into us in the hallway --

14         THE COURT:  Oh, yeah, I forgot to do that.  Yeah,

15   yeah, I'll do that.  I'll do that.

16         MR. SCIOLLA:  They were holding an elevator for me,

17   and I thought, you know, I'm like, why isn't he getting on

18   with me?

19         THE COURT:  Well, maybe they just think you're rude

20   anyway.

21         MR. SCIOLLA:  That's true.

22         THE COURT:  And I wouldn't do -- and I'm not going

23   to instruct them to the contrary.

24         MR. SCIOLLA:  There's no asterisk on that.

25         THE COURT:  I'll take care of that.  I always -- any

1    issues with Juror 23?

2              MR. SCIOLLA:  No.

3              MR. SHAPIRO:  No, Your Honor.

4              THE COURT:  Okay.

5              MR. SHAPIRO:  Actually, isn't there a Model jury

6    instruction about Mr. Sciolla.

7              MR. SCIOLLA:  Usually, you can do it --

8              THE COURT:  I think there is, but I usually just say

9    it anyway.

10             MR. SCIOLLA:  He thinks there's one just about me.

11             THE COURT:  Oh, about you?

12             MR. SCIOLLA:  Yes, but I haven't seen that one.

13             THE COURT:  I think it's something like, despite the

14   fact that this man is in Court, can you presume that he's

15   innocent.

16             MR. SCIOLLA:  Despite the fact that I'm a lawyer.

17             THE COURT:  Right.

18             Juror 24?

19             MR. SCIOLLA:  Alison Marie.

20             MR. STENGEL:  It's a hardship, I believe.

21             THE COURT:  Oh, okay.  And also a drug addiction or

22   drug treatment.  Okay.  Let me -- so, Juror 24, please?

23             Let me start -- I'll start with the hardship, and

24   then we'll go from there.  Family, friends in the miliary.

25             MR. SCIOLLA:  She's got a whole bunch.

1          THE COURT:  Yeah, okay.

2          (Sidebar with Juror No. 24 commenced:)

3          Hi, Ma'am, how are you?

4          JUROR NO. 24:  Okay.

5          THE COURT:  Come on, right up here.  Let me start,

6    and then the lawyers may have some follow-ups for you, but I

7    -- I know you answered yes to my question about whether

8    there's something pending in your life about which, you know,

9    you are so concerned that you wouldn't be able to focus on the

10   trial.

11         Could you, please, tell us a little more about that?

12         JUROR NO. 24:  Sure.  I have just a couple of

13   things.  One is that my dog is in the kennel right now --

14         THE COURT:  Okay.

15         JUROR NO. 24:  -- so the idea of leaving for two

16   weeks in a kennel kind of terrifies me.

17         THE COURT:  Is there anybody else who can watch the

18   dog?

19         JUROR NO. 24:  Okay, well, that's the sad part. I

20   live by myself.  I don't have family.

21         THE COURT:  Do you work during the day?

22         JUROR NO. 24:  I do, yeah, so he's --

23         THE COURT:  What do you do with the dog when you're

24   at work?

25         JUROR NO. 24:  -- he's good for that eight hours.

1    He's totally fine, but it's overnight that kind of freaks me

2    out.  I'm in Lancaster.

3              THE COURT:  You live in Lancaster?

4              JUROR NO. 24:  Yeah.

5              THE COURT:  So, you would be staying here --

6              JUROR NO. 24:  Correct.  So, I'm in a hotel right

7    now.

8              THE COURT:  -- overnight?  Okay.  And that would be

9    your plan if you were to be selected as a juror?

10             JUROR NO. 24:  Correct.

11             THE COURT:  Okay.

12             JUROR NO. 24:  The only other thing that I'm

13   concerned about is, I'm actually having my wisdom teeth

14   removed on Monday.

15             THE COURT:  This coming Monday?

16             JUROR NO. 24:  Yeah.

17             THE COURT:  Okay.

18             JUROR NO. 24:  Yeah, I've been waiting a couple of

19   months for that one.

20             THE COURT:  Okay.

21             JUROR NO. 24:  And I'm part of a critical trial

22   that's coming up.  I made it through two phases, and I haven't

23   heard anything from them, but they've been, like, contacting

24   me at random about checking in.

25             THE COURT:  That's a separate issue?

1          JUROR NO. 24:  So, I don't really know -- yeah.

2          THE COURT:  Okay.

3          JUROR NO. 24:  So, I don't really know when I'm

4    hearing from them, again, and they're kind of, like, last

5    minute for me going for testing and stuff, but that's --

6          THE COURT:  That's --

7          JUROR NO. 24:  -- those are the only --

8          THE COURT:  Okay.

9          JUROR NO. 24:  -- things, yeah.

10         THE COURT:  Okay, okay.  And there is no one else --

11   well, I mean, look, the dog could be in the kennel.  It's just

12   that you prefer that -- how old is the dog?

13         JUROR NO. 24:  Nine years old.

14         THE COURT:  Aw, the old fellow.

15         JUROR NO. 24:  I know.  That's the only thing that

16   bothers me.

17         THE COURT:  He'll make new friends.

18         JUROR NO. 24:  He has --

19         THE COURT:  All right.

20         JUROR NO. 24:  -- fear aggression.  Kind of

21   troublesome getting someone to watch him that way.

22         THE COURT:  Counsel, any -- any questions?

23         MR. SCIOLLA:  I just have one.  So, you can't teach

24   the old dog new tricks?

25         JUROR NO. 24:  I tried.  Oh my gosh.  I've had

1    behavioral trainers.  He doesn't care about new tricks.

2              MR. SCIOLLA:  Okay.  I don't have anything, Judge.

3              THE COURT:  Anything?

4              MR. SCIOLLA:  No, thank you.

5              THE COURT:  Okay.  Thank you so much.  Oh, I'm

6    sorry.  Go ahead.

7              MR. SHAPIRO:  Did you answer a question about

8    opinions about drug laws?

9              JUROR NO. 24:  Yes.

10             MR. SHAPIRO:  Okay.  What was the --

11             JUROR NO. 24:  So, basically, I grew up with a drug-

12   addicted mother, so I have very strong opinions on drugs.  As

13   a medical employee, I don't believe in Federal criminalization

14   of medical marijuana, however, other drugs, very, very

15   against, fully believe in punishment for those crimes.

16             MS. SHAPIRO:  Okay.  And with those criminal sort of

17   -- well, so, my question is going, like, to both sides of

18   that, right?

19             JUROR NO. 24:  Right.

20             MS. SHAPIRO:  Would your general opinions about the

21   drug laws, would you be able to separate that and judge the

22   facts in this case fairly for both sides?

23             JUROR NO. 24:  I think I could, yes.

24             THE COURT:  And more importantly I think -- oh, no,

25   not more importantly, but, also important, there was a

1    question I asked early on about whether you would follow my

2    instructions on the law, whether you agreed with it or not,

3    and then I will tell you we meet a lot of prospective jurors

4    who disagree with the legality or illegality of marijuana,

5    that they can't understand how it can be legal in the state,

6    illegal at the Federal level, but, you know, they -- the law

7    is the law, and they follow that.

8             Would you be able to follow that?

9             JUROR NO. 24:  Absolutely.

10            THE COURT:  And let me get back to the wisdom teeth.

11            JUROR NO. 24:  Sure.

12            THE COURT:  When is your appointment?

13            JUROR NO. 24:  It's on Monday at 4:30 p.m.

14            THE COURT:  And back -- back in --

15            JUROR NO. 24:  In Lancaster.

16            THE COURT:  -- in Lancaster.  If you were selected,

17   do you know whether that could be -- bumped back at a week or

18   you just don't know?

19            JUROR NO. 24:  I don't know.  I've been waiting four

20   months for the appointment, so I'm not quite sure.

21            THE COURT:  Okay.

22            JUROR NO. 24:  I don't know if they were paused for

23   awhile because of Covid.  I don't know what was going -- why

24   there was a delay in getting it scheduled.

25            THE COURT:  Okay.

```
1            JUROR NO. 24:  I'm not sure.

2            THE COURT:  Okay.

3            JUROR NO. 24:  Yeah.

4            MS. SCIOLLA:  Are you currently in some level of

5    discomfort?

6            JUROR NO. 24:  Yeah.  Here's the weird part, it's my

7    second set, and the top two are shaped like daggers and pop

8    through, and they're not exactly comfortable.

9            MS. SCIOLLA:  Got you.

10           JUROR NO. 24:  The bottom ones are like babies, and

11   they don't bother me, but --

12           MS. SCIOLLA:  So, you want them out?

13           JUROR NO. 24:  I do.

14           MR. SCIOLLA:  Okay.

15           THE COURT:  Okay.  Thank you, Ma'am --

16           JUROR NO. 24:  Absolutely.

17           THE COURT:  -- very much.  All right.

18           MR. SCIOLLA:  Thank you.

19           (Sidebar with Juror No. 24 concluded.)

20           MR. SCIOLLA:  You want to give her a pass?

21           THE COURT:  Yeah, I think the wisdom teeth make it

22   hard --

23           MR. SCIOLLA:  Yeah.

24           THE COURT:  -- as a practical matter.  If her

25   appointment was at 4:30, and she lived here in Philadelphia,
```

1   you know, but then, we don't know how she's going to feel the

2   next day.

3                MR. SHAPIRO:  I would agree with that.

4                THE COURT:  Yeah.  Are we okay, by agreement,

5   excusing her?

6                MR. SCIOLLA:  Yes..

7                THE COURT:  All right.  Okay.

8                (Pause)

9                THE COURT:  Juror 25.

10               MS. SHAPIRO:  The questions about drugs and law

11  enforcement relations.

12               THE COURT:  Okay.  Juror 25, please?

13               And whoever wishes to start, can -- you guys can

14  start.  I won't.  I don't need to get involved in this one,

15  unless you screw it up.

16               (Sidebar with Juror No. 25 commenced:)

17               THE COURT:  Come on in, sir, how are you?

18               JUROR NO. 25:  Doing well.  How are you?

19               THE COURT:  I'm doing good.  If you could just tilt

20  sideways there a little bit, but we'll still pick up your

21  comments there.

22               JUROR NO. 25:  Okay.

23               THE COURT:  And whoever wants to begin?

24               MR. SCIOLLA:  Good afternoon, sir.

25               JUROR NO. 25:  Good afternoon.

1          MR. SCIOLLA:  How are you?

2          JUROR NO. 25:  Good.

3          MR. SCIOLLA:  You raised your hand, and I have three

4    questions, merely to which you responded.  One regarding drug

5    usage.  Is there someone in the family that has a problem with

6    that?

7          JUROR NO. 25:  My brother-in-law has a problem right

8    now.

9          MS. SCIOLLA:  Right now.  And, as a result of that,

10   would that impact your ability in this case to judge somebody

11   who has been accused of distribution of drugs?

12         JUROR NO. 25:  A little bit, yeah.

13         MR. SCIOLLA:  Well, a little bit is probably not as

14   specific as we need you to be.

15         JUROR NO. 25:  Right.

16         MR. SCIOLLA:  I know, you know, it's tough that you

17   have to, but --

18         JUROR NO. 25:  Yeah, it is.

19         MR. SCIOLLA:  -- there's no right or wrong answers

20   here.

21         JUROR NO. 25:  Right.  I mean, I think I would -- I

22   would probably lean more towards the -- you know, somebody

23   that's applied to defend, you know, is in the wrong,

24   basically.

25         MR. SCIOLLA:  Right.  So, you'd lean towards the

1    Government's case --

2              JUROR NO. 25:  Yes.

3              MR. SCIOLLA:  -- before it even started?

4              JUROR NO. 25:  Yes.

5              MR. SCIOLLA:  All right.  Additionally, you

6    indicated that there's some police officers?

7              JUROR NO. 25:  Yes.  My brother is actually an

8    undercover narcotic's officer in Philly.

9              MR. SCIOLLA:  In Philadelphia?

10             JUROR NO. 25:  Yes.

11             MR. SCIOLLA:  Okay.  I think I know your brother.

12   Obviously, as a result of that relationship, I assume you have

13   conversations with him?

14             JUROR NO. 25:  Yes.

15             MR. SCIOLLA:  And probably have fixed a formed -- or

16   formed an opinion based on his -- his --

17             JUROR NO. 25:  Yes.

18             MR. SCIOLLA:  -- exchanges with you?

19             JUROR NO. 25:  Yes.

20             MR. SCIOLLA:  Would that make it equally different -

21   - difficult?

22             JUROR NO. 25:  It would make it very difficult, yes.

23             MR. SCIOLLA:  Okay.  And I assume that if law

24   enforcement people were testifying, you would tend to give

25   them the benefit of the doubt?

 1              JUROR NO. 25:  Yes.

 2              MR. SCIOLLA:  You'd give them credibility just

 3    because of their status as a police officer?

 4              JUROR NO. 25:  Yes.

 5              MR. SCIOLLA:  Okay.  I think that's all I have,

 6    Judge.

 7              THE COURT:  Okay.  Paul, too, anything?

 8              MR. SHAPIRO:  In response to Mr. Sciolla's -- I'm

 9    sorry, Your Honor, I keep --

10              THE COURT:  I know.

11              MR. SCIOLLA:  Choking on my last name.

12              MR. SHAPIRO:  No, I'm speaking so quietly.  So, in

13    response to Mr. Sciolla's questions, you said that you would

14    tend to give law enforcement officers the benefit of the

15    doubt.

16              JUROR NO. 25:  Right.

17              MR. SHAPIRO:  And I just want to explore with you

18    for a minute what exactly that means.

19              JUROR NO. 25:  I mean, to me, you know, an officer

20    or somebody that's, you know, in that type of authority, took

21    an oath to, basically, always tell the truth.

22              MR. SHAPIRO:  Okay.  So that you would -- you would

23    assume that they're doing it?

24              JUROR NO. 25:  Yes.

25              MR. SHAPIRO:  So, you'd assume that everybody who

1    took an oath would be telling the truth?

2              JUROR NO. 25:  Yes.

3              MR. SHAPIRO:  Whether they be a Government witness

4    or defense witness or --

5              JUROR NO. 25:  Yes.

6              THE COURT:  I -- I'm -- oh, I'm sorry, go ahead, no,

7    please.

8              MR. STENGEL:  And you mentioned that you have some

9    -- you'd tend to lean towards -- in favor of law enforcement,

10   but if Judge Pappert gave you instructions as to what the law

11   is, would you be able to impartially apply the facts that are

12   presented in front of you to the law as he explains it?

13             JUROR NO. 25:  Yes.

14             THE COURT:  I did ask you, the group, a question,

15   and I didn't have you down as a yes to this, but let me ask it

16   to you again and think it through and give me your best,

17   honest answer, okay?

18             I said that a number of witnesses in this case will

19   be law enforcement officers, and that I will instruct you that

20   the fact that a witness is a law enforcement officer does not

21   mean that his or her testimony should be given more or less

22   consideration or greater or lesser weight than any other

23   witness.  That is, you should not tend to, either, believe or

24   disbelieve the testimony of a law enforcement officer, just

25   because that person has a badge, right, just -- could you

1    follow that instruction?

2              JUROR NO. 25:  Yes, I could.

3              THE COURT:  Okay.  Okay.

4              MR. SCIOLLA:  So what you said --

5              JUROR NO. 25:  Yes?

6              MR. SCIOLLA:  -- earlier, you stated pretty

7    emphatically to me that you would follow a police officer's

8    testimony because of a police officer's position, okay, but

9    how does that jive with what you just told the judge?

10             JUROR NO. 25:  I mean, I guess if, you know, that

11   the judge is trying to give us the instructions of what to do,

12   then that's what we should really listen to.

