**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 18-579-2 |
| ARTHUR ROWLAND | |

**Pappert, J.**                                                          **March 6, 2026**

**<u>MEMORANDUM</u>**

On February 22, 2022, a jury convicted Arthur Rowland of possession of a firearm by a felon but could not reach a verdict on charges related to possession and distribution of methamphetamine and possession of a firearm in furtherance of drug trafficking. The Government retried Rowland two months later, and the jury convicted him of conspiracy to distribute 500 grams or more of methamphetamine, two counts of attempted possession to distribute methamphetamine, and possession with intent to distribute methamphetamine. He now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming his trial counsel was ineffective and the Government withheld exculpatory evidence. He separately moves for limited discovery and an evidentiary hearing. The Court denies the motions.

I

A

In April of 2018, FBI Agent Elizabeth Becker received an anonymous tip that Curshawn Banks was mailing narcotics from California to the Philadelphia area.

(Direct Exam. of Becker, Vol. 3, App. 410–11.)[1]  Special Agent Derek Parker notified Agent Becker months later that he had intercepted calls implicating Banks in trafficking methamphetamine to Philadelphia.  (*Id.*)  The Government then sought and obtained wiretaps for Banks's phones, (*id.* at 413–17), and recorded 1,300 calls over several months, (*id.* at 424.)  The calls revealed Arthur Rowland was buying large quantities of methamphetamine from Banks for resale in the Philadelphia area.  *See* (Presentence Investigation Report ¶ 25).

The Government executed a search warrant on a package mailed from Los Angeles to 272 Tiffany Lane in Willingboro, New Jersey—an address where Rowland had previously received packages from Banks.  (Direct Exam. of Banks, Vol. 3, App. 680–82); (Aff. of Coleman ¶¶ 148–56, Supp. App. 455–57.)  The package contained 1,818.6 grams of methamphetamine that was 88 percent pure.  (PSR ¶ 27.)  Rowland also gave Banks two addresses in New Jersey, and Homeland Security agents weeks later seized two packages sent to those addresses.  *See* (*Id.* ¶ 29); (Direct Exam. of Frank, Supp. App. 336–46); (Direct Exam. of Banks, Vol. 4, App. 722–29).  The packages contained 1,329 grams of 100 percent pure methamphetamine and 1,346 grams of 99 percent pure methamphetamine.  (PSR ¶ 29.)

At 6:00 a.m. on December 14, 2018, authorities executed a search warrant at Rowland's residence located at the Park Plaza Condominiums, 3900 Ford Road, Apartment 14Q, in Philadelphia.  (*Id.* ¶ 30); (Direct Exam. of Colarulo, Supp. App. 366–67.)  They knocked, announced their presence, and breached the door.  Rowland stepped

---

[1]    The Court cites to the appendix and supplemental appendix the Government presented to the Third Circuit Court of Appeals in *United States v. Rowland*, No. 22-3022, 2024 WL 4100257 (3d Cir. Sep. 6, 2024).

into the hallway where authorities arrested him.  (Direct Exam. of Simpson, Supp. at 149, 151–52.)  They subsequently searched his apartment and recovered:

- Two orange plastic wrapped items hidden in a drawer below the oven that contained 592.2 grams of 98 percent pure methamphetamine and 432.1 grams of 100 percent pure methamphetamine;

- $16,900 in cash;

- Two Century Arms, model Draco Mini, 7.62mm semiautomatic pistols, both with obliterated serial numbers;

- A Sig Sauer .40 caliber semi-automatic handgun;

- Eighty-six live rounds of 7.62mm ammunition; and

- Ten live rounds of .40 caliber ammunition.

*See* (*Id.* at 159–77); (PSR ¶ 30).

Text messages and screenshots from Banks's phone further linked Rowland to narcotics trafficking.  For example, Rowland texted Banks "911," *see* (Gov't Ex. 632, Supp. App. 408); (Direct Exam. of Banks, App. 483–88), and then sent photographs of his face set against bags of methamphetamine, *see* (*id.*).  Banks also took screenshots during FaceTime calls in which Rowland held a slip of paper with various addresses in the Philadelphia area where authorities later seized methamphetamine.  *See* (Gov't Exs. 407, 409–11, Supp. App. 403–06); (Direct Exam. of Becker, App. 458–62, 534–35); (Direct Exam. of Banks, App. 723–29); (Direct Exam. of Simpson, Supp. App. 198–01, 246–47).