13             MR. SCIOLLA:  It's your belief that you would be

14   able to put aside your bias in favor of law enforcement and

15   testimony from law enforcement just because the judge told you

16   to?

17             JUROR NO. 25:  Actually, I don't think I could.

18             MR. SCIOLLA:  Okay.

19             THE COURT:  Okay.

20             JUROR NO. 25:  Again, I've been -- I've been around

21   police officers my entire life.  My dad was a cop.  My

22   stepfather was a cop.  My friends are cops.

23             THE COURT:  There is no wrong answer up here.  Thank

24   you very much.

25             MR. SCIOLLA:  Thank you.

1            JUROR NO. 25:  I appreciate that.

2            (Sidebar with Juror No. 25 concluded.)

3            MR. SCIOLLA:  Cause.

4            THE COURT:  No objection?  I agree, yeah, we'll

5    grant the motion for cause.

6            MR. SCIOLLA:  Thank you, Your Honor.

7            THE COURT:  Yeah.  For all the reasons stated, in

8    addition to those that are obvious.  All right.  Okay.  Well,

9    guys, we're -- we've got 16 left to play with, and we need how

10   many, Jeff, 20?

11           COURTROOM DEPUTY:  We're still not halfway there.

12           THE COURT:  Yeah.  All right.  Okay.  Juror 26.

13           Juror 26, please?

14           (Pause)

15           THE COURT:  There's a lot for each side to play with

16   here.

17           (Pause)

18           (Sidebar with Juror No. 26 commenced:)

19           THE COURT:  Hi, Ma'am, how are you?

20           JUROR NO. 26:  Good.  How are you?

21           THE COURT:  I'm doing fine.  Who wants to start?

22           MR. SCIOLLA:  Go ahead, Paul.

23           MR. SHAPIRO:  In response to one of the Judge's

24   questions, you indicated that there was, I think, someone --

25   oh, (inaudible).  I just wanted to follow-up on that.

1          JUROR NO. 26:  So, I was in (inaudible).

2          MR. SHAPIRO:  Oh, okay.

3          JUROR NO. 26:  (Inaudible).

4          MR. SHAPIRO:  And would that affect your ability to

5    be impartial in a case involving an issue about this?

6          JUROR NO. 26:  Uh-uh.

7          THE COURT:  No?

8          JUROR NO. 26:  No.

9          THE COURT:  Okay.  Thank you.

10         MR. SCIOLLA:  I think you also raised your hand with

11   regard to the police?  There was someone in your family or --

12         JUROR NO. 26:  A close friend of mine is a Lancaster

13   County sheriff, and another friend of mine is a warden at the

14   Lancaster County Prison.

15         MR. SCIOLLA:  Got you.  Would your relationship with

16   those men or women have an impact on your ability to be fair

17   and impartial in judging law enforcement testimony?

18         JUROR NO. 26:  I'm not that close with them any

19   longer.

20         MR. SCIOLLA:  Great.  Thank you.

21         MR. STENGEL:  However, if you have a problem with

22   them, would it change your opinion of law enforcement

23   witnesses?

24         JUROR NO. 26:  Oh, no.  No, not at all.  I just -- I

25   worked -- I got out of the Army, and I went to the service,

1    and they went that way.

2              MR. STENGEL:  Okay, got it.  Understood.  Thank you.

3              THE COURT:  Thank you so much.  All right.

4              MR. SCIOLLA:  Thank you.

5              (Sidebar with Juror No. 26 concluded.)

6              THE COURT:  Okay.

7              MR. SCIOLLA:  Is there still (inaudible)?

8              THE COURT:  I was -- I was wondering the same thing.

9    All right.  So, Juror 26 is fine.

10             Juror 27, does anyone have any concerns with respect

11   to Juror 27, based on the answers?

12             MR. SHAPIRO:  No.

13             MR. SCIOLLA:  I'm sorry, Your Honor?

14             THE COURT:  Juror 27, anything?

15             MR. SCIOLLA:  27, I have law enforcement and Federal

16   government.

17             THE COURT:  Okay.  Juror 27, please?

18             MR. SCIOLLA:  Drug addiction treatment.

19             (Pause)

20             (Sidebar with Juror No. 27 commenced:)

21             THE COURT:  Hey, how are you, sir?

22             JUROR NO. 27:  I'm good.  How are you?

23             THE COURT:  Good.  Who wants to start?

24             MR. SCIOLLA:  I'll be happy to.  Good afternoon,

25   sir, how are you?

1          JUROR NO. 27:  All right.

2          MR. SCIOLLA:  You raised your hand in response to a

3    couple of questions.  One, to start off, that I have here was

4    someone in the family or some friend in the circle of yours

5    was involved in drug use?

6          JUROR NO. 27:  Yeah.  So, I mean, I have two high

7    school friends, one close friend that's the one for the drug

8    overdose or drug addiction.

9          MR. SCIOLLA:  Okay.

10         JUROR NO. 27:  And my brother-in-law -- well, he's

11   my sister's brother, so he's kind of like my brother-in-law,

12   has a history of drug abuse, and, actually, I was just -- I

13   didn't raise my hand before, but he is in the ICU.  I got a

14   message this morning.  He -- he -- my mom says it's, like, not

15   drug related, but he's -- the fact that he's in the ICU

16   doesn't -- I think (inaudible).

17         THE COURT:  Doesn't what?

18         JUROR NO. 27:  I don't think him being in the

19   hospital would be, like, a reason to raise my hand, saying,

20   like, I couldn't serve as a juror.

21         THE COURT:  Oh, okay.

22         MR. SCIOLLA:  I appreciate that.

23         THE COURT:  Well, I, A, appreciate that, and, B,

24   we're sorry to hear it --

25         JUROR NO. 27:  I know.

1           THE COURT:  -- but hope he's okay.

2           JUROR NO. 27:  Yeah, of course, I mean, but,

3    obviously, that would be something --

4           THE COURT:  Sure.  Okay.

5           JUROR NO. 27:  So, those are the folks that I was

6    talking about.

7           MR. SCIOLLA:  Okay.

8           THE COURT:  Okay.

9           MR. SCIOLLA:  And just as a follow-up, would any of

10   that activity and your close proximity to it and relationship

11   to it, would that impact your ability to be fair and impartial

12   in this case?

13          JUROR NO. 27:  I think if it's a drug use issue and

14   just the (inaudible) of them, you know, I don't --

15          THE COURT:  Not so much a drug sale issue?

16          JUROR NO. 27:  Correct, yeah.

17          MR. SCIOLLA:  So, you could be fair and impartial

18   with people accused of selling drugs?

19          JUROR NO. 27:  Yeah, I mean, I don't -- you know, I

20   obviously need to hear the testimony, but I don't think -- I

21   didn't even raise my hand for that question.

22          MR. SCIOLLA:  Right, okay.

23          JUROR NO. 27:  I just --

24          THE COURT:  You would go in with an open mind?

25          JUROR NO. 27:  Of course.

1          THE COURT:  Yeah.

2          JUROR NO. 27:  Okay.

3          MR. SCIOLLA:  Would the same be true with regard to

4    police or law enforcement testimony, because you indicated --

5          JUROR NO. 27:  Yes.

6          MR. SCIOLLA:  -- there was someone in the family

7    that's related to law enforcement?

8          JUROR NO. 27:  Correct.  Yeah, my father was --

9    started his career as a police officer.  He didn't end his

10   career as a police officer.  And I have a close first cousin

11   that works in the Scranton area.

12         MR. SCIOLLA:  Okay.

13         JUROR NO. 27:  He's not a police officer.  I'm not

14   sure exactly which branch he works, but he's involved in the

15   U.S. Marshal Drug -- not drug -- like different kinds of

16   crimes, but also --

17         THE COURT:  Okay.

18         JUROR NO. 27:  And I do have a friend that is an FBI

19   agent in Las Vegas, but I don't believe he's --

20         MR. SCIOLLA:  In Los Angeles?

21         JUROR NO. 27:  No, Las Vegas.

22         THE COURT:  Las Vegas.

23         JUROR NO. 27:  Las Vegas.

24         MR. SCIOLLA:  Oh, Las Vegas?

25         JUROR NO. 27:  Yeah.

1           MR. SCIOLLA:  Okay.

2           JUROR NO. 27:  I don't think he's involved in drug

3      -- in --

4           MR. SCIOLLA:  Okay.

5           JUROR NO. 27:  -- like investigations.

6           MR. SCIOLLA:  Would either or any of those

7      relationships affect your ability to judge fairly or

8      impartially the testimony that would be forthcoming, both from

9      law enforcement officers, as well as non-law enforcement

10     officers?

11          JUROR NO. 27:  I don't -- I mean, the one that would

12     probably be the most worrisome would be just my cousin, just

13     because I've heard about so many drug raids that he's gone on

14     and just -- I mean, not, like, details but just, you know,

15     kind of what those are about.

16          THE COURT:  But you know all cases are different.

17          JUROR NO. 27:  Of course.  Right, of course.

18          THE COURT:  Not every -- not every drug raid leads

19     to an arrest, much less a conviction.

20          JUROR NO. 27:  Of course, yes.

21          THE COURT:  And the issue is, these two defendants

22     are presumed innocent --

23          JUROR NO. 27:  Sure.

24          THE COURT:  -- and are you able to be open-minded,

25     be fair and impartial and judge the case based on the evidence

1    and my --

2               JUROR NO. 27:  Yes.

3               THE COURT:  -- instructions?

4               JUROR NO. 27:  Yes.

5               MR. SCIOLLA:  Just one last question.  I noticed

6    there is no geographic designation.  Are you from

7    Philadelphia?

8               JUROR NO. 27:  No, I live in North Hampton County.

9               MR. SCIOLLA:  North Hampton, okay.  Okay.

10              JUROR NO. 27:  I live in a hotel.

11              MR. SCIOLLA:  Oh, all right.  Thank you.  That's all

12   I have, Judge.

13              THE COURT:  Yeah.

14              JUROR NO. 27:  (Inaudible).

15              THE COURT:  Any questions from the Government?

16              No?

17              MR. SHAPIRO:  Nothing for us, Your Honor.

18              THE COURT:  Thank you, sir, very much.

19              (Sidebar with Juror NO. 27 concluded.)

20              THE COURT:  Okay.  27 is all right.  Halfway there.

21   Juror 28, gun, no license/permit, law enforcement.

22              Juror 28, please?

23              And owns and uses and/or uses a firearm.

24              (Pause)

25              (Sidebar with Juror No. 28 commenced:)

1              THE COURT:  Hey, sir, come on over.  How are you?

2              JUROR NO. 28:  I'm doing good. How are you?

3              THE COURT:  I'm fine.  The lawyers will have -- why

4      doesn't, Mr. Shapiro or Mr. Stengel, you guys can start this

5      time, and --

6              MR. STENGEL:  I think you had answered questions

7      related to at least one question related to firearms and no

8      permits, shot a firearm or owned a firearm.  Which one is it?

9              JUROR NO. 28:  I own a firearm.

10             MR. STENGEL:  Okay.

11             JUROR NO. 28:  And I just occasionally will shoot

12     it.

13             MR. STENGEL:  Is there anything about your ownership

14     or carrying a firearm that would affect your ability to judge

15     those accused of firearm-related crimes?

16             JUROR NO. 28:  No.

17             MR. STENGEL:  You can be fair and impartial in this

18     case?

19             JUROR NO. 28:  Yes.

20             MR. SCIOLLA:  Mr. Scudder, you also raised your hand

21     with regard to police?

22             JUROR NO. 28:  Yeah.

23             MR. SCIOLLA:  Family or friends --

24             JUROR NO. 28:  Yeah.

25             MR. SCIOLLA:  -- are employed as police officers.

1          JUROR NO. 28:  My father-in-law was a parole agent

2     for most of his career.

3          MR. SCIOLLA:  Okay.  That's the only contact?

4          JUROR NO. 28:  Yes.

5          MR. SCIOLLA:  Okay.  Thank you, sir.

6          THE COURT:  Okay.  Thank you, sir.  I appreciate it.

7          (Sidebar with Juror No. 28 concluded.)

8          THE COURT:  All right, 28 is good.  29, you may not

9     want to -- don't address by title or name.  They get spooked.

10         MR. SCIOLLA:  Okay, I got you.

11         THE COURT:  They could, you know?

12         MR. SCIOLLA:  Yeah, I was just --

13         THE COURT:  No, I know.  I know.  29?

14         MR. STENGEL:  Member of the NRA --

15         THE COURT:  Okay.

16         MR. STENGEL:  -- and a gun club.

17         THE COURT:  Juror 29, please?

18         MR. SCIOLLA:  And somebody works for the Government.

19         (Pause)

20         (Sidebar with Juror No. 29 commenced:)

21         THE COURT:  Hey, sir, how are you?

22         JUROR NO. 29:  Good.  How are you doing?

23         THE COURT:  Good.  Who wants to start?

24         JUROR NO. 29:  Actually, Judge, I have a conflict.

25         THE COURT:  Okay.

1            JUROR NO. 29:  I'm supposed to be out of town

2      October 24th to the 26th.

3            THE COURT:  What day is that?

4            JUROR NO. 29:  That's next week.

5            MR. SCIOLLA:  That's next week.  Today's the 18th --

6      no, Monday is the 18th, so the 22nd would be, what, Thursday,

7      right?

8            JUROR NO. 29:  24 is the Sunday.  25th is this

9      Monday.

10           THE COURT:  And what is the --

11           JUROR NO. 29:  My 25th wedding anniversary, so --

12           THE COURT:  Okay.  Do you have a trip planned?

13           JUROR NO. 29:  Yes.

14           THE COURT:  Where are you -- where are you going?

15           JUROR NO. 29:  Skytop Lodge.

16           THE COURT:  Okay.  Do you want to go on the trip or

17     do you want -- do you want a reason to get out of it?

18           JUROR NO. 29:  I think I'd have a happier wife if I

19     went on the trip.

20           THE COURT:  Okay.  Hey, I just tried to throw that

21     out to you.

22           JUROR NO. 29:  I appreciate that, thank you.

23           THE COURT:  Thanks, sir.

24           MR. SCIOLLA:  Thanks.

25           THE COURT:  Happy anniversary.

1        JUROR NO. 29:  Thank you.

2        THE COURT:  Okay.

3        (Sidebar with Juror No. 29 concluded.)

4        THE COURT:  Okay, 30.  That was 29?  So, 30, the

5    addiction question.

6        Juror 30?

7        MR. STENGEL:  I think he might have also had a

8    hardship.

9        THE COURT:  Let me see, here, yeah.  Yeah, yeah.

10   Okay, I'll start with that one, and we'll go from there.  Oh,

11   yeah, okay.

12       (Sidebar with Juror No. 30 commenced:)

13       THE COURT:  Hey, Ma'am, how are you?  Come right on

14   in here.  I'll start and follow-up with one.  You had answered

15   -- you had answered yes when I asked if there was anything

16   going on that had -- you know, would prevent you from focusing

17   on the case.  What --

18       JUROR NO. 30:  What happened is, I have my family

19   vacation next week.

20       THE COURT:  Next week?

21       JUROR NO. 30:  Yes, so, I leave on Wednesday, the

22   20th, and I don't come back until Monday, the 26th.

23       THE COURT:  Okay.  And this is something that's been

24   in the works for quite awhile?

25       JUROR NO. 30:  Yes, since July.

 1              THE COURT:  And have you paid in advance for it, and

 2     where are you going?

 3              JUROR NO. 30:  Universal Studios in Florida.

 4              THE COURT:  Oh, in Florida?

 5              JUROR NO. 30:  Yeah.

 6              THE COURT:  Okay, okay.  I'll tell you what, you

 7     want to do my job, and I'll go to Florida?