## B

A grand jury in the Eastern District of Pennsylvania indicted Rowland in

3

December of 2018 on one count of drug trafficking conspiracy.[2]  (Indictment, Dkt. No. 1.)  After returning a superseding indictment a month later, (Superseding Indictment, Dkt. No. 43), the grand jury in October of 2019 returned a second superseding indictment charging Rowland with conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One), attempted possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Counts Two and Three), possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Four), possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count Five) and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count Six).  (Second Superseding Indictment, Dkt. No. 105.)

Rowland's first trial began on February 10, 2022, during which he presented evidence about "alternate suspect" David Dixon.  Dixon purportedly had access to Apartment 14Q given that Rowland listed him on the lease as his "brother" and an "authorized occupant."  *See* (Direct Exam. of Buck, Vol. 2, App. 159–60); (Cross Exam. of Becker, Vol. 2, App. 161, 164).  Rowland's lawyer cross-examined Agent Becker concerning Dixon's recent arrest on drug trafficking charges at Apartment 8H of the Park Plaza Condominiums.  (Cross Exam. of Becker, App. 162); (Gov't Mem. of L. in Supp. of Mot. *in Limine*, Ex. A, Dkt. No. 551-1.)  The Government objected based on Federal Rule of Evidence 404(b), and the Court sustained the objection.  (*Id.* at 163–73.)  The jury subsequently found Rowland guilty on Count Six but could not reach a verdict on the other counts.  (Feb. 22, 2022, Jury Verdict Form, Dkt. No. 419.)

---

[2]    The grand jury also indicted Banks, Isiah Ulmer and Hakim Williams.  (Indictment.)

The Government retried Rowland two months later.  His counsel again argued Dixon was an alternate suspect, but this time did not seek to introduce evidence of Dixon's arrest because he believed the issue had been preserved for appeal.  *See* (Jan. 12, 2026 Email from Rowland, Ex. C, Dkt. No. 551-1 (citation modified)).  The jury convicted Rowland on Counts One through Four and acquitted him on Count Five. (Apr. 29, 2022, Jury Verdict Form, Dkt. No. 456.)

The Court sentenced Rowland on October 12, 2022 to 480 months imprisonment. (Judgment, Dkt. No. 482.)  Rowland appealed, arguing the Court erred by, among other things, excluding evidence of Dixon's arrest.  The Third Circuit Court of Appeals affirmed the judgment and held Rowland had not preserved the issue for appeal because he did not argue for the evidence's inclusion at the second trial.  *See Rowland*, 2024 WL 4100257, at *2–3.

## C

Rowland now moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  He first contends his counsel was ineffective at the second trial for failing to elicit that the Government had arrested and charged Dixon with possession of a large quantity of methamphetamine.  *See* (Pet. at 4, Dkt. No. 546).  Second, he claims the Government withheld exculpatory evidence concerning the specifics of Dixon's arrest, including information related to Dixon's drug dealing, the manner in which he packaged drugs, and photographs and videos of the evidence in his apartment.  *See* (*Id.* at 4, 11–12).

## II

Section 2255 provides that a prisoner serving a federal sentence may move to

5

"vacate, set aside or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the Court lacked jurisdiction to impose it, (3) the sentence exceeded the maximum authorized by law or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  The petitioner bears the burden of proving a § 2255 motion has merit, *see United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005), and he "must clear a significantly higher hurdle than would exist on direct appeal," *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

The Court must hold an evidentiary hearing unless the motion, case files and record "conclusively show that the movant is not entitled to relief."  28 U.S.C. § 2255(b). A hearing is unnecessary where, as here, the record "clearly resolve[s]" the petitioner's allegations.  *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005).

### III

The two-part test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) governs ineffective assistance of counsel claims.  *United States v. Haisten*, 50 F.4th 368, 372 (3d Cir. 2022).  To prevail, a petitioner must show: (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness" and (2) he "suffered prejudice as a result of the deficiency."  *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).  If he fails to satisfy one prong, the Court need not address the other.  *See Strickland*, 466 U.S. at 697.