 8              JUROR NO. 30:  Not this time.

 9              THE COURT:  No?  All right, okay.  That's fair.

10     Thank you.  Thank you.

11              (Sidebar with Juror No. 30 concluded.)

12              THE COURT:  Now, I know, guys, we're -- so, Jeff,

13     how are we doing?  We've got --

14              THE CLERK:  We've got 14 to play with.

15              THE COURT:  We have 19 jurors so far.  We need 17

16     more.

17              THE CLERK:  Yes.

18              THE COURT:  And we have 14 --

19              MR. STENGEL:  Strikes to play with -- causes to play

20     with.

21              THE COURT:  Okay.

22              Juror 30 -- hold on.  Hold on.  Juror 31?  Yeah.

23     Juror 31.

24              Another hardship.

25              MR. STENGEL:  I thought -- wouldn't these be

1    screened out before they got here?  Wouldn't they tell the

2    jury people, it's my 25th anniversary on --

3              THE COURT:  I guess they don't know because they

4    don't know how long the case is going to be.

5              MR. STENGEL:  Right, right.

6              THE COURT:  So they don't know how to answer that

7    yet.

8              (Sidebar with Juror No. 31 commenced:)

9              JUROR NO. 31:  How you doing?

10             THE COURT:  Good.  So, let me start with you.  You

11   answered yes to the question that there is something going on

12   in your life that would prevent you from focusing?

13             JUROR NO. 31:  Yeah.  I'm going to be moving into a

14   new apartment.

15             THE COURT:  And when is that?

16             JUROR NO. 31:  Early November.

17             THE COURT:  Okay, you're fine.

18             JUROR NO. 31:  Okay.

19             THE COURT:  Yeah, okay.  You'll be out of here on --

20   middle of the week after next, so that's the 27th, the 26th.

21   Yeah, okay.  You're good.

22             JUROR NO. 31:  All right.

23             THE COURT:  Wait.  You're good on that on.

24             JUROR NO. 31:  Oh, oh.

25             THE COURT:  Did anyone else have any questions?

1   That was the main one.

2          MR. SCIOLLA:  I think you also raised your hand

3   about the police officers?

4          JUROR NO. 31:  Yeah.

5          MR. SCIOLLA:  You're related to some?

6          JUROR NO. 31:  I have a lot of friends, and I

7   graduated the Police Academy, so I have a lot of friends from

8   there.

9          MR. SCIOLLA:  You graduated from the Police Academy,

10  but you're not operating or --

11         JUROR NO. 31:  No, not right now.

12         MR. SCIOLLA:  -- you're actually not a police

13  officer?

14         JUROR NO. 31:  No.

15         MR. SCIOLLA:  Okay.  And how long ago was that?

16         JUROR NO. 31:  2015/2016.

17         MR. SCIOLLA:  And was that the Philadelphia Police

18  Academy?

19         JUROR NO. 31:  No.  Montgomery County.

20         MR. SCIOLLA:  Montgomery County?

21         JUROR NO. 31:  Yeah.

22         MR. SCIOLLA:  And, so I take it the friends of yours

23  are employed out there?

24         JUROR NO. 31:  All around.

25         MR. SCIOLLA:  And you still see these gentlemen?

1          JUROR NO. 31:  Yeah.

2          MR. SCIOLLA:  Would your relationship with them in

3    any way impact your ability in this case to make an objective

4    judgment on testimony that was brought by a law enforcement

5    officer?

6          JUROR NO. 31:  I might have a slight bias for police

7    officers, but --

8          MR. SCIOLLA:  You'd have a slight bias in favor of?

9          JUROR NO. 31:  Yes.

10         MR. SCIOLLA:  If the judge is instructing you that

11   you had to follow his pronouncement on the law with regard to

12   how you come about arriving at credibility, would you be able

13   to put your personal beliefs aside?

14         JUROR NO. 31:  Yeah.

15         THE COURT:  Because I had -- I had asked that

16   question which said basically that, right?  It's, like, a lot

17   of the witnesses will be law enforcement officers, and I'm

18   going to instruct you, you're to treat their testimony like

19   you treat anyone else's.  You should not -- look, there are

20   some people who don't like the police, so they may tend not to

21   -- okay -- but you are not to tend to believe or disbelieve a

22   witness, just because they're a cop.

23         JUROR NO. 31:  Yeah.

24         THE COURT:  You can disbelieve or believe them for

25   other reasons, because you don't think they're -- you know,

1    but just the fact that they have a badge.

2                    JUROR NO. 31:  Yeah.

3                    THE COURT:  And you said you could follow that

4    instruction.  Could you?

5                    JUROR NO. 31:  Yes.

6                    MR. SCIOLLA:  Tell us about, you indicated somebody

7    was involved with drugs?

8                    JUROR NO. 31:  Yeah, my childhood best friend, he's

9    addicted to heroin, and he went to rehab and everything like

10   that, yeah.

11                   MR. SCIOLLA:  He's okay now?

12                   JUROR NO. 31:  Now, I guess, yeah.

13                   THE COURT:  That's good.

14                   MR. SCIOLLA:  Do you, as a result of that, have any

15   fixed -- have an opinion with regard to drugs, their usage or

16   drug sales?

17                   JUROR NO. 31:  I'm sorry, say that again?

18                   MR. SCIOLLA:  Have you fixed an opinion -- do you

19   have a fixed opinion with regard to illicit drugs?

20                   JUROR NO. 31:  No, I don't, no.

21                   MR. SCIOLLA:  Okay.  So, if you heard about

22   testimony in this case about drugs, would you still be able to

23   weigh that objectively?

24                   JUROR NO. 31:  Yeah.

25                   MR. SCIOLLA:  Okay.  That's it.

1          MR. COLEMAN:  I have a question.  Do any of your

2     friends, who are police officers, work in Narcotics?

3          JUROR NO. 31:  No.

4          THE COURT:  We didn't get that.

5          MR. COLEMAN:  I asked if any of your friends who are

6     police officers from the Academy work in Narcotics?

7          JUROR NO. 31:  No.

8          THE COURT:  Okay.  Anything further?  No?  Thank

9     you, sir.

10          JUROR NO. 31:  Thank you.

11          THE COURT:  All right.

12          (Sidebar with Juror No. 29 concluded.)

13          THE COURT:  Okay.  That was Juror 31.  Juror 32.

14     Juror 32 also mentioned a potential hardship.

15          Juror 32.

16          (Pause)

17          (Sidebar with Juror No. 32 commenced:)

18          JUROR NO. 32:  Hi.

19          THE COURT:  Come on up, Ma'am.

20          JUROR NO. 32:  Hello.  Thank you.

21          THE COURT:  I can see your hair now.

22          JUROR NO. 32:  Good morning.

23          THE COURT:  Let me start.  You did say that there's

24     a matter in your life right now that might prevent you from

25     giving your full and undivided attention to the trial.

1           JUROR NO. 32:  Sure.  I'm just a CEO and a business

2    owner, and I have a bunch of employees who need me.

3           THE COURT:  How big is your business?

4           JUROR NO. 32:  It's 13 employees and $30,000,000.

5           THE COURT:  Okay.  And is there someone who could

6    mind the store for you for a week?

7           JUROR NO. 32:  Yeah.

8           THE COURT:  Well, presumably, every once in awhile,

9    you take a well-earned vacation?

10          JUROR NO. 32:  At Christmas.  I mean, I generally

11   don't take a week and a half off.  I mean, I guess I can

12   manage, it'll just be difficult.

13          THE COURT:  Okay.  Where is your business?

14          JUROR NO. 32:  Yardley.

15          THE COURT:  Okay, okay.  All right.

16          JUROR NO. 32:  Okay?

17          THE COURT:  Yes.

18          MR. SCIOLLA:  Prior jury service?

19          JUROR NO. 32:  I was in a -- I can't remember what

20   -- it was in Doylestown a few years ago.

21          THE COURT:  That would have been Bucks County Court.

22          JUROR NO. 32:  Yeah, Bucks County Court.  It was

23   something with a -- money laundering or something.  I barely

24   remember it.  It was years ago.

25          MR. SCIOLLA:  And was the jury able to reach a

1   verdict in that case?

2              JUROR NO. 32:  We did reach a verdict.

3              MR. SCIOLLA:  You did?  Okay, good.  Than you.

4              THE COURT:  Does anyone else have any questions for

5   Juror 32?

6              MR. SCIOLLA:  No, Your Honor.

7              MR. STENGEL:  No, Your Honor.

8              THE COURT:  Okay.  Thank you so much.

9              JUROR NO. 32:  Thank you very much.

10             (Sidebar with Juror No. 32 concluded.)

11             THE COURT:  Okay.

12             MR. SCIOLLA:  I don't have any problem.

13             THE COURT:  She okay?

14             MR. STENGEL:  Yeah.

15             MR. SCIOLLA:  Now, you just called her ma'am.

16             THE COURT:  Yeah, I want her back.  All right.

17   Juror 33.  Anybody have anything on 33?  Criminal matter --

18   involved in a criminal matter --

19             MR. SCIOLLA:  Yes.

20             THE COURT:  -- as a defense -- defendant, witness or

21   victim.

22             Juror 33, please?

23             That's all I have, yeah.

24             MR. SHAPIRO:  He works in a pharmacy.

25             (Pause)

1               (Sidebar with Juror No. 33 commenced:)

2               THE COURT:  Hey, sir, come on in.  I think -- who

3      wishes to start?  Mr. Shapiro, why don't you lead off?

4               MR. SHAPIRO:  I'd be glad to.  Good afternoon.

5               THE COURT:  Here, sir, if you could speak -- we need

6      to --

7               JUROR NO. 33:  Okay.

8               THE COURT:  There you go.

9               MR. SHAPIRO:  In response to one of the judge's

10     questions, you -- you indicated to us that you or a family

11     member had involvement in a court --

12              JUROR NO. 33:  Yeah, actually, it is just me and my

13     wife.  We had a rental property, and --

14              THE COURT:  You had, what, a rental property?

15              MR. SHAPIRO:  Rental property.

16              THE COURT:  Oh, I'm sorry.  Go ahead.

17              JUROR NO. 33:  So, they don't pay our rent --

18              THE COURT:  Okay.

19              JUROR NO. 33:  -- so we would charge you

20     (inaudible), and right the day before, my house got burned

21     down, so I'm really (inaudible), so I say a criminal

22     (inaudible) you do wrong.

23              THE COURT:  Right, right, right.

24              MR. SHAPIRO:  So you're the victim --

25              THE COURT:  You were the victim of a crime?

1          JUROR NO. 33:  Yes.

2          THE COURT:  How did that -- when did that happen?

3          JUROR NO. 33:  I believe it was like two years ago.

4          THE COURT:  And how did that resolve?  Did they

5     catch the people who did it?

6          JUROR NO. 33:  No.  They still say, like, it is some

7     sort of electrical --

8          THE COURT:  Oh, but you don't believe that?

9          JUROR NO. 33:  Right.

10         THE COURT:  So, the question, obviously, is that

11    whatever happened to you, right, and whoever did that, these

12    matters had nothing to do with that, right?

13         JUROR NO. 33:  Right.

14         THE COURT:  So, will that experience prevent you

15    from being fair and impartial and listening to the evidence

16    and listening to my instructions?

17         JUROR NO. 33:  Yeah, I will try -- I would try my

18    best to listen to see what I can see or what I hear.

19         THE COURT:  Yes.

20         JUROR NO. 33:  But, like I said, if a person really

21    want to do wrong, they will commit the crimes, so I'm just

22    saying --

23         THE COURT:  If the person, what?

24         JUROR NO. 33:  Committed the crimes, this is what

25    they do, so I can't really tell -- promise I won't do my -- or

1    say, like -- I'm nervous.

2              THE COURT:  Well, don't be nervous.  And there's no

3    wrong answers here.

4              JUROR NO. 33:  Right, right.

5              THE COURT:  But the bottom line is, I understand

6    why, you know, that prior experience --

7              JUROR NO. 33:  Right.

8              THE COURT:  -- affected you, right?

9              JUROR NO. 33:  Right, right.

10             THE COURT:  But this case has nothing to do with

11   that, and these two gentlemen are charged with doing other

12   things.

13             JUROR NO. 33:  Right, right.

14             THE COURT:  So, will you be able to just focus on

15   this case?

16             JUROR NO. 33:  Sure.

17             THE COURT:  Listen to the evidence, continue to

18   presume that they're innocent until proven guilty --

19             JUROR NO. 33:  Right.

20             THE COURT:  -- right, and listen to my instructions?

21             JUROR NO. 33:  I'll try my best.

22             MR. SCIOLLA:  You don't believe, as you look at

23   these men, now, that they are guilty, do you?

24             JUROR NO. 33:  I don't know, so --

25             THE COURT:  Well, I did ask some questions that

1   said, you know, do you think -- does anyone think that these

2   guys are guilty just cause they're sitting here, and you did

3   not answer yes to that?

4            JUROR NO. 33:  It's more, like, a young person --

5   I'm nervous -- and second of all, I'm just trying to cast off,

6   like, I need to understand, clearly, like, exactly before I

7   tried to answer the questions, but then, by the time I'm

8   talking, you know, the only reason (inaudible), like, okay,

9   let me talk to this person and see what I can and try my best,

10  you know.  I understand, and --

11           THE COURT:  Well, I will instruct you, you know, as

12  a matter of law --

13           JUROR NO. 33:  Right.

14           THE COURT:  -- these men are innocent, as they sit

15  here.

16           JUROR NO. 33:  Okay.

17           THE COURT:  And they remain innocent until the

18  Government proves otherwise.  Okay.  So, the question is, will

19  you be able to follow that instruction --

20           JUROR NO. 33:  Yes.

21           THE COURT:  -- and wait and see if the Government

22  proves its case?

23           JUROR NO. 33:  Yes, I can.

24           THE COURT:  All right.

25           MR. SCIOLLA:  I have nothing else, Judge.

1              MR. COLEMAN:  You mind if I ask one, Your Honor?

2              THE COURT:  Go ahead.

3              MR. COLEMAN:  Sir, when you walked in and saw these

4     two men sitting here today, did it bring back memories of the

5     incident that happened with your rental?

6              JUROR NO. 33:  Just kind of, yeah.

7              MR. PALIVIDAS:  Did the -- the former tenants, were

8     they in any way similar, in any way, and that might have

9     reminded you of it?

10             JUROR NO. 33:  It is a little bit, just a bit that

11    they reminded me.

12             MR. PALIVIDAS:  They reminded you of them?

13             JUROR NO. 33:  Yeah, because any time when I've seen

14    that some people do bad things, I'm just reminded to what my

15    experience, that's why.

16             MR. PALIVIDAS:  Okay.

17             JUROR NO. 33:  It don't matter what you do, but when

18    on the street, whatever you do for people, it's this way, my

19    experience it is, so --

20             THE COURT:  Well -- okay.  Thank you, sir.

21             JUROR NO. 33:  Thank you.

22             THE COURT:  All right.

23             (Sidebar with Juror No. 33 concluded.)

24             THE COURT:  Anything with --

25             MR. PALIVIDAS:  I think that there is a cause on

1   him, based on his specific answers, Judge, as well as his

2   demeanor and reluctance.  It sounded like, and he answered

3   that when he first walked in here, once he saw these two

4   gentlemen, it immediately brought up -- it raised the issue --

5   and I think it raised it in sort of a deep way, too, just

6   looking at his demeanor and the way he responded.  And I know

7   there's a bit of a language barrier.

8            And I think there was an association created there,

9   which he admitted to.  I tried to -- I didn't want to pry too

10  much into that just out of courtesy, you know, keeping this

11  moving forward.  I'm not sure exactly what it is, if it's just

12  thinking of the crime, but, you know, he obviously is -- you

13  know, he did -- when he answered your question, I understand

14  that he answered it, but I think the way he answered it and

15  the issues here, I think, would raise a cause issue for the

16  defense.