The proper measure of counsel's performance is "simply reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  Counsel performs deficiently by making errors "so serious that [he] was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 462 (3d Cir. 2023) (alteration in original) (quoting *Strickland*, 466 U.S. at 687).  A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Under *Strickland*'s second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### A

Rowland cannot show prejudice because evidence of Dixon's arrest—the sole basis for his ineffective assistance claim—was inadmissible under Rule 404(b).  Evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  But a proponent may try to admit the evidence for another purpose, such as proving opportunity or *modus operandi.  See id.* 404(b)(2); *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 197–98 (3d Cir. 2000).

A "subspecies of Rule 404(b), known as 'reverse 404(b)' . . . is utilized to exonerate defendants." *See United States v. Stevens*, 935 F.2d 1380, 1383, 1402 (3d Cir. 1991).  "Such evidence is most commonly introduced by a defendant to show that

7

someone else committed a similar crime or series of crimes, implying that he or she also must have committed the crime in question." *United States v. Williams*, 458 F.3d 312, 315–16 (3d Cir. 2006). To be admissible, the evidence must: (1) serve a proper nonpropensity purpose, (2) be relevant under Rule 401 and (3) not be substantially outweighed by Rule 403 considerations. *See id.* at 317–18; *Stevens*, 935 F.2d at 1384; *United States v. Ross*, No. 5-398, 2007 WL 2571620, at *17 (E.D. Pa. Aug. 31, 2007).

1

The Court only excluded evidence surrounding Dixon's arrest. The jurors at both trials learned that Dixon was listed as an "authorized occupant" on his lease for Apartment 14Q, *see* (Direct Exam. of Buck, App. 159–60); (Cross Exam. of Becker, App. 161, 529–32); (Direct Exam. of Becker, App. 503), that a concierge at the Park Plaza Condominiums knew Dixon was associated with the apartment and saw him "once a week at least," *see* (Cross Exam. of Dede, Vol. 2, App. 174–76), that a second key for the apartment existed, *see* (Cross Exam. of Becker, App. 161, 171), and that a forensic scientist did not receive any reference samples from Dixon, *see* (Cross Exam. of Haimowitz, Vol. 3, App. 572). His counsel recounted all of this during closing argument, pointing to Dixon as an alternate suspect. *See* (Def.'s Closing Arg., Vol. 4, App. 924–33).

In any event, Rowland contends evidence pertaining to Dixon's arrest on drug charges was admissible because it could show opportunity and *modus operandi*. Dixon allegedly had been trafficking methamphetamine as early as September of 2020, *see* (Gov't Mem. of L. in Supp. of Mot. *in Limine* at 2), and the Government arrested and charged him in 2022 with possession of a large quantity of the drug, *see* (Pet. at 4).

That arrest occurred at the Park Plaza Condominiums—where Rowland had been arrested four years earlier—and uncovered thirty-two pounds of methamphetamine hidden in an ottoman. (*Id.* at 4.) Because the two were arrested in the same apartment complex and on similar charges, Rowland wanted the jury to think Dixon must have had the opportunity to store methamphetamine in Rowland's apartment. (Pet'r's Reply at 7, 9, Dkt. No. 551.) And because the Government found hidden drugs in both apartments, Dixon must have had the *modus operandi* to hide drugs in Rowland's apartment. (*Id.*)

But Rowland does not "clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that [Dixon] has the propensity to commit the crime charged." *Williams*, 458 F.3d at 319 (quoting *United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999)). The Court rejected these same arguments in his first trial:

> And what you want the jury to take from that is, okay, Dixon's name was on the lease, ergo, Dixon had access [to the apartment]. And Dixon is an accused drug dealer in 2022 -- I mean, he has rights too, he's not guilty yet -- and he allegedly was arrested with drugs in that building but in a different unit, and, therefore, he must have been a drug dealer in December of 2018. . . . So it is a propensity question.