17           THE COURT:  Any response from the Government?

18           MR. STENGEL:  I think there -- there was a little

19  bit of a communication problem during our questioning of him.

20  At the end, when you very clearly said, do you understand my

21  instruction, would you follow my instruction, he said, yes.

22  Now, defense counsel brought in, you know, does being here

23  remind you of your incident.  And I took that more to be, he

24  could walk into a courtroom, and the charges could be

25  anything, and it would remind him that he was a victim of a

1    crime.  But he didn't give any indication that he would be --

2    that that would affect his ability to render an impartial

3    verdict, Judge -- or enter an impartial verdict, yeah.

4              MR. SCIOLLA:  I don't have anything to follow-up on

5    that, Judge.

6              THE COURT:  Okay.  Paul, anything to add?

7              MR. SHAPIRO:  I think Tim's point is also if we were

8    here looking for jurors for a civil case --

9              THE COURT:  Yeah.

10             MR. SHAPIRO:  -- he would say the same thing that

11   being here reminded him --

12             MR. COLEMAN:  Well, I'm sorry, the one thing I would

13   add, I agree with him on a point there --

14             THE COURT:  Yes.

15             MR. COLEMAN:  -- is that there was a communication

16   issue --

17             THE COURT:  Yes.

18             MR. COLEMAN:  -- and that's another separate issue,

19   so --

20             THE COURT:  Well, but there were questions that went

21   to, do you have any concerns about the ability to read, hear

22   or speak the English language that would prevent you from

23   being -- and he didn't -- he didn't answer in the affirmative

24   to that.

25             I'm going to deny the motion for -- largely, for the

1   reasons Mr. Stengel said, and I'll give you my take on it.  He
2   was very nervous.  Perhaps the language, communication issue
3   made him nervous.  I agree with Mr. Shapiro and Mr. Stengel
4   that I think just being in any courtroom reminds him of the
5   case, you know, but I asked prior questions about whether, you
6   know, just because the defendants are sitting there, whether
7   they've done anything wrong, and he did not say yes to that.
8            And when I did, then, say, you know, look, these
9   guys are totally different, and will you be able to be fair
10   and impartial and listen to my instructions, and most
11   importantly, what he didn't waiver on, language barrier or
12   not, in my view, he didn't waiver at all on, will you be able
13   to presume that these men are innocent until the Government
14   proves otherwise, and he said, yes, I will, so --
15            MR. SCIOLLA:  The only thing I would point out,
16   Judge, is that when you questioned him on why he didn't raise
17   his hand --
18            THE COURT:  Yeah?
19            MR. SCIOLLA:  -- he said, he's trying to process --
20   what I got out of it  was, he was trying to process it.
21            THE COURT:  Yeah.
22            MR. SCIOLLA:  So it goes to Tim's point about
23   communication.
24            THE COURT:  I think so, too, and it would have been,
25   maybe, a different answer from me or a different analysis if

1    he had said, now that I understand the question, my answer is

2    yes, and he never said that, so thank you.

3                    MR. SCIOLLA:  Okay.

4                    THE COURT:  Juror 34.

5                    MR. STENGEL:  34, firearms questions, NRA

6    membership.

7                    THE COURT:  Juror 34, please?

8                    So, Jeff, we are at 22.  We've got 14 to go.

9                    THE CLERK:  If we get to 30, theoretically, we could

10   eliminate two alternates and get rid of the alternate strikes,

11   if we had to.

12                   THE COURT:  Right, right.  You're right about that,

13   so --

14                   (Sidebar discussion with Juror No. 34 commenced:)

15                   THE COURT:  Hey, sir.

16                   Yeah, you're right about that.

17                   Come on in here, sir.  Who wants to start?

18                   MR. SCIOLLA:  Mr. Shapiro.

19                   MR. SHAPIRO:  No, that was my father.

20                   So, you answered -- you answered several questions

21   that the Judge asked, including knowing somebody in your

22   circle of friends or your family involved in drug addiction

23   and treatment.  Could you tell us about that, please?

24                   JUROR NO. 34:  Sure.  My cousin is a heroin addict

25   for quite awhile.  She had her baby in our basement while she

1    was on heroin.

2              THE COURT:  How's she doing now?

3              JUROR NO. 34:  She's off, but she still smokes a

4    little bit of weed, but other than that, she's pretty

5    straight.

6              THE COURT:  Okay.

7              JUROR NO. 34:  She has the baby.  She actually had

8    another baby --

9              THE COURT:  All right.

10             JUROR NO. 34:  -- and she's doing good.

11             THE COURT:  Good, good.

12             MR. SHAPIRO:  And do you think that any of that

13   experience would make you unable to be fair and impartial in

14   this case?

15             JUROR NO. 34:  No.

16             MR. SHAPIRO:  You also answered some of the firearms

17   questions about owning --

18             JUROR NO. 34:  Sure.

19             MR. SHAPIRO:  -- or using a firearm.  I take it

20   you've owned and used a firearm, right?

21             JUROR NO. 34:  Yeah.

22             MR. SHAPIRO:  Would that affect your ability to sit

23   fairly and impartially in --

24             JUROR NO. 34:  No, I don't think so at all.

25             MR. SHAPIRO:  -- a case involving firearms?

1          (Non-audible response)

2          THE COURT:  That was a no?

3          JUROR NO. 34:  Yeah, a no.

4          THE COURT:  Okay.  Hmm-hmm's don't show up as good

5     on the transcript as the no.

6          JUROR NO. 34:  That's okay.

7          MR. SCIOLLA:  I just wanted to (inaudible)?

8          JUROR NO. 34:  I breed my own snakes.

9          THE COURT:  Oh, interesting.  Just don't bring them

10    here.

11         MR. SCIOLLA:  Where do you breed your own snakes?

12         JUROR NO. 34:  I have them in my house, but I live

13    in Reading.

14         MR. SCIOLLA:  Okay.  All right, nice.

15         THE COURT:  Does anyone have any --

16         MR. SCIOLLA:  I have nothing further.

17         THE COURT:  -- follow-ups?  Okay.  Good.  All right,

18    thank you, sir, very much.

19         JUROR NO. 34:  No problem.

20         THE COURT:  All right.

21         (Sidebar with Juror No. 34 concluded.)

22         THE COURT:  Mr. Lucini does raise a point that I had

23    forgotten about.  We could always decide to go with two

24    alternates, as opposed to four.

25         MR. SHAPIRO:  Yeah.

1          MR. SCIOLLA:  I don't have a problem with that.  We

2     can raise that if it comes down to it.

3          MR. SHAPIRO:  It would be way better than having to

4     pick this up.

5          THE COURT:  Okay.  But you still want to proceed as

6     though we're selecting four and only drop the two if that's --

7          MR. STENGEL:  We can see where we land.

8          THE COURT:  All right.  That's fine.

9          MR. SCIOLLA:  I don't have a problem with that.

10         THE COURT:  That's fine.  Okay.

11         MR. SHAPIRO:  And you know what, we can always just

12    do three, too.  We don't have to do four.  Did we hit the

13    magic number?

14         THE COURT:  Okay.  Juror 35?

15         MR. SHAPIRO:  Did we hit the magic number?

16         THE COURT:  What's that?

17         MR. SHAPIRO:  Did we hit the magic number yet,

18    Judge?

19         THE COURT:  No, no.  That's why we're still going.

20         MR. SHAPIRO:  Got you.

21         THE COURT:  Juror 35.

22         MR. SCIOLLA:  Jury service.

23         THE COURT:  Criminal matter.

24         Juror 35, please?

25         (Sidebar with Juror No. 35 commenced:)

```
 1              THE COURT:  Hey, sir.
 2              JUROR NO. 35:  How are you doing?
 3              THE COURT:  All right.  Good.  Why don't, Mr.
 4    Sciolla, and Mr. Coleman, why don't you start?
 5              MR. SCIOLLA:  Good afternoon, sir, how are you?
 6              JUROR NO. 35:  All right.
 7              MR. SCIOLLA:  I just wanted to ask you about the
 8    questions on which you raised your hand.  I think you said you
 9    had a prior jury experience?
10              JUROR NO. 35:  Yes.
11              MR. SCIOLLA:  And is that a criminal case or a civil
12    case?
13              JUROR NO. 35:  I did both.
14              MR. SCIOLLA:  You did both?
15              JUROR NO. 35:  Yes, in Montgomery County.
16              MR. SCIOLLA:  Oh, okay.  So, when they need a juror
17    up there, they call you up and tell you --
18              JUROR NO. 35:  I've been in there, like, five times.
19    I also had one with the judge that sat for Bill Cosby --
20              MR. SCIOLLA:  Judge O'Neill?
21              JUROR NO. 35:  -- that got thrown out before it even
22    started.
23              MR. SCIOLLA:  Okay.
24              THE COURT:  Well, you've got a trusting face.
25    Everybody wants you to serve.
```

1           JUROR NO. 35:  Okay.

2           THE COURT:  You're lucky.

3           MR. SCIOLLA:  You also raised your hand and said

4    there was something that --

5           MR. SHAPIRO:  One second, Mr. Sciolla, just to

6    follow-up on that, the jury service question?

7           MR. SCIOLLA:  Yeah, go ahead, Paul.

8           MR. SHAPIRO:  In those cases where you sat, was your

9    jury able to reach a decision?

10          JUROR NO. 35:  Yes, in both cases, yes.

11          MR. SCIOLLA:  And then you raised your hand with

12   regard to somebody in the family was involved in court, a

13   witness or somebody --

14          JUROR NO. 35:  Yeah.  I was a witness in a trial.

15          MR. SCIOLLA:  Oh, you were?

16          JUROR NO. 35:  Yes.

17          MR. SCIOLLA:  Okay.

18          JUROR NO. 35:  It was a long time ago.

19          MR. SCIOLLA:  Was that a civil or a criminal?

20          JUROR NO. 35:  No, that was a criminal.

21          MR. SCIOLLA:  A criminal matter, okay.  Were you the

22   victim or were you --

23          JUROR NO. 35:  No.  I was testifying.  He was

24   actually with a motorcycle gang, the Warlocks.  They had

25   planned -- it involved a murder, and they had dumped the gun

1    at the gas station I was working at.

2              MR. SCIOLLA:  Oh, I see.

3              JUROR NO. 35:  In the dumpster behind where I was

4    working, so --

5              MR. SCIOLLA:  So you were called in on that?

6              JUROR NO. 35:  Yes.

7              MR. SCIOLLA:  Got you.  Anything about your prior

8    experience with the justice system, in any way, would it

9    affect your ability in this case to judge this case and these

10   facts now?

11             JUROR NO. 35:  I don't think so.

12             MR. SCIOLLA:  Okay.  That's all I have.  Thank you,

13   Mr. Meehl.

14             JUROR NO. 35:  Okay.

15             THE COURT:  Anything else?  All good?  Thank you,

16   sir.

17             JUROR NO. 35:  Thank you.

18             (Sidebar with Juror No. 35 concluded.)

19             MR. SCIOLLA:  Sorry about that.

20             THE COURT:  All right.  Okay.

21             MR. STENGEL:  36 is --

22             MR. SCIOLLA:  How many do we need?

23             THE COURT:  Well, that's the thing, with four

24   alternates, we need to get to 36.

25             MR. SCIOLLA:  And what do we have now?

1              THE COURT:  We have -

2              MR. SHAPIRO:  24.

3              THE COURT:  We need eight more.

4              MR. SHAPIRO:  12 more.

5              THE COURT:  12 more, excuse me.

6              MR. SCIOLLA:  I think we're going to need four.  If

7     we're just going to do two --

8              THE COURT:  Then we'd need 34.

9              THE CLERK:  Yeah, because then you can eliminate two

10    strikes.

11             THE COURT:  You can eliminate two strikes.

12             THE CLERK:  And two alternates, so that would get us

13    to 32.

14             MR. SCIOLLA:  Okay.

15             MR. STENGEL:  I'm fine with that.

16             MR. SCIOLLA:  I don't have a problem with that.

17    Given what we've already been introduced to, I have no problem

18    with that.

19             THE COURT:  I have not sat any -- I have never had

20    -- used more than two alternates.  And this -- I've had

21    trials, Paul, as you know, that have been this long or a

22    little longer.  We only considered four, I think, because you

23    were concerned about what if there's a Covid issue.

24             MR. STENGEL:  Yes, exactly.

25             MR. SCIOLLA:  Yeah.

1          THE COURT:  And the only trials I've had since

2     September have been much shorter, so I didn't really worry

3     about it, right.  Why don't we keep plugging?  Let's see --

4     we're not at the magic number yet anyway, no matter what that

5     is, but 36 had a purported hardship.

6          Juror 36, please?

7          I'll start with that, and we'll see where that takes

8     us.  So, right now, we're at 24, Jeff?

9          THE CLERK:  Yes.

10          (Pause)

11          (Sidebar with Juror No. 36 commenced:)

12          THE COURT:  Hey, how are you, sir?

13          JUROR NO. 36:  Good afternoon.  I'm doing well.

14     Thank you.

15          THE COURT:  Great.  Let me start with you, and then

16     the lawyers can follow-up, if need be.  You had -- you said

17     that there was something going on in your life right now that

18     might prevent you from --

19          JUROR NO. 36:  Yes.

20          THE COURT:  -- giving this matter your full

21     attention.  Could you talk about that?

22          JUROR NO. 36:  I raise ring-necked pheasants.

23          THE COURT:  Rain-necked pheasants?

24          JUROR NO. 36:  Ring.

25          THE COURT:  Ring-necked pheasants.

1            JUROR NO. 36:  I buy them in April at a day old, and

2    I sell them in October, November and December.

3            THE COURT:  Okay.

4            JUROR NO. 36:  If you've ever tried to catch a ring-

5    necked pheasant, it's not an easy job.  I was able to get

6    people to feed them for me today and tomorrow morning.

7            THE COURT:  All right.

8            JUROR NO. 36:  Nobody can catch them but me.  And

9    next week until the beginning of December is the busiest time.

10           THE COURT:  When you say catch them, what do you

11   mean?  I thought you bought them already.

12           MR. SCIOLLA:  They're out in a field?

13           JUROR NO. 36:  I bought them -- I -- they're -- we

14   have half-acre flight pens.  What a flight pen is, it has a

15   netting over it that are 20 feet high, and the birds fly

16   around in there.  When it's time to catch them and sell them

17   to hunting clubs or selling them to game preserves, you go in

18   with the fishing net, and you try and catch them, and my wife

19   and I are the only ones that do that.

20           THE COURT:  Can your wife catch them?

21           JUROR NO. 36:  No.

22           THE COURT:  Not even a little bit?

23           JUROR NO. 36:  She can -- she gets them in the net.

24   Once they're in the net, I have to pick them up by my hands,

25   take blinders off their -- the nose and put them in a cage.

1    She catches them with the net.  I take the blinders off.

2             THE COURT:  Anybody that can fill in on this

3    catching work?

4             JUROR NO. 36:  I have nobody to do it.  I mean,

5    it's --

6             THE COURT:  So this would mean, if you were a juror,

7    you'd be here, starting Monday until the following Wednesday.

8             JUROR NO. 36:  Yes, yes.

9             THE COURT:  Okay.  So is this something you do seven

10   days a week?

11            JUROR NO. 36:  I do it six days a week.

12            THE COURT:  Six days?

13            JUROR NO. 36:  So, I've already lost two days, today

14   and tomorrow.  I told my client -- what you need to understand

15   is tomorrow is the first day of -- Saturday is the first day

16   of hunting season.

17            THE COURT:  Right.

18            JUROR NO. 36:  So, this is my prime time.  I would

19   love to serve on a jury if you could do it in the first

20   quarter of the year.