(Cross Exam. of Becker, App. 167–68, 171.) He again relies on Dixon's arrest to the extent it proves he had a propensity to deal drugs—an inference proscribed by Rule 404(b). *See, e.g.*, *Williams*, 458 F.3d at 318–19 (excluding evidence of a prior conviction because it didn't supply the alternate suspect with the opportunity to commit the crime for which the defendant was charged); *United States v. Ushery*, 400 F. App'x 674, 677 (3d Cir. 2010) (attempting to show an alternate suspect possessed crack cocaine because crack had been found in her car before was an "inadmissible propensity inference").

9

2

Nor was evidence of Dixon's drug dealing relevant.  Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action."  Fed. R. Evid. 401. Reverse 404(b) evidence is relevant if it is "sufficiently similar to the crime at bar." *Stevens*, 935 F.2d at 1384.  That test is "much less stringent" for reverse 404(b) evidence than when the Government offers evidence against a defendant.[3]  *See Williams*, 458 F.3d at 321.

Rowland suggests Dixon's arrest was sufficiently similar to his because both occurred at the same apartment complex and both involved large quantities of methamphetamine.  *See* (Pet'r's Reply at 6–7).  Those similarities are "simply too generic" to prove opportunity.  *See Williams*, 458 F.3d at 318.  Dixon's arrest occurred in a different apartment years after Rowland's arrest.  Though Dixon was listed as an "authorized occupant" for Apartment 14Q, (Direct Exam. of Buck, App. 160), no other evidence indicated he was "ever even in the place," *see* (Cross Exam. of Banks, App. 167).  So, as the Court stated in ruling on the Government's objection, "[i]t doesn't make it more probable that he was storing and dealing drugs out of [Apartment 14Q] three-plus years ago."  (*Id.*); *see also Ushery*, 400 F. App'x at 677 ("Evidence that crack cocaine was found on the person of a driver of Brown's car one and a half years earlier is minimally probative of whether she possessed the crack cocaine in Ushery's car.").

---

[3]      According to Rowland, this less stringent standard governs not only relevance, but admissibility as well under Rule 404(b).  *See* (Pet'r's Reply at 5).  That argument conflates propensity and relevance.  Rowland does not have any "more leeway in admitting propensity evidence in violation of Rule 404(b)" because that prohibition "applies regardless of by whom, and against whom, it is offered."  *Williams*, 458 F.3d at 317.

10

The evidence of Dixon's *modus operandi* to hide drugs likewise fails.  He stored methamphetamine in his ottoman, (Gov't Mem. of L. in Supp. of Mot. *in Limine* at 2, 5–7), whereas police recovered three pounds of methamphetamine in an oven drawer in Rowland's apartment, wrapped in layers of orange and blue cellophane, coffee grounds, mustard, and ketchup, *see* (Direct Exam. of Simpson, App. 169–66); (Cross Exam. of Becker, App. 532).  But concealing drugs in furniture is not "sufficiently distinctive enough to constitute a signature." *Becker*, 207 F.3d at 198 (citation modified and omitted); *see also United States v. Thomas*, 986 F.3d 723, 731 (7th Cir. 2007) ("Distinctiveness is key to whether something is proper *modus operandi* evidence."). The points of similarity—storing drugs in an ottoman and storing drugs in an oven drawer—are, again, "simply too generic" to prove *modus operandi*.  *See Williams*, 458 F.3d at 318; *see also United States v. Perkins*, 937 F.2d 1397, 1401 (9th Cir. 1991) ("The points of similarity between the [two] robberies were ones which are so common to most bank robberies as to be entirely unhelpful." (citation omitted)); *United States v. Myers*, 550 F.2d 1036, 1046 (5th Cir. 1977) (rejecting that two bank robberies on the same day on the outskirts of town involving a revolver, gloves, and masks were evidence of *modus operandi* because these facts are "a common component of armed bank robberies").  Nor is Dixon's "particular manner" of storing drugs, *see* (Pet'r's Reply at 8), sufficiently similar to Rowland's way of doing things to be relevant.