21            THE COURT:  Okay.

22            JUROR NO. 36:  I mean, last week, I sold 800

23   pheasants at $15 a bird, and I'm going to sell probably 1,000

24   to 1,500 in those eight days, and I need -- I mean, now, is

25   the time to do it.

1          THE COURT:  I understand.  Thank you for that.

2          JUROR NO. 36:  Sorry.

3          THE COURT:  No, it's no problem.  It's no problem.

4     All right.  My grandmother always told me, you learn something

5     new every day.

6          (Sidebar with Juror No. 36 concluded.)

7          MR. SCIOLLA:  Plus you could never have the snakes

8     and the pheasants in the same --

9          THE COURT:  Yes, that would be --

10         MR. SCIOLLA:  What are the odds?

11         THE COURT:  Yeah, what are the odds of that.

12         MR. SHAPIRO:  It's a lot easier to shear them than

13    it is to catch them.

14         THE COURT:  You know, we've got a pheasant grower

15    and a snake grower, yeah, you're right.

16         MR. SCIOLLA:  What are the odds?

17         THE COURT:  We should say, did you meet this other

18    guy?  He's got somebody to catch them for you.

19         Okay.  That was Juror 36.  All right.  So, Juror 37.

20         MR. SHAPIRO:  That was Stanley Miller?  Yeah, that

21    was Stanley Miller.

22         THE COURT:  Juror 37?

23         All I have is the prior jury service.

24         MR. SCIOLLA:  Yeah, and law enforcement, so maybe

25    that's what that is.

1            THE COURT:  I did not have that.

2            MR. SHAPIRO:  Lawyer.

3            THE COURT:  Yeah, okay.  Okay.

4            (Sidebar with Juror No. 37 commenced:)

5            JUROR NO. 37:  Good afternoon.

6            THE COURT:  Hey, how are you?  Come on right up.

7    Who wanted to ask -- well, I'll ask.  You previously served on

8    a jury you said?

9            JUROR NO. 37:  Yeah.

10           THE COURT:  And where was that?

11           JUROR NO. 37:  Chester County.

12           THE COURT:  Chester County Court.  Civil or

13   criminal, do you remember?

14           JUROR NO. 37:  Criminal.

15           THE COURT:  Were you a juror?

16           JUROR NO. 37:  Yes.

17           THE COURT:  Did you deliberate and then reach a

18   verdict?

19           JUROR NO. 37:  Yes.

20           THE COURT:  Okay.  Was there anything about your

21   experience as a juror in that case which would color your

22   service here or prevent you from being fair and impartial?

23           JUROR NO. 37:  No.

24           THE COURT:  Okay.

25           MR. SCIOLLA:  You also raised your hand in regards

1    to someone -- you know someone in the law?

2                JUROR NO. 37:  Oh, right, my brother-in-law.

3                MR. SCIOLLA:  Okay.

4                THE COURT:  Well, do you like him?

5                JUROR NO. 37:  I do.

6                THE COURT:  Oh, all right.

7                JUROR NO. 37:  I do argue with him a lot though.

8                THE COURT:  Okay.

9                MR. SCIOLLA:  He's a lawyer.

10               THE COURT:  Yeah.

11               JUROR NO. 37:  He's a lawyer, yeah.

12               THE COURT:  Wait, he's a brother-in-law and a

13   lawyer.

14               JUROR NO. 37:  Correct, yes.

15               THE COURT:  And you like him?

16               JUROR NO. 37:  And I like him, yeah.

17               THE COURT:  Bless you.

18               MR. SCIOLLA:  You must really love your sister.

19               JUROR NO. 37:  It's my husband's brother.

20               THE COURT:  So, it's mandatory, yeah.

21               MR. SCIOLLA:  Does he do criminal work or --

22               JUROR NO. 37:  He does not.

23               MR. SCIOLLA:  He doesn't do any criminal?  Okay,

24   thank you.  He's the only other connection for which you

25   raised your hand?

1          JUROR NO. 37:  Right.

2          MR. STENGEL:  And that wouldn't have any bearing on

3    your ability to serve in this case, correct?

4          JUROR NO. 37:  Correct.

5          THE COURT:  Thank you.

6          JUROR NO. 37:  That's it?

7          THE COURT:  Yes.  That was easy, wasn't it?

8          JUROR NO. 37:  Yeah.

9          THE COURT:  Thank you.

10          (Sidebar with Juror No. 37 concluded.)

11          THE COURT:  Okay.

12          MR. SCIOLLA:  So, she doesn't believe the thousand

13    lawyers at the bottom of the ocean is a good start.

14          THE COURT:  She might.  She might.

15          MR. STENGEL:  Give her a week.

16          THE COURT:  Yeah, give her eight days.  Give her

17    eight trial days.

18          All right.  Juror 38.  Family or friend in the

19    military?

20          MR. SCIOLLA:  38?  38 didn't raise her hand at all,

21    did she?

22          THE COURT:  Just the family or friend in the

23    military.

24          MR. STENGEL:  Yeah, miliary.

25          MR. SCIOLLA:  Do we need to talk to her?

1          MR. STENGEL:  Let's skip that one.

2          THE COURT:  Yes.  That's another one I'm going to

3     skip.  Does anybody need to talk to Juror 38?

4          MR. STENGEL:  No, Your Honor.

5          MR. SCIOLLA:  Nope.

6          THE COURT:  Okay.  So, Jeff, that gets us to --

7          THE CLERK:  39.

8          THE COURT:  -- 39.

9          THE CLERK:  I have hardship and --

10          THE COURT:  Yeah.

11          Juror 39, please?

12          (Pause)

13          (Sidebar with Juror No. 39 commenced:)

14          THE COURT:  Hey, sir, how are you?

15          JUROR NO. 39:  Okay.

16          THE COURT:  Let me start with you, if you don't

17     mind, you had -- you told us that -- well, let me start with

18     this one.  You said that you wouldn't want you on a jury.

19          JUROR NO. 39:  Right, okay.

20          THE COURT:  Why?

21          JUROR NO. 39:  My father was busted for a nickel bag

22     of weed in the early '60s and put away for three years.  Left

23     a wife and five kids for three years, and that left a hole in

24     my heart.

25          THE COURT:  Okay.  So does that think you can't be

Jury Voir Dire                                          65

1  fair and impartial with respect to -- you would favor the

2  defendants?

3              JUROR NO. 39:  I don't know what I would do.  I

4  really don't.

5              THE COURT:  Okay.  You also mentioned that you had a

6  matter that you're focused on that would prevent you from --

7              JUROR NO. 39:  Two double infections.  I'm getting

8  one pulled Friday.

9              THE COURT:  Tomorrow?

10             JUROR NO. 39:  Next Friday.

11             THE COURT:  Next Friday?

12             JUROR NO. 39:  Yeah.  I already had the one root

13  canal.

14             THE COURT:  And --

15             JUROR NO. 39:  That's my dentist.

16             THE COURT:  Right.

17             JUROR NO. 39:  That was my referral for the --

18             THE COURT:  When and where is your appointment, did

19  you have that done?

20             JUROR NO. 39:  My appointment was with Dr. Maydel

21  (ph) on Friday at 9:00 in Bala Cynwyd --

22             THE COURT:  Okay.

23             JUROR NO. 39:  -- for my extraction.

24             THE COURT:  And that's a -- it's a tooth?

25             JUROR NO. 39:  Yeah.

1          THE COURT:  All right.  Could that appointment be

2     rescheduled if it had to be?

3          JUROR NO. 39:  No.  I mean, these -- the infection

4     on that tooth looks like a grapefruit.  I mean, my head is,

5     like, bursting, and it's like all -- all consuming.

6          THE COURT:  Okay.  Okay.  Thank you.

7          MR. SCIOLLA:  Thank you.

8          MR. SHAPIRO:  Thank you.

9          (Sidebar with Juror No. 39 concluded.)

10          MR. SCIOLLA:  Given that answer, I (inaudible)

11     pulling teeth.

12          (Pause)

13          THE COURT:  All right.  So we agree to strike Juror

14     39 for cause?

15          MR. SCIOLLA:  Yes.

16          MR. SHAPIRO:  Yes, Your Honor.

17          THE COURT:  Okay.

18          Juror 40.

19          MR. STENGEL:  Jury service and military, lawyer in

20     the family.

21          THE COURT:  Juror 40, please?

22          (Pause)

23          (Sidebar with Juror No. 40 commenced:)

24          THE COURT:  Hey, sir, how are you?

25          JUROR NO. 40:  Good, and you?

1          THE COURT:  I'm doing fine.  Thank you.  Who wanted

2     to start with follow-ups?

3          MR. SHAPIRO:  Sir, you answered several questions.

4     I'm still speaking too quietly.  You answered several

5     questions that the judge asked you.  So, several of them

6     having to do with possession and use of firearms.  Can you

7     just tell us a little bit about that?

8          JUROR NO. 40:  I learned how to use a firearm when I

9     served in the military, and I actually enjoy doing some

10    shooting myself, and so, I have some that I use for sport

11    enjoyment and self defense, if necessary, but it's not

12    necessary yet.

13         MR. SHAPIRO:  Good.  Would that knowledge or

14    experience, in any way, affect your ability to be fair and

15    impartial as a juror if you were selected in this case?

16         JUROR NO. 40:  I don't see how it would be a

17    conflict of interest.

18         MR. SHAPIRO:  Okay.  And you could judge the facts

19    in this case, down the middle, as they -- as they came?

20         JUROR NO. 40:  Right.

21         MR. SHAPIRO:  Nothing further.  Thank you.

22         MR. SCIOLLA:  Good afternoon, sir.  I think you also

23    indicated that you are familiar with or friendly with people

24    involved in the law, lawyers?

25         JUROR NO. 40:  I have three attorneys in the family,

1    yes.

2                MR. SCIOLLA:  Oh, do you?  I'm sorry to hear that.

3                JUROR NO. 40:  So far, it's (inaudible).

4                MR. SCIOLLA:  Are any of those people involved in

5    criminal law?

6                JUROR NO. 40:  No, they're all corporate or civil

7    cases.

8                MR. SCIOLLA:  So, no fixed opinions with regard to

9    lawyers or the law as a result of --

10               JUROR NO. 40:  No.

11               MR. SCIOLLA:  -- your friendships or relationships?

12   Okay.  Nothing further.

13               THE COURT:  Thank you, sir.

14               MR. SCIOLLA:  Thank you.

15               (Sidebar with Juror No. 40 concluded.)

16               THE COURT:  Okay.  Juror 41 had a purported

17   hardships, so let me start with that.

18               Juror 41, please?

19               (Sidebar with Juror No. 41 commenced:)

20               JUROR NO. 41:  Hello.

21               THE COURT:  Hey, how are you, Ma'am?  Come on right

22   in here.

23               JUROR NO. 41:  Okay.

24               THE COURT:  Let me start, I know you answered -- I

25   asked the question of whether there is something going on in

1    your life that would prevent you from --

2              JUROR NO. 41:  Yes.

3              THE COURT:  -- giving the matter your full

4    attention.  Could you please tell us a little more about that?

5              JUROR NO. 41:  Yes.  I'm a caregiver for my elderly

6    mother and my significant other, and I'm also dealing with

7    some health issues myself.  I have, like, four appointments --

8    three appointments next week for myself, including routine

9    testing.  I mean, I'm happy to serve, but to get the surgery,

10   I have to get my testing done.

11             THE COURT:  Okay, okay.  And may I assume that the

12   testing and the matter that -- let's focus on your health.

13   Are those tests and that matter so pressing that you couldn't

14   or wouldn't want to put them back?

15             JUROR NO. 41:  Yes.  I've been putting it off for

16   awhile, now, because of problems getting -- without dragging

17   this out, you know, getting the surgery done, it's not going

18   to get any better, so --

19             THE COURT:  And are you in any physical discomfort?

20   Would that prevent you from --

21             JUROR NO. 41:  No.

22             THE COURT:  And with respect to -- you said you're a

23   caregiver for your mother and --

24             JUROR NO. 41:  And my significant other.

25             THE COURT:  All right.  And is there anyone who

1    could care for those folks, if you were to be a juror?

2              JUROR NO. 41:  Well, my mother is pretty

3    independent, but the significant other, he relies on me for a

4    lot because he is legally blind --

5              THE COURT:  Okay.

6              JUROR NO. 41:  -- and then he has a host of other

7    health issues that -- and he's at the doctor at least

8    three/four times a week.

9              THE COURT:  Is there anyone to care for him in your

10   absence?

11             JUROR NO. 41:  No.  I've always been there, so I

12   haven't had to rely on anybody else.

13             THE COURT:  And do you live together?

14             JUROR NO. 41:  Yes.

15             THE COURT:  Okay, okay.  Does anyone have any

16   questions?

17             MR. SCIOLLA:  I don't, Your Honor.  Thank you.

18             THE COURT:  Okay.  Thank you for your honesty.  All

19   right, Ma'am.

20             JUROR NO. 41:  Okay.

21             (Sidebar with Juror No. 41 concluded.)

22             THE COURT:  Okay.

23             MR. SCIOLLA:  It's okay with us.

24             MR. STENGEL:  It's okay with us, too.

25             THE COURT:  I know there was a lot going on there.

1   I mean, I can't -- I can't -- I didn't feel like I could pry

2   with respect to her medical problem.

3              MR. SCIOLLA:  Right.  We should be able to excuse

4   her.

5              THE COURT:  Yes.  I mean, there was -- if it was --

6   I think -- the caregiver issues, I think, could have been

7   resolved.  The medical testing and the surgery, she was vague

8   on.  I just -- I didn't press real hard because the

9   combination seemed to me, but I would be happy, if you guys

10  want to drill down further, I'd be happy to call her back up

11  here.

12             MR. SCIOLLA:  No.  Judge, I just went through this

13  experience.  And trying to get yourself into a hospital and

14  get testing done before your procedure, it's no fun.

15             THE COURT:  It's real hard right now?

16             MR. SCIOLLA:  It's no fun.

17             THE COURT:  Yeah, okay.  Everybody okay with that?

18             MR. STENGEL:  Absolutely.

19             THE COURT:  Okay.  All right.  We'll move Juror 41,

20  then, for cause.

21             Okay.  Juror 42, please?

22             (Pause)

23             THE COURT:  Jeff, we're at how many?

24             THE CLERK:  We're at 27.

25             THE COURT:  We're at 27.

```
 1              THE CLERK:  If we get five more, we get the 32.
 2              MR. SCIOLLA:  If we get five more, that will
 3    qualify --
 4              THE COURT:  That would be two alternates.
 5              THE CLERK:  Or if we get 30, we could eliminate the
 6    two alternate strikes altogether.  That would be up to you
 7    guys.
 8              THE COURT:  They could talk about that.
 9              (Sidebar with Juror No. 42 commenced:)
10              THE COURT:  How are you, sir?
11              JUROR NO. 42:  How are you?
12              THE COURT:  I'm good.  Who wants to start?  This is
13    Juror 42.
14              MR. SCIOLLA:  Good afternoon.
15              MR. SHAPIRO:  Good afternoon, sir.
16              MR. SCIOLLA:  Go ahead, Paul, all yours.
17              MR. SHAPIRO:  So, why don't we split it?  I'll
18    start, and then you go.  So you had indicated that you were a
19    juror?
20              JUROR NO. 42:  Yes.
21              THE COURT:  Sir, can you just stand a little closer?
22    There you go.  You're good.  Okay.
23              MR. SHAPIRO:  Was that in a State or a Federal
24    court?
25              JUROR NO. 42:  I believe it was State.
```

1          MR. SHAPIRO:  Okay.  And what county?

2          JUROR NO. 42:  That was in Warren County in New

3    Jersey.

4          MR. SHAPIRO:  Okay.  And was it a criminal matter or

5    a civil?