The Court need not address counsel's performance because Rowland fails to satisfy the prejudice prong of his ineffective assistance claim and "it is preferable to avoid passing judgment on counsel's performance when possible," *see United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

11

IV

Under *Brady v. Maryland*, prosecutors "have an affirmative duty to disclose evidence . . . even though there has been no request [for the evidence] by the accused." *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 284 (3d Cir. 2016) (en banc).  To establish a *Brady* violation, a petitioner must show: (1) the Government "suppressed evidence," (2) that evidence "was favorable to him either because it was exculpatory or impeaching" and (3) "that evidence was material to guilt or punishment, meaning that there is a reasonable probability that, had the evidence been disclosed to [him], the result of the proceeding would be different." *United States v. Fallon*, 61 F.4th 95, 122 (3d Cir. 2023).  A petitioner has the burden of showing that the evidence in question meets *Brady*'s three elements.  *Johnson v. Mahanoy SCI*, 144 F.4th 178, 189 (3d Cir. 2025).

The Government argues that inadmissible evidence cannot be exculpatory or material, *see* (Gov't Resp. in Opp'n at 22–23), but the admissibility of evidence "is not dispositive for *Brady* purposes." *Dennis*, 834 F.3d at 310 (quoting *Johnson*, 705 F.3d at 130).  Inadmissible evidence can be material if it "could have led to the discovery of admissible evidence" or "could have been used effectively to impeach or corral witnesses during cross-examination." *Id.*  That is not the case.

Again, Rowland alleges the Government suppressed evidence of the specifics of Dixon's drug trafficking, including how he hid and packaged the drugs in Apartment 8H, photographic or video evidence of hidden compartments in Dixon's furniture and that Dixon had been dealing pound-quantities of methamphetamine since September of 2020. *See* (Pet'r's Reply at 13).  Had the Government disclosed all of this, Rowland

12

contends it would have been reasonably probable the result of his trial would have been different.  (*Id.* at 11.)

For the reasons previously explained, all of this evidence was inadmissible under Rule 404(b), *see supra* Section III.A, and would not have been material to Rowland's guilt or punishment.  Although a petitioner can still prove materiality with inadmissible evidence, *see Dennis*, 834 F.3d at 309–10, Rowland only does so by "incorporat[ing] the prejudice argument" for his ineffective assistance claim, *see* (Pet'r's Reply at 14 (citation modified)).  But the Court already rejected that argument, *see supra* Section III.A, and Rowland doesn't show how the particulars of Dixon's arrest could have led to the discovery of admissible evidence or how he could have used that evidence to impeach or corral witnesses during cross-examination, *see Dennis*, 834 F.3d at 310.  And the Court will not "infer the existence of *Brady* material based upon speculation alone." *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994).

V

A petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that "[a] judge may, for good cause, authorize a party to conduct discovery."  Good cause exists where a petitioner makes "specific allegations . . . show[ing] reason to believe the petitioner may, if facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 300 (1969); *United States v. Rashid*, No. 8-493, 2017 WL 2875378, at *7 (E.D. Pa. June 20, 2017).  This standard "limits discovery to those cases where a defendant has made a preliminary showing that the requested discovery will tend to support his entitlement

13

to relief." *Rashid*, 2017 WL 2875378, at *7 (footnote omitted).

Rowland requests the videos and photographs of the search of Dixon's apartment on February 2, 2022 and all evidence the Government used to prepare its November 10, 2022 motion and memorandum in Dixon's separate prosecution. *See* (Def.'s Mot. for Discovery and Evid. Hr'g ¶¶ 12–13, Dkt. No. 553). But those requests pertain to inadmissible and immaterial evidence, *see supra* Sections III.A. & IV, so "the requested information . . . would be of little value in ruling on the defendant's claims," *United States v. Purcell*, 667 F. Supp. 2d 498, 518 (E.D. Pa. 2009). Because Rowland cannot demonstrate that he could be entitled to relief with such evidence, he has not shown the good cause required to entitle him to discovery.

VI

A § 2255 petitioner can only appeal the denial of his claims if he obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A district court cannot issue one unless the petitioner makes a substantial showing that his constitutional rights were denied. *Id.* § 2253(c)(2). To do so, he must demonstrate that reasonable jurists would find the Court's assessment of his claims wrong or debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is not warranted here because reasonable jurists would not debate the Court's ruling, and Rowland has not made a substantial showing that his constitutional rights were violated.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

14