6          JUROR NO. 42:  It was criminal.

7          MR. SHAPIRO:  And without telling me which way you

8    came out, was your jury able to reach a decision?

9          JUROR NO. 42:  Yes.

10         MR. SHAPIRO:  Okay, terrific.  You want to?

11         MR. SCIOLLA:  And you also indicated, sir, if I may

12   -- good afternoon --

13         JUROR NO. 42:  Good afternoon.

14         MR. SCIOLLA:  -- that you're related to or friendly

15   with law enforcement personnel?

16         JUROR NO. 42:  That's correct.

17         MR. SCIOLLA:  Okay.  Could you tell us who they are?

18         JUROR NO. 42:  My nephew is Homeland Security.  He

19   was also a trooper in Texas, and I work with a lot of

20   different VA police personnel.

21         MR. SCIOLLA:  VA?

22         JUROR NO. 42:  Yes.

23         MR. SCIOLLA:  Veteran's Administration.  Would any

24   of that -- I see that you're in the Department of Veteran's

25   Affairs?

1          JUROR NO. 42:  That's correct.

2          MR. SCIOLLA:  In New Jersey or here in Philly?

3          JUROR NO. 42:  In New Jersey.

4          MR. SCIOLLA:  Would any of those relationships come

5     into play --

6          JUROR NO. 42:  I don't think so.

7          MR. SCIOLLA:  -- in terms of making your decision?

8     Specifically, in evaluating testimony that would come from law

9     enforcement personnel, would you have a bias?

10          JUROR NO. 42:  No, I wouldn't.

11          MR. SCIOLLA:  Okay.  So you'd be able to judge

12     evidence just based on the facts and not on any previous

13     concepts or, in fact, positions?

14          JUROR NO. 42:  I think so.

15          MR. SCIOLLA:  Okay.

16          THE COURT:  What county do you live in, sir?

17          JUROR NO. 42:  I'm up there in Lehigh.  I'm up in

18     the Easton area.

19          THE COURT:  Easton.  Okay.  Very good.  Thank you.

20     Your county wasn't posted on here.  Okay, go ahead.  Sorry to

21     interrupt.

22          JUROR NO. 42:  Northampton.

23          THE COURT:  Northampton?

24          JUROR NO. 42:  Yes.

25          THE COURT:  Yeah.

1            MR. SCIOLLA:  Okay.  So the Government employment is

2    that of the Veteran's Association?

3            JUROR NO. 42:  That's correct.

4            MR. SCIOLLA:  I think that's all I have, Judge.

5    Thank you, sir.

6            MR. STENGEL:  Also, there was a question related to

7    someone you know who is struggling with addiction, drug

8    addiction or alcohol addiction?

9            JUROR NO. 42:  Quite a few people.  A lot of my

10   employees, as well as, I have a niece who is actually going

11   through the same kind of court issue right now, possibly,

12   manufacturing methamphetamine, distributing and something to

13   do with children, endangering the welfare of children.

14           THE COURT:  Endangering the welfare of children?

15           JUROR NO. 42:  Yes.

16           THE COURT:  That's your niece?

17           JUROR NO. 42:  That's correct.

18           THE COURT:  And she's currently facing those

19   charges?

20           JUROR NO. 42:  Some of those charges, I believe so.

21           THE COURT:  All right.  There will be similar

22   charges in this case.  No charges involving children, but

23   possession with intent to deliver methamphetamine.  Would the

24   fact that this deals -- this involves the same type of drug

25   and arguably similar conduct, would that cause you to look at

1    these gentlemen any differently?

2             JUROR NO. 42:  I don't believe so.

3             THE COURT:  You could be fair?  Okay.  Thank you.

4             MR. SHAPIRO:  And do you feel that your niece has

5    been treated fairly by the system?

6             JUROR NO. 42:  It's not completed yet, so I don't

7    really know.  My opinion is, I believe that she should be

8    going to jail for some of the issues, but I don't think that,

9    for her, counseling or, you know, anything like that, is going

10   to help her.  That's just my opinion.

11            THE COURT:  Hopefully, that will work out for her in

12   the long run.  Right.  Okay.

13            Did any -- counsel?

14            MR. SCIOLLA:  So, I take it you don't adopt the

15   position that anybody involved in drugs should go to jail?

16            JUROR NO. 42:  I'm sorry?

17            MR. SCIOLLA:  I said, I take it, you don't adopt the

18   position that anybody involved in drugs should go to jail?

19            JUROR NO. 42:  I understand the way if somebody is

20   doing drugs, they should go to jail?

21            THE COURT:  No.

22            MR. SCIOLLA:  No.  You indicated that you thought

23   your niece needed to go to jail.

24            JUROR NO. 42:  I believe so.  I think that she's had

25   too many chances, and I think it's -- you know, it's not

1    working for her.  That's my opinion.

2              MR. SCIOLLA:  But that's specific to her --

3              JUROR NO. 42:  That's correct.

4              MR. SCIOLLA:  -- not to the general population.

5              JUROR NO. 42:  That's correct.

6              THE COURT:  Thank you very much for your honesty.

7              JUROR NO. 42:  The other thing I would like to say

8    is on the 22nd, I'm supposed to be on vacation in Florida.  I

9    don't know if this will sway something one way or the other,

10   but if it does, I guess I'll have to cancel some flights.

11             THE COURT:  Well, what is your current plan?

12             JUROR NO. 42:  Leaving Friday morning from ABE on

13   the 22nd, returning --

14             THE COURT:  And what day is the 22nd?

15             ALL COUNSEL:  Friday.

16             JUROR NO. 42:  I'm returning on November 5th, which

17   is also a Friday.

18             THE COURT:  Well, if selected to serve, this trial

19   will go to the 27th, 8th, okay?  So, the question becomes, how

20   easy is it for you to cancel if that has to happen?  Is it

21   just you?  Is it your family?

22             JUROR NO. 42:  No.  It's me and my family.

23             MR. SCIOLLA:  Is it prepaid?

24             THE COURT:  How long has this trip been in the

25   works?

1           JUROR NO. 42:  Two weeks.

2           THE COURT:  Okay.  Would you lose any money if you

3    couldn't go?

4           JUROR NO. 42:  I don't think the airline would --

5    you know, I think it's -- you know, they'll honor it, I'd

6    assume.  I don't -- you know, other than that, I don't believe

7    so, no.

8           MR. STENGEL:  Let me ask this, would you be

9    (inaudible) with the rest of your family if your vacation were

10   canceled?  I mean, I know in my case --

11          JUROR NO. 42:  I'm all right if she goes by herself.

12          THE COURT:  Hey, if you want the out, we can give

13   it.

14          JUROR NO. 42:  Would you be able to and meet them

15   there if they went ahead of you?

16          JUROR NO. 42:  Yeah, I'm sure I could, if she

17   decided to go.  I would assume, yes.

18          THE COURT:  Thank you, sir.

19          MR. SHAPIRO:  Thank you, sir.

20          JUROR NO. 42:  Thank you.

21          (Sidebar with Juror No. 42 concluded.)

22          MR. SHAPIRO:  Whatever you want to do.

23          THE COURT:  I've had a lot of those, and that's the

24   first one I had where the gentleman appeared not to care at

25   all if he missed the vacation, to be honest with you.  I don't

1   see a basis for cause there.  He never said, guys, I gotta go;

2   guys, if I can't go, I'm not going to be able to focus on this

3   or, you know, I'm out $3,000.  And I've had a lot of those,

4   and that was a much different exchange.

5            MR. SHAPIRO:  For what it's worth, I had a trial in

6   front of Judge Beetlestone that was scheduled in the middle of

7   my European trip to celebrate my 60th birthday, and I was here

8   for the trial, and my family went without me.

9            MR. SCIOLLA:  What was it, about ten/12 years ago?

10           THE COURT:  Does anybody -- I do not see a basis for

11   cause there.

12           MR. SHAPIRO:  I don't.  I mean, Judge, I gave him a

13   -- I gave him a curveball.

14           THE COURT:  You did.  You did.  Okay.  All right.  As

15   I say, that -- as did I.  I mean, I gave him two or three

16   potential outs, and so -- all right.  Okay.

17           MR. SCIOLLA:  He's probably half Italian.

18           THE COURT:  We've got Number 43.  Oh, and I might

19   say, by the way, further to that, guys, is there a matter in

20   your life that's so pressing you couldn't -- he didn't -- he

21   didn't answer yes to that.

22           MR. SCIOLLA:  Right.

23           MR. SHAPIRO:  No, he brought it up, he said, by the

24   way.

25           THE COURT:  Yeah, okay.  43, anybody -- does anybody

1    need to speak with Juror 43?

2              MR. SHAPIRO:  There were -- there were a number of

3    questions.  I'm looking at what they are.

4              MR. SCIOLLA:  Well, he said drug usage.

5              THE COURT:  Drug addiction, okay.

6              Juror 43, please.

7              THE COURT:  We have 28.

8              MR. SHAPIRO:  And we have to get to 32?

9              THE COURT:  32, 34 or 36.  We can --

10             THE CLERK:  Discussion at 30.

11             MR. SHAPIRO:  Got you.

12             (Sidebar with Juror No. 43 commenced:)

13             THE COURT:  Hey, sir, how are you?

14             JUROR NO. 43:  I'm fine.  How are you?

15             THE COURT:  I'm doing fine.  Who wants to begin?

16             MR. STENGEL:  I think you might have answered yes to

17   a question that has some involvement in the criminal justice

18   system, somebody close to you?

19             JUROR NO. 43: Yeah.  Yeah.

20             THE COURT:  Sir, come on over, I want to make sure I

21   get you.

22             MR. STENGEL:  To whom were you referring?

23             JUROR NO. 43:  I was assaulted when I was 17, and

24   the court -- it went to court, and I was not present in court,

25   but the gentleman who assaulted me ended up being -- it was a

1  medical --

2              THE COURT:  Was it a civil case?

3              JUROR NO. 43:  I think it was.

4              THE COURT:  Yeah, damages?  You got money?

5              JUROR NO. 43:  Yeah.

6              THE COURT:  Okay, okay.

7              JUROR NO. 43:  And he had some probation or

8  something.

9              THE COURT:  Oh, okay.

10             MR. SCIOLLA:  He got arrested.

11             THE COURT:  A little of both, maybe?

12             MR. SCIOLLA:  He was arrested and charged with the

13  crime?

14             JUROR NO. 43:  Yeah, yeah.

15             MR. SCIOLLA:  Okay.

16             MR. SHAPIRO:  So, as a result of that -- I'm sorry,

17  Your Honor, did I --

18             THE COURT:  No, no, please.

19             MR. SHAPIRO:  As a result of that experience, and

20  you understand that that experience is different in every way

21  from this?

22             JUROR NO. 43:  Oh, sure.

23             MR. SHAPIRO:  It's a whole different set of people,

24  and that would not affect your ability to be fair and

25  impartial here?

1           JUROR NO. 43:  Correct.

2           MR. SHAPIRO:  Do you feel that the system, the

3       judicial system, acted appropriately in the prior case?

4           JUROR NO. 43:  Yeah, I do.

5           MR. SCIOLLA:  And I asked you -- it seems you raised

6       your hand with reference to police or you have some sort of

7       connection or knowledge or friendships with police officers?

8           JUROR NO. 43:  Yeah, a good friend who I coach with

9       is a police officer, a former police officer, and my uncle is

10      a police officer.

11          MR. SCIOLLA:  Okay.  Would you relationship with

12      those gentlemen and interactions with them, in any way, affect

13      your ability to be fair here, particularly judging the

14      testimony of law enforcement?

15          JUROR NO. 43:  No.

16          MR. SCIOLLA:  Thank you.

17          MR. SHAPIRO:  And there was also -- and you did

18      respond to a question about somebody in your circle being

19      involved in drug addiction and treatment?

20          JUROR NO. 43:  Yeah.  My brother-in-law is an

21      addict, and a friend of mine is a reformed -- reformed addict.

22          MR. SHAPIRO:  And, as the judge indicated, this

23      involves charges relating to narcotics.

24          JUROR NO. 43:  Sure.

25          MR. SHAPIRO:  Again, you understand that -- that

1    these matters are different from those?

2              JUROR NO. 43:  Yes.

3              MR. SHAPIRO:  Do you think that your own personal

4    experiences or the experiences of those you know, that that

5    would affect your ability to be fair and impartial in this

6    case?

7              JUROR NO. 43:  I don't.

8              THE COURT:  Thank you very much, sir.

9              JUROR NO. 43:  You're welcome.

10             Can I just say that I'm a business owner, and I know

11   everybody has got their own issues with an eight-day case.  I

12   just want to throw mine out there.

13             THE COURT:  Okay.

14             JUROR NO. 43:  So, I own a run a business in Berks

15   County.  I'm coming from Wyomissing, so it was an hour and 40

16   minute drive this morning.  I have a number of meetings

17   scheduled next week.  I have a conference.

18             THE COURT:  How many employees in your business?

19             JUROR NO. 43:  27.

20             THE COURT:  Is there anyone that can cover those

21   requirements?

22             JUROR NO. 27:  Not those particular meetings.  The

23   business will survive.  There's no doubt about that.  It runs

24   itself, but I do have a lot of involvement.  I have a

25   conference the following week.  I have a presentation to

1    prepare for, too.

2              THE COURT:  Is there anything that you could cover

3    by Zoom and/or on the weekends, if you had to?

4              JUROR NO. 43:  Yeah, possibly.  I just wanted to

5    throw that out there.

6              THE COURT:  I appreciate it.

7              JUROR NO. 43:  I know everybody's got their issues,

8    and, heck, even without coming from where you're coming from

9    is a sacrifice.

10             THE COURT:  Would you stay at the hotel?

11             JUROR NO. 43:  I'd probably have to, yeah.

12             THE COURT:  Okay.  Thank you.

13             JUROR NO. 43:  You're welcome.

14             (Sidebar with Juror No. 43 concluded.)

15             THE COURT:  Okay.  He's okay.

16             MR. SCIOLLA:  Yeah.

17             THE COURT:  44?

18             THE CLERK:  He's a hardship.

19             (Pause)

20             (Sidebar with Juror No. 44 commenced:)

21             THE COURT:  Hey, sir, how are you?

22             JUROR NO. 44:  I could be better.

23             THE COURT:  What's going on?  Come on right up here

24    and let me ask you.

25             JUROR NO. 44:  I need a root canal as soon as

1    possible.

2             THE COURT:  Oh, you got a -- man, we got a lot --

3    everybody's got dental problems in here.  You're like the

4    fourth one.

5             JUROR NO. 44:  I'm trying to schedule an

6    appointment.

7             THE COURT:  Are you sure that wasn't the line in the

8    jury room, you all said to say you have teeth problems?

9             JUROR NO. 44:  You should have seen me yesterday.

10            THE COURT:  Are you hurting?

11            JUROR NO. 44:  So, is that the matter -- you said

12   there was a matter that would prevent you from giving your

13   full attention to the case.  Was that what you were referring

14   to?

15            JUROR NO. 44:  Yes, sir.

16            THE COURT:  All right.  So, what's going on with it?

17   When is your -- do you have an appointment to get it taken

18   care of?

19            JUROR NO. 44:  No, I wanted to do that today, but

20   I'm here.

21            THE COURT:  You're here.  Well, thank you for being

22   here by the way.  Do you have a -- do you know who's going to

23   take care of it?  You have a regular dentist?

24            JUROR NO. 44:  My dentist's name is Fuller (ph).

25   He's a dentist on Old York Road.

 1              THE COURT:  Old York Road.  All right.  Okay.  And

 2   so, is it an issue of you can't get an appointment or you're

 3   in -- are you in a lot of discomfort?

 4              JUROR NO. 44:  Yes.

 5              THE COURT:  And that would prevent you from

 6   focusing, do you think?

 7              JUROR NO. 44:  I believe so, yes.

 8              THE COURT:  Okay.  And you think you're going to be

 9   able to get it taken care of this week?

10              JUROR NO. 44:  I have to.

11              THE COURT:  Okay.

12              JUROR NO. 44:  I can't take it.

13              THE COURT:  Okay.

14              MR. SCIOLLA:  I have nothing.

15              THE COURT:  Okay.

16              MR. SCIOLLA:  Thank you.

17              THE COURT:  Good luck, all right?

18              JUROR NO. 44:  All right.

19              THE COURT:  You've still got to stick around, now,

20   and then we'll dismiss everybody.  Okay.

21              (Sidebar with Juror No. 44 concluded.)

22              MR. SHAPIRO:  Judge, our agent did note that he

23   looked pretty uncomfortable.

24              THE COURT:  Yeah.  He seemed credible to me.

25              MR. SHAPIRO:  He's a scientist.

1              THE COURT:  He's a scientist.  Juror 45.

2              MR. STENGEL:  45 had some issues with guilty plea

3     agreements and --

4              THE COURT:  Oh, right, right, right.

5              Okay, Juror 45?

6              You're right.  Oh, yeah, yeah, yeah.  And allegedly

7     couldn't follow my instructions.

8              MR. SHAPIRO:  Right.  Well, they were a little

9     convoluted to begin with.

10             THE COURT:  That must have been one of the few you

11    gave me.  All right.  Okay.

12             (Sidebar with Juror No. 45 commenced:)

13             JUROR NO. 45:  Hey, guys, how are you?

14             THE COURT:  Hey, come on up here, sir.

15             JUROR NO. 45:  How are you doing?

16             THE COURT:  Let me -- let me start, and then but I

17    asked a series of questions about guilty plea agreements.

18             JUROR NO. 45:  Yes.

19             THE COURT:  And this case involving some witnesses

20    who have -- you will hear, have agreed to plead guilty and

21    will be cooperating with the Government.

22             JUROR NO. 45:  Right.

23             THE COURT:  And I asked you a couple of questions,

24    one of which -- well, why don't you tell me about how you feel

25    about that and what prompted you to raise your hand.

1              JUROR NO. 45:  Yeah.  I think it was your first

2    question on the plea.  It just struck a cord.  Just, I didn't

3    think much about it before you asked the question, and when

4    you asked the question, I thought about it, and I'm not 100

5    percent sure I can be fair there.

6              THE COURT:  In what way?

7              JUROR NO. 45:  In the situation where you've got a

8    person who pleaded guilty, took a guilty oath or a plea in

9    exchange.  For me, that's a pretty big leap as far as claiming

10   your guilt over something, and for me --

11             THE COURT:  Well, well, wait a minute.  We may be

12   confusing things.

13             JUROR NO. 45:  Clarify for me.

14             THE COURT:  Their innocence is not at issue here.

15             JUROR NO. 45:  No, I don't have an issue with their

16   innocence, no.

17             THE COURT:  So, are you saying you would tend not to

18   believe their testimony?

19             JUROR NO. 45:  No, actually, I'd believe their

20   testimony.

21             THE COURT:  So, because they pled guilty, you think

22   they are more credible?

23             JUROR NO. 45:  If they're -- hypothetically, if

24   they're associated with the situation, and they pled guilty,

25   part of me doesn't believe that I would be fair to -- be

1    biased to that.  I would assume that they are believable, and

2    they're accountable.  They made sure they were accountable,

3    and they took the plea.

4           THE COURT:  Now, there may be other reasons why you

5    might not believe them, right?  The fact that they have pled

6    guilty, and I think that's -- that's the issue, right?

7           JUROR NO. 45:  Yeah.

8           THE COURT:  You're going to be asked to assess the

9    credibility of all witnesses.

10          JUROR NO. 45:  Sure.

11          THE COURT:  And I'll give you a handful of

12   considerations to use in that.

13          JUROR NO. 45:  But, basically, what we're trying to

14   get to is, can you -- can you judge every witness fairly, no

15   matter what they did.  That is, you would intend to believe or

16   disbelieve a witness, for example, just because they're a cop,

17   and you would intend to believe or disbelieve a witness just

18   because they pled guilty.  And there's an instruction in there

19   that I'll give you that, you know, you are to weigh their

20   testimony with great care.

21          Will you be able to do that, and if you find them

22   believable because of their demeanor or their testimony is

23   corroborated or for whatever, that's fine.  If you find them

24   not believable for other reasons, that's fine, too.  Could you

25   apply those neutral factors to a witness who is testifying who

1  had a guilty plea agreement?

2              JUROR NO. 45:  Could I apply those factors?

3              THE COURT:  Just to judge them like any other

4  witness?

5              JUROR NO. 45:  I could.  I guess, from my

6  perspective, they're not any other witness, so that's my

7  issue.  That's all -- I'm -- for me, it's about, they went

8  down that road --

9              THE COURT:  So, at the end of the day, you would

10  give their testimony more weight?

11             JUROR NO. 45:  Yes.

12             THE COURT:  You would presume that they're telling

13  the truth?

14             JUROR NO. 45:  I'm just being totally fair.  You

15  asked the question.

16             THE COURT:  No, there's no wrong answers here.

17             JUROR NO. 45:  I'm being transparent in that, if

18  they went down that road, you've got to give them some credit

19  for going down that road.  So I feel like I'm not being fair

20  or unbiased, let's put it that way.

21             THE COURT:  Okay.  Well, like I said, you could end

22  up believing them for a whole host of reasons, but what you

23  can't do is, they can't start with a head start with you just

24  because they've pled guilty.

25             JUROR NO. 45:  That's my turmoil, yeah, and I'm just

1   being honest.

2           THE COURT:  Why don't you guys follow-up on that?

3           MR. SCIOLLA:  Good afternoon, sir.  Just so I

4   understand, are you suggesting that a person who has

5   cooperated and has testified, say, against one or two of these

6   young men here, that you would automatically give that man

7   credibility because he's pled guilty and fessed up or owned up

8   to his own, and you think that these people should, as well?

9           JUROR NO. 45:  I find accountability to be a huge

10  virtue, and I find that to be a very accountable act.

11          MR. SCIOLLA:  So, to answer my question, do you give

12  greater weight to a cooperator because he confessed his own

13  sins, and you would think that these people must be guilty

14  because he said they are?

15          JUROR NO. 45:  If associated in the same situation

16  that they were accused of, yes.

17          MR. SCIOLLA:  Well, in this case, the Government is

18  going to call a witness that says they were -- that he was in

19  a partnership with at least one or two of these people.  Are

20  you automatically going to agree to that?

21          JUROR NO. 45:  That hold weight with me, yeah.

22          MR. SCIOLLA:  Yeah, and that would be a hard thing

23  to --

24          JUROR NO. 45:  Fortunate or unfortunate, I just find

25  it to be a virtue.

1    MR. SCIOLLA:  No, we're not here to make you

2    uncomfortable.  We're just here to find out if you can be a

3    fair juror.  And what you're telling me is, you would already

4    give that particular Government witness credibility just

5    because of his guilty plea.

6         JUROR NO. 45:  Credibility is difficult.  I think

7    I'd find -- all right.  You want to use the word credibility,

8    that's fine, yeah.  Yeah.  I won't mince words.

9         MR. SCIOLLA:  Sure.

10        MR. SHAPIRO:  And you said something that you'd find

11   somebody acknowledging their own wrongdoing to be a virtue?

12        JUROR NO. 45:  Yeah.

13        MR. SHAPIRO:  And I think that's a (inaudible).  And

14   would you -- and that sort of a general principle, like, and

15   that would apply to any person who acknowledged their own

16   wrongdoing or would it just be in the context of the guilty

17   plea agreement, but any person who admitted that they had done

18   something wrong, you would find favor with?

19        JUROR NO. 45:  Yes, absolutely.  Yeah, yeah.

20        MR. SHAPIRO:  So, the guilty plea agreement is just

21   one example of the larger principle?

22        JUROR NO. 45:  Yeah.  I mean, if somebody owns up to

23   being accountable for an action they did, absolutely, I'd find

24   in a high standard.

25        MR. SHAPIRO:  So, when Mr. Sciolla said to you that

1    -- well, and there are -- there are going to be witnesses

2    here, people who have signed guilty plea agreements and are

3    coming in to testify.  Would you be able to watch them testify

4    and judge their credibility acknowledging that, on the plus

5    side, they have admitted that they did something wrong?

6              JUROR NO. 45:  Yeah.

7              MR. SHAPIRO:  But they also could have negatives, as

8    well?

9              JUROR NO. 45:  Yeah.

10             MR. SHAPIRO:  And if they were being truthful, you'd

11   find them truthful.  If they weren't being truthful, you could

12   see that they weren't being truthful?

13             JUROR NO. 45:  Yes.  Yeah, I mean, that's just

14   standard with anybody.

15             MR. SCIOLLA:  Well, let me ask you this, the flip

16   side of that would be that neither one of these young men

17   decide to testify, would you automatically assume they must be

18   guilty because the other fellow said they weren't, and they

19   didn't -- accountability, in terms of your definition of it,

20   was not endorsed by them?

21             JUROR NO. 45:  I don't know if that's a -- I don't

22   want to say I'm biased to it, but that's a notion in my head.

23             MR. SCIOLLA:  Yeah, okay.

24             JUROR NO. 45:  I'm just trying to be --

25             THE COURT:  There is no wrong answer.

1              MR. SCIOLLA:  No, we appreciate your honesty.

2              THE COURT:  There's no wrong answers.

3              JUROR NO. 45:  Thank God.

4              THE COURT:  Thank you so much.

5              MR. SCIOLLA:  I appreciate that.

6              (Sidebar with Juror No. 45 concluded.)

7              THE COURT:  Are there any motions for cause with

8    respect to Juror 45?

9              MR. SCIOLLA:  Yes, Your Honor.

10             MR. COLEMAN:  Yes, Your Honor.

11             MR. SCIOLLA:  He's a hand grenade waiting to go off.

12             MR. COLEMAN:  Yeah, I mean, I --

13             MR. SCIOLLA:  You don't want an appeal --

14             MR. COLEMAN:  I thought it was just going to be

15   that, alone.

16             THE COURT:  Yeah.  But or because?

17             MR. STENGEL:  Well, I think he was coming back

18   around.

19             THE COURT:  But didn't get there?

20             MR. STENGEL:  Of course, I don't know if he got

21   there.

22             THE COURT:  Yeah, I agree.  Look, Paul brought him

23   back around a little bit, as Tim points out, but he had too

24   many chances to be far more definitive with respect to that

25   question, and every time, he hemmed and hawed and kind of

1  always landed back on, I'm going to give more weight, I'm

2  going to start -- someone who has pled guilty is going to

3  start out on a higher plane with me, and, frankly, given the

4  fact that I can assume that some of the case -- some of the

5  Government's most powerful evidence will come from witnesses

6  like Mr. Banks and/or Mr. Akwiboa (ph) who have entered into

7  guilty pleas.  That's a very important issue in the case, and

8  I was not comfortable with how he answered those questions.

9              I'll grant the motion for cause.

10             MR. SCIOLLA:  Thank you, Judge.

11             THE CLERK:  I think we're playing for 32, Your

12  Honor.

13             THE COURT:  How many do we have?

14             THE CLERK:  We have 29, and we have eight to call

15  left.

16             (Pause)

17             THE COURT:  Does the next one have any issue?

18             THE CLERK:  70 or above.

19             THE COURT:  70 or above.  All right.  How about

20  Juror 46?

21             MR. SCIOLLA:  Roberta Day.

22             MR. STENGEL:  Criminal justice system.

23             THE COURT:  Juror 46, please?

24             So, Jeff, if we chose 32, it would be like normal,

25  two alternates and two strikes.

1          MR. SCIOLLA:  I think that's okay with all of us.

2          MR. SHAPIRO:  Yeah.

3          THE COURT:  Would you be -- would the Government be

4     okay with that, that we'd have 12 jurors, two alternates and

5     two alternate strikes?

6          MR. STENGEL:  If that's where we are, then that's

7     where we are.

8          THE COURT:  Okay.

9          MR. SCIOLLA:  So, how many perempts would we be

10    talking about?

11         THE CLERK:  You'd still get your normal.

12         MR. SCIOLLA:  15/10.

13         THE CLERK:  11 and seven, yeah.

14         MR. SCIOLLA:  Oh, 11 and seven.

15         THE CLERK:  Because you get two -- well, you get the

16    extra alternate, so it's 11 and seven.

17         MR. SCIOLLA:  Well, if we go back to just two

18    alternates, it goes back to ten and six, right?

19         THE COURT:  No.

20         THE CLERK:  No.

21         MR. SCIOLLA:  It stays at 11, seven?

22         THE COURT:  Yes.

23         MR. SCIOLLA:  Oh, cause you gave us the extra one?

24         THE COURT:  Yes.

25         THE CLERK:  Right now, we baked in an extra

1    alternate and two extra strikes.

2                MR. SCIOLLA:  Got you.  Thank you.

3                THE COURT:  Juror 46?  Is Juror 46 here?  Three

4    times the charm.

5                (Pause)

6                (Sidebar with Juror No. 46 commenced:)

7                JUROR NO. 46:  Good afternoon, gentlemen.

8                THE COURT:  Good afternoon, sir.

9                ALL COUNSEL:  Good afternoon, sir.

10               THE COURT:  Who wants to start?

11               MR. SCIOLLA:  Tim.

12               MR. STENGEL:  Sir, I believe you answered yes to

13   some experience with the criminal justice system where you

14   were a victim or a defendant or a witness.  Can you just talk

15   a little bit about that?

16               JUROR NO. 46:  Yes.

17               THE COURT:  Here, sir.

18               JUROR NO. 46:  About 30 years ago, my wife was

19   assaulted and robbed on a bus.

20               MR. STENGEL:  In Philadelphia?

21               JUROR NO. 46:  In Philadelphia, yes.

22               MR. STENGEL:  And were the perpetrators caught?

23               JUROR NO. 46:  Yes, caught and found guilty.  Yes.

24               MR. STENGEL:  And did you feel like the criminal

25   justice system produced a just result on that?

1              JUROR NO. 46:  In this case, absolutely, yes.

2              MR. STENGEL:  Okay.  And what about other cases?

3              JUROR NO. 46:  Other cases?

4              MR. STENGEL:  You said in this case?

5              JUROR NO. 46:  Well, I think there's other cases

6    that I've seen in the News where I didn't think they were --

7              THE COURT:  But you didn't know the evidence in that

8    case?

9              JUROR NO. 46:  No, absolutely not.

10             MR. STENGEL:  And would anything about your

11   experience -- either, in your own experience or cases you just

12   referred to, affect your ability to be a fair and impartial

13   juror?

14             JUROR NO. 46:  No.

15             MR. STENGEL:  And you'd be able to listen to Judge

16   Pappert's instructions and apply the facts to the law?

17             JUROR NO. 46:  Absolutely.

18             MR. SHAPIRO:  Just one quick question, thank you,

19   sir.  You work for the Government?

20             JUROR NO. 46:  I do.  I work for the Department of

21   Defense.

22             MR. SHAPIRO:  Okay.  And obviously, your position

23   within that Department would not have, in any way, shape or

24   form, a reason to believe the Government in this case just

25   because you both work for the Government?

1           JUROR NO. 46:  No.

2           MR. SHAPIRO:  Nothing else, Your Honor.

3           THE COURT:  Thank you, sir.

4           JUROR NO. 46:  Thank you.

5           THE COURT:  You're welcome.  Thank you.

6           (Sidebar with Juror No. 46 concluded.)

7           THE COURT:  Okay, 46.  That gets us to 30.

8           Juror 47?

9           THE CLERK:  Jury experience.

10          THE COURT:  Juror 47, please?

11          (Pause)

12          (Sidebar with Juror No. 47 commenced:)

13          THE COURT:  Hey, how are you, sir?

14          JUROR NO. 47:  How are you doing?

15          THE COURT:  Who would like to begin?

16          MR. COLEMAN:  How are you doing, sir?

17          JUROR NO. 47:  Good.

18          MR. COLEMAN:  I think you had answered yes to some

19   question regarding personal drug use.  Can you explain that?

20          JUROR NO. 47:  Sure.

21          THE COURT:  Step in here, sir.

22          JUROR NO. 47:  Yeah.  So it was a question -- the

23   question was --

24          MR. COLEMAN:  A person would be able to use drugs --

25          JUROR NO. 47:  Yeah, absolutely.

1          MR. COLEMAN:  Can you explain what you meant by
2     that?
3          JUROR NO. 47:  Just that I think drugs should be
4     legal 100 percent.  I don't believe it should be illegal to
5     consume drugs or to have drugs.
6          THE COURT:  All drugs?
7          JUROR NO. 47:  Yeah.
8          THE COURT:  Any drugs?
9          JUROR NO. 47:  That's correct.
10         THE COURT:  Heroin, cocaine, methamphetamine?
11         JUROR NO. 47:  Yeah, yeah.
12         MR. SCIOLLA:  If I may, sir, you also indicated that
13    relationships with people, that you have relationships with
14    people who are in law enforcement?
15         JUROR NO. 47:  Yeah, yeah.  I'm very close with an
16    aunt, my father's sister, who was a police officer in Miami
17    Dade for 30 years.
18         MR. SCIOLLA:  And you also indicated that someone in
19    the family had been involved in the criminal justice system.
20    Is that who you were referring to?
21         JUROR NO. 47:  Actually, no.  Well, with regard to
22    being in trouble with or --
23         MR. SCIOLLA:  A witness or a defendant.
24         JUROR NO. 47:  My mother, actually, was indicted for
25    larceny in Maryland.

1          MR. SCIOLLA:  In Maryland.  By the State or by the

2     Federal?

3          JUROR NO. 47:  By the State.  Well, I think it was

4     the State.  I was a teenager.  She actually spent six months

5     in prison.

6          MR. SCIOLLA:  Would any of those occurrences or

7     relationships enter into your ability in this case to give the

8     Government and the defendant a fair trial?

9          JUROR NO. 47:  I don't believe so, no.

10          MR. SCIOLLA:  And you can follow the judge's

11     instructions on the law?

12          JUROR NO. 47:  Yeah, I absolutely can.

13          MR. SCIOLLA:  You understand that you are going to

14     be a fact finder, but the judge is going to tell you what the

15     law is, and you've got to apply that law to the facts.

16          JUROR NO. 47:  100 percent.

17          MR. SCIOLLA:  You and your fellow jurors.

18          JUROR NO. 47:  I understand.

19          MR. SCIOLLA:  And you can do that fairly and

20     impartially for both sides?

21          JUROR NO. 47:  I believe so, yeah.

22          THE COURT:  So, one of the first questions I asked

23     is, I am going to -- that as a juror, your duty is to apply

24     the law, as I give it to you, whether you agree with it or

25     not.  And you have to put aside all of your philosophical

1   beliefs.  I am going to tell you that if the Government proves

2   that these defendants did what they allege that they have

3   done, that that is a violation of Federal law.  All right.

4   And that if you find that the Government has shown A, B, C and

5   D, then, you know, you can vote to convict these people --

6   these defendants.

7             Are you going to be able to put aside your personal

8   opinion on the legalization of drugs and follow my

9   instructions on the law, even those you disagree with it?

10            JUROR NO. 47:  100 percent.  I follow the law

11  myself.  I understand the difference.

12            THE COURT:  Okay.

13            MR. SCIOLLA:  I have nothing else, Judge.  Thank

14  you.

15            JUROR NO. 47:  Thank you very much.

16            THE COURT:  Thank you, sir.

17            MR. SHAPIRO:  That was going to be my question,

18  next, so --

19            (Sidebar discussion with Juror No. 47 concluded.)

20            THE COURT:  I see it a lot, you know, that was --

21  okay, so 47 is okay.  We had a big marijuana trial, and there

22  were a number of people, like, I don't think this should be

23  illegal, but so I --

24            MR. SHAPIRO:  How did he make out?

25            THE COURT:  He was convicted.

```
1              MR. SCIOLLA:  There you go.

2              THE COURT:  And then he filed a motion for

3   compassionate release because of Covid, and thankfully, I

4   ordered a quick response to it.  I didn't sit on it, and the

5   Government was in the process of responding, and the man died

6   of Covid.  Patrick Walker.  Yeah, it was horrible.  Yeah.

7              Thank God, none of us sat on it.  We all -- it was

8   very sad.  Very sad.

9              All right.  So, Jeff, how many are we up to?

10             THE CLERK:  One more.  We have 32.

11             MR. SCIOLLA:  We've got a guy here who has no raised

12   hands.

13             THE CLERK:  The age, though.

14             THE COURT:  Oh, he's -- he's 70.

15             THE CLERK:  He's a hardship.

16             THE COURT:  Okay.  Well, I didn't have him --

17             MR. SCIOLLA:  I didn't either.

18             MR. STENGEL:  I do.

19             THE COURT:  I do. Okay.  Let's bring him up, and

20   then this will be quick.

21             48.

22             We'll let him out on the age.

23             (Pause)

24             (Sidebar with Juror No. 48 commenced:)

25             THE COURT:  Hey, sir, how are you?
```

1           JUROR NO. 48:  I'm fine.  Thank you.

2           THE COURT:  Come on right in.  I'll start with you.

3   I notice -- are you really 70?

4           JUROR NO. 48:  Yes.

5           THE COURT:  Are you sure?

6           JUROR NO. 48:  I'm pretty sure.

7           THE COURT:  You didn't just write that down here to

8   get out of jury service?  No, the serious point is, if you are

9   70 or over, you do not have to serve.  You are welcome to

10  serve.  You can serve as a juror if you wish.  If you wish not

11  to, you don't have to.  That's one, and two, I did notice that

12  you said you had a matter of pressing importance that would

13  prevent you from focusing.

14          JUROR NO. 48:  I'm retiring at the end of this year,

15  and I'm a commissioned sales, so --

16          THE COURT:  Okay.

17          JUROR NO. 48:  -- the trial running eight days will

18  affect me financially.

19          THE COURT:  Do you want out on your age?

20          JUROR NO. 48:  Probably, if that's the way I can do

21  it.

22          MR. SCIOLLA:  Good answer.

23          THE COURT:  Go with God.

24          JUROR NO. 48:  Okay.

25          THE COURT:  But you do have to stay here for now.

```
1                    JUROR NO. 48:  Thank you.

2                    (Sidebar with Juror No. 48 concluded.)

3                    THE COURT:  All right.  Juror 49.  He was a juror

4        before.

5                    Juror 49?

6                    (Pause)

7                    (Sidebar with Juror No. 49 commenced:)

8                    THE COURT:  Hey, how's it going?

9                    JUROR NO. 49:  All right.

10                   THE COURT:  Come on right in here.  What do you

11       teach at Villanova?

12                   JUROR NO. 49:  History.

13                   THE COURT:  What classes?

14                   JUROR NO. 49:  Foreign relations, military history,

15       modern U.S.

16                   THE COURT:  Is that all in the poli/sci department?

17                   JUROR NO. 49:  Oh, no, no.  History.  I'm the Chair

18       of the History Department.

19                   THE COURT:  Oh, okay.  Very good.  All right.  Okay.

20       Any of you have any follow-ups for --

21                   MR. SCIOLLA:  You had prior jury service, is that

22       correct?

23                   JUROR NO. 49:  I beg your pardon?

24                   MR. SCIOLLA:  Did you have prior jury experience?

25                   JUROR NO. 49:  I did.  Something to do with
```

Jury Voir Dire                                  106

1    accounting.  That was -- the guy was claiming lost income from

2    an accident.

3              MR. SCIOLLA:  So it was a civil case?

4              JUROR NO. 49:  Yes.

5              MR. SCIOLLA:  And was the jury able to reach a

6    verdict?

7              JUROR NO. 49:  Yes.

8              MR. SCIOLLA:  Good.  And then you also indicated

9    that you know some folks who are involved in law?

10             JUROR NO. 49:  Right.  One of my colleagues at work

11   teaches in law school.  I'm pretty good friends with him.  And

12   then, my sister-in-law is a judge in Massachusetts.

13             MR. SCIOLLA:  In Massachusetts?

14             JUROR NO. 49:  Yes.

15             MR. SCIOLLA:  Obviously, nothing about those

16   relationships would enter into your ability to be fair and

17   impartial?

18             JUROR NO. 49:  Right.

19             You mentioned at the beginning that this was

20   probably going to be eight days?

21             THE COURT:  We would start on Monday, so it would be

22   all next week, and then two to three days into the following

23   week.  Does that impact your teaching schedule?

24             JUROR NO. 49:  Yeah, it does.

25             THE COURT:  What are you teaching this semester and

1    how often?

2              JUROR NO. 49:  I teach Monday, Wednesday, Friday,

3    and I just teach one class because I'm the Chair of the

4    department, but we also have students who are being advised

5    for registration, and that's what I do.

6              THE COURT:  Right.

7              JUROR NO. 49:  So I have appointments all week for

8    that.

9              THE COURT:  Okay.  And that's all next week?

10             JUROR NO. 49:  Yeah.  I mean, I sort of planned for

11   this and tried to get a lot of work out of the way --

12             THE COURT:  Right.

13             JUROR NO. 49:  -- but I didn't realize it was going

14   to be eight days.

15             THE COURT:  Is there anyone who could cover those

16   registration issues in your absence if it came to that?

17             JUROR NO. 49:  Possibly, yeah.  I mean, I could -- I

18   mean, I would make an effort to move some to night and do it

19   by Zoom.

20             THE COURT:  Well, that would be my next question.

21   We're off tomorrow, but, yeah, Monday, Wednesday, Friday, how

22   about your classes, could they be made up or taught by Zoom

23   and recorded and shown by video?

24             JUROR NO. 49:  I think I'd have to record them and

25   then somebody could teach them.

1          THE COURT:  Right, okay.  Well, would the fact that

2    you would be missing all of that weigh on you and prevent you

3    from giving your full attention to the trial?

4          JUROR NO. 49:  No, I don't think so.

5          THE COURT:  Okay.

6          JUROR NO. 49:  My students would be devastated, of

7    course.

8          THE COURT:  We all would be.

9          What class are you teaching this semester?

10         JUROR NO. 49:  It's a course on U.S. relations with

11   Japan and China.

12         THE COURT:  Okay, very good.  Thank you, sir, very

13   much.

14         (Sidebar with Juror No. 49 concluded.)

15         THE COURT:  With full disclosure, my daughter is a

16   senior at Villanova, and nothing makes you more insane than

17   when the teacher is not around, and you're paying 70K a

18   semester, so as a Villanova parent, I had cause in my head

19   from the minute he started talking.  However, I don't see a

20   basis for cause.  I really don't.  He can -- yeah, and at the

21   end of the day, it's no different than anyone else who has a

22   job.  And it's three classes, and the counseling and

23   registration work, I understand what he's talking about, but

24   people in the department can help, and he can do that so I

25   don't see a basis for cause.  I don't hear a motion for cause?

1          MR. SCIOLLA:  I don't have one.

2          THE COURT:  Okay.  So he was, then, 32?  So he would

3    then be three.  That gives us 32.  So, is everyone clear on

4    how many strikes, now, we would have?  We would seat 12 jurors

5    and two alternates, and there would be 11 strikes --

6          THE CLERK:  Just cut off the last two at the end, so

7    you just get, you know, six and ten, and then each get one

8    alternate.

9          MR. SCIOLLA:  You mean seven and 11.

10          THE COURT:  Six and ten plus an alternate for each,

11    seven and 11.

12          MR. SCIOLLA:  Oh, I see, okay.

13          THE COURT:  Okay.

14          THE CLERK:  So there should be 14 empty spaces when

15    we're done, up until, obviously, where I have it marked here,

16    you'll see the 32.

17          THE COURT:  Is everyone okay with 12 jurors and two

18    alternates?

19          ALL COUNSEL:  Yes, Your Honor.

20          THE COURT:  Very good, then.  All right.  Great.

21    Thank you.

22          Guys, may I assume you're going to want to hold off

23    on swearing the jury until Monday?

24          MR. SCIOLLA:  Yes.

25          THE COURT:  That's what I assumed.  Okay, good.

1   Thank you, guys, great job.  Thank you very much.

2              THE COURT:  Thank you, ladies and gentlemen, I

3   really appreciate that.  Thanks for your patience, and we are

4   now finished with the individual voir dires, and we'll let the

5   lawyers earn their money making their final selections.

6              (Recess, 3:17 p.m. to 4:09 p.m.)

7              THE COURT:  All right, folks, the lawyers have

8   completed the final part of our jury selection process.

9   Again, I thank them for their hard work, but most of all,

10  thank you, again, for your patience and for enduring those

11  benches, for going on eight hours now.  Thank you very much.

12             I will now call your current -- for those of you

13  that have been selected, and for the end of the day, counsel

14  elected to go with 12 jurors and two alternates, so we will

15  seat 14 of you.  I will call your current juror number, and

16  those of you who are selected, I will give you your new jury

17  number.  So when I call your number, if you could please come

18  on up to the jury box, and Mr. Lucini will seat you in the

19  correct seat.  And then when all of you are seated, we can

20  dismiss the rest of the folks, and then, again, as I promised,

21  we'll end the day today with a closing remark or two, and then

22  we will begin the trial in earnest on Monday.

23             Okay.  So with that, Juror No. 4, you are now Juror

24  No. 1.  Juror No. 6, you are now Juror No. 2.  Juror 10, you

25  are now Juror No. 3.  Juror No. 11, you are now Juror No. 4.

Colloquy                                           111

1    Juror No. 12, you are now Juror No. 5.  Juror 13, you are now

2    Juror No. 6.  Juror 17 is now Juror 7.  Juror 19, you are now

3    Juror No. 8.  Juror 32, you are now Juror No. 9.  Juror 33 is

4    now Juror 10.  Juror 34 is now Juror 11.  Juror 35, you are

5    now Juror No. 12.  Juror 43 is now Alternate Juror No. 1.  And

6    Juror 46, you are now Alternate Juror 2.

7            The rest of you, you are now free to leave.  You do

8    not need to stop back on the second floor.  You can leave the

9    building.  Those masks are my gift to you.  Thank you for

10   responding to your subpoena.  We really appreciate it.  Thank

11   you for giving up your day for us, and best of luck to all of

12   you.

13           Questions?

14           Okay, the answer appears to be.  Way above my pay

15   grade, but if it was the right answer, I'll take credit for

16   it.

17           (Remaining jury pool dismissed.)

18           (Jury selection concluded at 4:14 p.m.)

19                           * * * *

20

21

22

23

24

25

1                **C E R T I F I C A T I O N**

2

3           I, Jacqueline Mullica, court approved transcriber,

4     certify that the foregoing is a correct transcript from the

5     official electronic sound recording of the proceedings in the

6     above-entitled matter on October 14, 2021 from 1:37 p.m. to

7     4:44 p.m.

8

9

10       /s/Jacqueline Mullica

11    JACQUELINE MULLICA

12

13    Diana Doman Transcribing, LLC              04/14/23

14    AGENCY                              DATE

15

16

17

18

19

20

21

22

23

24

25